THE UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 3:03 CR 241 (JCH) |
| | : | |
| V. | : | |
| | : | |
| GARY AGNEW | : | NOVEMBER 4, 2004 |

### DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, Gary Agnew, hereby respectfully submits the following sentencing memorandum as an aid to the Court in addressing the various sentencing issues in this matter.

**BACKGROUND:**

The defendant Gary Agnew is a fifty-four year old man, who until the date of the Indictment in this case had never been in any trouble with the law. He is the father of two children, the loving husband to his second wife and grandfather of two. He has been productively employed his entire adult life and served in the U.S. military honorably. He has been a civil servant for almost 30 years, serving as a Union official for over 20 years. He sustained an injury to his knee while in the military and that injury followed him throughout his life. His knee was further injured while employed by the Postal Service and since 1989 has undergone numerous surgical procedures to both his knees, including four total knee replacement procedures, as result of an acknowledged and accepted work related injury to his knees.

On August 26, 2003 an Indictment was returned against Mr. Agnew alleging fifteen (15) counts of Mail Fraud in violation of 18 U.S.C. §1341 and one (1) count of Fraud to Obtain Federal Employees' Compensation in violation of 18 U.S.C. §1920 covering the period from February 2001 to the time of the indictment. During the period of time covered by the Indictment Mr. Agnew underwent a total knee replacement surgery on his left knee, an arthroscopic procedure on his left knee and a total replacement revision on his left knee, aside from various other in-office procedures. There has never been any allegation that these procedures were unwarranted, not medically appropriate, or not due to his accepted work related injury.

On March 30, 2004 the jury returned a verdict against the Defendant, Gary Agnew, on all Fifteen Counts of the Indictment, finding Mr. Agnew guilty of fifteen (15) counts of Mail Fraud in violation of 18 U.S.C. §1341 and one (1) count of Fraud to Obtain Federal Employees' Compensation in violation of 18 U.S.C. §1920. No special interrogatories were submitted to the jury and only a general verdict was sought and obtained from the jury.

The essential allegations of the Government in this case were that Mr. Agnew knowingly devised and intended to devise a scheme and artifice to defraud the United States by obtaining Federal Employees' Compensation Benefits by claiming a total disability and concealing that he worked at a used car dealership which receiving compensation. The Indictment alleges various manners and means by which they alleged Mr. Agnew carried out this scheme. Within counts one through fifteen of the Indictment the Government alleged that as furtherance of this scheme Mr. Agnew did knowingly cause to be placed in the mail certain disability checks. Count Sixteen alleges that Mr. Agnew in applying for Federal Employees' Compensation benefits knowingly falsified, concealed and covered up the fact that he worked at a car dealership.

Nowhere in the Indictment is a loss or gain alleged. At no point in Mr. Agnew's testimony was an admission elicited that he sustained a gain as a result of this scheme or that the Government sustained a loss as a result of this scheme.

Mr. Agnew testified in his own defense at the time of trial. As part of his testimony he admitted to performing what could be considered work-like functions at a used car dealership but indicated that he was not compensated on a quid pro quo basis for the functions he did perform. He further testified that he did not consider himself employed at the dealership. This testimony was confirmed by the two owners, as well as the two employees, of the dealership in their testimony.

During its instructions to the Jury the Court specifically charged the jury that the government did not have to prove "every omission or misrepresentation charged in the indictment" (Jury Instructions Section XXIV, U.S. v. Agnew, Hall, J.). Additionally, the Court further charged the jury that they did not have to find loss or gain in order to convict the defendant. Page 39, Section XXIV of Court's Jury Instructions. (Exhibit A attached hereto.)

The United States Probation Office has prepared a Presentence Report in which it computes Mr. Agnew's Sentencing Guideline Range at level 16 after giving an increase of 8 levels from the base offense of 6 for "total loss attributed to the defendant" (PSR paragraph 19) and a 2 level increase for obstruction of justice, claiming that Mr. Agnew "testified falsely on a number of material issues." (PSR paragraph 22). There was no jury finding of the truth or falsity of Mr. Agnew's testimony and no jury finding or admission by the defendant of an amount of loss attributed to the defendant's alleged actions. The defendant hereby submits that these increases are unwarranted and improper under the United States Supreme Court decisions of <u>Blakely v.</u>

3

Washington, __ U.S. __, 72 U.S.L.W. 4546, 2004 U.S. LEXIS 4573 (June 24, 2004) and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

The Probation Officer who prepared the Presentence Report for the Court further has opined that there are no "circumstances that would warrant a departure" from the Guidelines (PSR paragraph 71). The defendant, through counsel, submits that there are circumstances that do warrant a departure under U.S.S.G. §5K2.0 and will discuss that below.

Additionally, there remain numerous unresolved objections or other parts of the PSR, which are addressed in the defendant correspondence to the probation officer, Joseph Zampano that will be briefly addressed below.

**ARGUMENT:**

**I.     Sentencing Guidelines and U.S. v. Blakely:**

In the case of Blakely v. Washington, 124 S.CT. 2531 (2004), the United States Supreme Court invalidated the sentencing procedures of the State of Washington finding that the determinant sentencing, which increased sentences based on judicial fact-finding rather than jury fact-finding, violated a Defendant's Sixth Amendment right to a jury trial. In the case of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that "other than the fact of a prior conviction, any factor that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id., at 490. In Blakely, the Supreme Court recognized that the "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. Blakely, 2004 U.S. LEXIS 4573, at 4. While it is clear that the U.S. Supreme Court in Blakely at Footnote 9,

4

state that they are not expressing an opinion regarding the applicability of that decision to the Federal Sentencing Guidelines, a clear reading of the Blakely decision leads to the inescapable conclusion that the Blakely rationale must be applied to the Federal Sentencing Guidelines.

On July 12, 2004, the Second Circuit Court of Appeals, **in banc**, certified three questions, relating to the applicability of Blakely to the Federal Sentencing Guidelines, to the United States Supreme Court in the case of U.s. v. Penranda, No. 03-1005(L). Thereafter in August the United States Court of Appeals for the Second Circuit, decided the case of U.S. v. Mincey, 380 F.3rd 102 (2004), refused to apply the Blakely holding to the United States Sentencing Guidelines and instructed all District Courts within the Circuit to fully apply the Guidelines.

Prior to the Second Circuit's decision in Mincey . , United States District Judge Peter C. Dorsey, in the District of Connecticut, issued a decision in the case of U.S. v. Toro, 3:02CR362 (PCD) In that decision, Judge Dorsey concluded that Blakely did apply to the Federal Sentencing Guidelines in an order correcting a sentence. In applying the Blakely rationale to the Federal Sentencing Guidelines, Judge Dorsey specifically found that the guidelines had been found constitutional citing Mistretta v. United States, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 74 (1989) and United States v. Rodriguez, 892 F.2d 233, 234 (2nd Cir. 1989). Judge Dorsey further determined that "any enhancements based on facts not stipulated or admitted by Defendant or found by a jury will not be considered, as pursuant to Blakely this would violate Defendant's Sixth Amendment rights. Accordingly in Toro, Judge Dorsey sentenced the defendant in accordance with his base offense minus a 2 level reduction for acceptance of responsibility. ( U.S. v. Toro, No. 3:02CR362 (PCD) 2004), page 9 attached hereto as Exhibit B).

In <u>United States v. Shamblin</u>, CR No. 2:03-00217, Southern District of West Virginia (June 30, 2004), the Court (Goodwin, J.) applied <u>Blakely</u> in the resentencing of a drug defendant. In that case the Court held "The over arching principle articulated in <u>Apprendi</u> is that compliance with the Sixth Amendment requires 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum' to be proved beyond a reasonable doubt. 530 U.S. at 490. The prescribed "statutory maximum" for <u>Apprendi</u> purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.'* <u>Blakely</u>, 2004 WL 1402697 at *4. The jury verdict alone – or the defendant's admission alone – 'must authorize the sentence.' <u>Id</u>. At *5, n.8." <u>Shamblin</u> at 15, attached hereto as Exhibit C.

In the case at bar, Mr. Agnew's base offense is level 6 (U.S.S.G. § 2B1.1(a)). His criminal history category is I. As there was no jury finding of any loss or gain, and no admissions by the defendant or stipulations regarding loss or gain, no increase of the base offense for "Specific Offense Characteristics" (relevant conduct) is warranted under U.S.S.G. § 2B1.1(b)(E) as indicated in the PSR. Additionally, absent a jury finding of obstruction of justice or a stipulation or defense admission for such, no increase is permissible under U.S.S.G. §3C1.1. Therefore Mr. Agnew's adjusted offense level remains at level 6. With a criminal history category of I Mr. Agnew's proper sentencing range is 0 to 6 months. As Mr. Agnew's guideline range is in the A zone he is eligible for probation instead of incarceration. U.S.S.G. § 5B1.1.

In regards to a possible fine under the guidelines, <u>Blakely</u> would also apply. As no loss was determined by the jury, by defendant admission, or by stipulation, the proper fine range under U.S.S.G. §5E1.2 (c)(3) is between $500 and $5,000 as Mr. Agnew's Offense Level is 6.

## II. Restitution and U.S. v. Blakely:

The Probation Officer further recommends restitution in the amount of $84,403.00. It is the defendant's position that, as the jury did not find any loss or gain and was specifically instructed that a loss or gain was not required, restitution is improper and violative of Mr. Agnew's Sixth Amendment right to a jury trial in that there was no jury finding of a loss for which restitution would be required. 18 U.S.C. 3663, provides a sentencing court with authority to "order, in addition to, or in the case of a misdemeanor, in lieu of *any other penalty* authorized by law, that the defendant make restitution to any victim" of the offense. 18 U.S. §3663 (a)(1)(A) (emphasis added). As restitution is clearly considered a "penalty" by the very language of the controlling statute, the constitutional principle articulated in Blakely, requires that the amount of restitution *must* be based only on facts found proven beyond a reasonable doubt, either found by a jury, admitted by the defendant, or stipulated to. As a loss was not found by this jury nor admitted to by the defendant, restitution cannot be ordered. "[T]he Sixth Amendment requires 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum' to be proved beyond a reasonable doubt. [Apprendi 530 U.S. at 490." Shamblin, id.

## III. Non Blakely Sentencing Issues:

If the Court disagrees with above analysis and holds that Blakely does not apply to the U.S. Sentencing Guidelines then the defendant relies on this alternative analysis of the PSR's sentencing recommendations:

In calculating the offense level the PSR and the Government contend that the loss attributable to Mr. Agnew's actions equals $84,403.00 for purposes of calculation of "specific offense conduct", restitution and fine level. (PSR paragraph 13, 19, 24, & 68). That

7

determination raises his base offense level of 6 by an additional 8 levels (PSR paragraph 19, U.S.S.G. §2B1.1(b)(1)(E)) and provides for a fine range of $5,000 to $50,000 (PRS paragraph 68). This calculation was provided by the Government in its submission of it's version of the offense dared May 3, 2004, and is based on their arbitrary determination of what period Mr. Agnew would have been disabled and when he would not have for the period between February 2001 (the starting date in the Indictment), and March 2004 (the trial date). There is no support in the record for that determination.

The most rational manner in which to determine, absent the <u>Blakely</u> concerns, what the "specific offense conduct" (relevant conduct) is under U.S.S.G. § 2B1.1(b)(1)(E) would be to consider the "end date" as either in June 2003 when Mr. Agnew advised the DOL that he was helping out a friend, or when Mr. Agnew was released from work by his treating physician in October 2003, yet the DOL failed to put him back to work and instead chose to continue to pay him disability compensation. The U.S. Sentencing Guidelines, Section 1.B1.3 provides the factors to be considered as "relevant conduct" for purposes of determining the appropriate guideline range. Subparagraph (a)(1)(A) states that relevant conduct includes "all acts admissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." Subparagraph (a)(3) further defines such conduct as "all harm that resulted from the acts and omissions specified in subsection (a)(1) and (a)(2) above and all harm that was the object of such acts and omissions." Obviously after Mr. Agnew advised the DOL of the very conduct for which it is alleged that he wrongfully concealed from them, the "scheme" did not continue. The DOL's independent decision to continue to pay benefits is not a continuation of the "acts and omissions" of Mr. Agnew which were alleged as part of his "scheme" by the government. As DOL did not put Mr. Agnew back to work but continued to pay

8

him compensation at the occurrence of either those events how can it be considered part of Mr. Agnew's "relevant conduct" or "offense conduct" for sentencing purposes. Obviously the disability checks Mr. Agnew received after advising DOL of his activities at the car dealership in June 2003 could not constitute part to his scheme as he was not at that time concealing any information. Arguably the "scheme" ended at that point. [1] Therefore absent the Blakely concerns the "total loss" determination can only be calculated from March 25, 2001 to the period reflected in check dated June 14, 2003 back with the exceptions noted by the government for checks dated March 30, 2001 and February 23, 2002. That total would be $57,992.69.

If the Court disagrees that DOL had a duty to act after receiving Mr. Agnew's disclosure of his activities at IMC, then the end date should be the check dated October 2, 2004 covering the period of September 7, 2003 through October 4, 2003 as DOL at that point was advised by Mr. Agnew's physician that he had a work capacity, yet failed to return Mr. Agnew to work. [2] Using that period with the same exception the "total loss" would be $66,288.29. Regardless of which figure the Court chooses Mr. Agnew's guideline range would only increase 7 levels and the fine level would be between $3,000 and $30,000. For purposes of restitution the defendant strongly urges the Court to give the defendant the benefit of the two positions and order no more than $57,992.69 in restitution.

IV.     **Unresolved Objections to the Presentence Report:**

In the Addendum to the Presentence Report, the Probation Officer appears to resolve the defendant's objections to paragraphs 2, 3, 36, 39, 40, 41, 44 and 72, although the language used

---

[1] It could also be argued that the "scheme" ended when Mr. Agnew was interviewed by the Postal Inspectors in February 2003, at which point he allegedly "confessed".
[2] The "fact" that DOL had a policy not to interfere with criminal investigations does not change the fact that the alleged conduct of the "scheme" had ended."

9

("noted") does not make this very clear. Paragraphs 13 (in part),15, 19, 22, 23, 25, 62,66, 68, and 70 all involve <u>Blakely</u> issues, which the probation officer leaves to the Court to resolve. The remaining paragraphs for which objections remain are paragraphs 4, 6, 7, 8, 9, 10, 11, 12, 13 (in part), 46, 50, 55, 59 71, and 73. The defendant respectfully requests the Court to address the last two groups of objections to the PSR at the time of sentencing.

### V. Downward Departure:

#### A. Authority to Depart:

The sentencing Reform Act and the Sentencing Guidelines do not eliminate a sentencing court's authority to depart from an established sentencing range where appropriate. 18 U.S.C. §3553(b). Such authority exists even in regards to departure below a statutory mandatory minimum sentence, 18 U.S.C. §3553(e).

The Second Circuit has frequently recognized the authority and appropriateness of a sentencing court exercising it's authority to depart from the guidelines: <u>United State v. Rivera</u>, 192 F.3d 81, 85 (2nd Cir. 1999), <u>Zecevic v. U.S. Parole Commission</u>, 163 F.3d 731 (2nd Cir. 1998), and <u>United States v. Galante</u>, 111 F.3d 1029 (2nd Cir. 1997).

#### B. Departure under U.S.S.G. § 5K2.0

Section 5K2.0 of the United States Sentencing Guidelines provides for authority for a departure from the indicted guidelines if there are circumstances within a given case, "of a kind not adequately taken into consideration by the Sentencing Commission." Additionally U.S.S.G. § 1B1..4 provides that "[I]n determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless

otherwise prohibited by law." In the present case, Mr. Agnew respectfully requests the Court to consider a further departure based on the following factors which individually or in a totality of the circumstance warrant a downward departure. These factors are: (1) his personal history growing up in a single parent home; (2) Mr. Agnew's history of 54 years without any involvement in the criminal justice system; (3) Mr. Agnew's service to this country as a member of the armed forces and as a civil servant for almost 30 years; and, (4) the basic fact that Mr. Agnew was not convicted of faking an injury to collect unwarranted compensation benefits, he in fact suffered from a real, serious and compensable injury. Obviously the nature of the actual facts of his conviction are themselves outside the mainstream.

The Second Circuit and Courts in the District of Connecticut have recognized that a defendant's history of abuse and other personal circumstances and history are relevant in determining whether a case was within the heartland considered by the Guidelines. Such factors may be appropriate grounds for departure under U.S.S.G. § 5K2.0 and 1B1.4. United States v. Rioux, 97 F.3d 648 (2d Cir. 1996), United States v. Rivera, 192 F.3d 81 (2d Cir. 1999)l United States v. Garriques, 3:96CR-49(RNC), United States v. Ubarri, 5:92CR-69(JAC). The Sentencing Commission, in their commentary to 5K2.0 stated:

> The last paragraph of the policy statement set forth the conditions under which an offender characteristic or other circumstance that is not ordinarily relevant to a departure from the applicable guideline range may be relevant to this determination. The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristic or circumstances individually distinguishes the case. However the Commission believes that such cases will be extremely rare.

The Defense submits that Mr. Agnew's case is one of the extremely rare cases the Commission referred to in this commentary. While there are no pertinent statistics to cite and

otherwise prohibited by law." In the present case, Mr. Agnew respectfully requests the Court to consider a further departure based on the following factors which individually or in a totality of the circumstance warrant a downward departure. These factors are: (1) his personal history growing up in a single parent home; (2) Mr. Agnew's history of 54 years without any involvement in the criminal justice system; (3) Mr. Agnew's service to this country as a member of the armed forces and as a civil servant for almost 30 years; and, (4) the basic fact that Mr. Agnew was not convicted of faking an injury to collect unwarranted compensation benefits, he in fact suffered from a real, serious and compensable injury. Obviously the nature of the actual facts of his conviction are themselves outside the mainstream.

The Second Circuit and Courts in the District of Connecticut have recognized that a defendant's history of abuse and other personal circumstances and history are relevant in determining whether a case was within the heartland considered by the Guidelines. Such factors may be appropriate grounds for departure under U.S.S.G. § 5K2.0 and 1B1.4. United States v. Rioux, 97 F.3d 648 (2d Cir. 1996), United States v. Rivera, 192 F.3d 81 (2d Cir. 1999)1 United States v. Garriques, 3:96CR-49(RNC), United States v. Ubarri, 5:92CR-69(JAC). The Sentencing Commission, in their commentary to 5K2.0 stated:

> The last paragraph of the policy statement set forth the conditions under which an offender characteristic or other circumstance that is not ordinarily relevant to a departure from the applicable guideline range may be relevant to this determination. The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristic or circumstances individually distinguishes the case. However the Commission believes that such cases will be extremely rare.

The Defense submits that Mr. Agnew's case is one of the extremely rare cases the Commission referred to in this commentary. While there are no pertinent statistics to cite the

11

Guidelines clearly did not take into consideration a person of Mr. Agnew's age facing a criminal conviction for the first time in his life. For someone of Mr. Agnew's age and his history of service to this country to receive the same sentence as some younger person who has never served the public is grossly unfair. Therefore, Mr. Agnew respectfully requests the Court to depart downward from the guidelines in sentencing him in this case.

VI.     **Sentencing Options:**

If the Court applies the Blakely constitutional rationale to this case then Mr. Agnew's Guideline level would be Level 6, which provides for a sentencing range is 0 to 6 months. As set forth above, Mr. Agnew would be eligible at Level 6 to a sentence of probation. Mr. Agnew respectfully requests the Court to sentence him to a period to probation in this case. However should the Court deem that incarceration is necessary, Mr. Agnew respectfully requests that the Court sentence him to home confinement for the period of his sentence, which is permissible under U.S.S.G. §5C1.1(e)(3).

**CONCLUSION:**

Wherefore for the reasons set forth above the defendant, Mr. Gary Agnew, submits that the Court should follow the constitutional principle articulated in <u>Blakely v. Washington</u> and sentence the defendant as follows:

1.    Guideline Level 6:

2.    Sentence 6 months probation;

3.    Fine $500.00;

4.    No restitution;

5.  No supervised release.

THE DEFENDANT,

_/s/ Cheryl E. Heffernan_
Cheryl E. Heffernan
Farver & Heffernan
2842 Old Dixwell Avenue
Hamden, Connecticut 06518
Telephone: 203-288-8266
Facsimile: 203-288-4702
Fed Bar #: CT 06473

## CERTIFICATION

I hereby certify that a copy of the forgoing Defendant's Sentencing Memorandum was forwarded via facsimile on this 4th day of November 2004 to.

AUSA Maria Kahn, Esquire
United States Attorney
157 Church Street
New Haven, CT 06510

_/s/ Cheryl E. Heffernan_
Cheryl E. Heffernan

13

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIM NO. 3:03-CR-241(JCH) |
| vs. | : | |
| | : | |
| GARY R. AGNEW | : | MARCH 29, 2004 |
| | : | |

JURY INSTRUCTIONS

1

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

II. ROLE OF JURORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

III. ALL PARTIES EQUAL BEFORE THE LAW . . . . . . . . . . . . . . . . . . . . . . . . . -8-

IV. PRESUMPTION OF INNOCENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

V. BURDEN OF PROOF BEYOND A REASONABLE DOUBT . . . . . . . . . . . . -10-

VI. NEED FOR UNANIMITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

VII. IMPROPER CONSIDERATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

VIII. ROLE OF ATTORNEYS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

IX. MEANING OF "PROVE" AND "FIND" . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

X. WHAT IS AND IS NOT EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

XI. EVIDENCE OF ALLEGEDLY SIMILAR ACTS . . . . . . . . . . . . . . . . . . . . . . -19-

XII. DIRECT AND CIRCUMSTANTIAL EVIDENCE . . . . . . . . . . . . . . . . . . . . . -21-

XIII. INFERENCES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

XIV. WITNESSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

XV. IMPEACHMENT OF WITNESSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-

XVI. TESTIMONY OF LAW ENFORCEMENT OFFICERS . . . . . . . . . . . . . . . . -27-

XVII. JURY CAN ACCEPT OR REJECT TESTIMONY . . . . . . . . . . . . . . . . . . . -28-

XVIII. TESTIMONY OF DEFENDANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-

XIX. TRANSCRIPTS OF TAPE RECORDINGS . . . . . . . . . . . . . . . . . . . . . . . . . -30-

XX. JURY SHOULD NOT CONSIDER PUNISHMENT . . . . . . . . . . . . . . . . . . . . -31-

XXI. THE INDICTMENT GENERALLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

XXII. COUNTS ONE THROUGH FIFTEEN: MAIL FRAUD . . . . . . . . . . . . . . . -33-

XXIII. STATUTES DEFINING THE OFFENSE CHARGED IN COUNTS ONE THROUGH FIFTEEN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -35-

XXIV. ELEMENTS OF THE OFFENSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -36-

XXV. EXISTENCE OF A SCHEME OR ARTIFICE TO DEFRAUD . . . . . . . . . . -37-

XXVI. PARTICIPATION IN A SCHEME WITH INTENT . . . . . . . . . . . . . . . . . . -40-

XXVII. USE OF THE MAILS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -43-

XXVIII. COUNT SIXTEEN : FALSE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . -45-

XXIX. DATE OF COMMISSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -46-

XXX. THE STATUTE DEFINING THE OFFENSE CHARGED IN COUNT SIXTEEN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -47-

XXXI. ELEMENTS OF THE OFFENSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -48-

XXXII. COPY OF THE INDICTMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -49-

XXXIII. NOTE TAKING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -50-

XXXIV. CLOSING REMARKS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -51-

## XXV. EXISTENCE OF A SCHEME OR ARTIFICE TO DEFRAUD

The first element that the government must prove beyond a reasonable doubt is that there was a scheme or artifice to defraud the United States Department of Labor of money or property by means of false or fraudulent pretenses, representations, or promises.

This first element is almost self-explanatory. A "scheme or artifice" is merely a plan for the accomplishment of an object. A scheme to defraud is any plan, device, or course of action to obtain money or property by means of false or fraudulent pretenses, representations, or promises reasonably calculated to deceive persons of average prudence. "Fraud" is a general term which embraces all the various means by which human ingenuity can devise and which are resorted to by an individual to gain an advantage over another by false representations, suggestions or suppression of the truth, or deliberate disregard of the truth. Thus, a "scheme to defraud" is merely a plan to deprive another of money or property by trick, deceit, deception, or swindle.

The scheme to defraud in this case is alleged to have been carried out by making false or fraudulent statements or representations. A statement, representation, claim or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made. A representation or statement is fraudulent if it was falsely made with the intention to deceive. Deceitful statements or half truths or the concealment of material facts, and the expression of an opinion not honestly entertained, may also constitute false or fraudulent statements under the statute. The deception need

37