## THE UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 3:03 CR 241 (JCH) |
| | : | |
| V. | : | |
| | : | |
| GARY AGNEW | : | NOVEMBER 4, 2004 |

## DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM

### I.    INTRODUCTION

The defendant Gary Agnew respectfully submits this supplemental memorandum in aid of his sentencing. As submitted in the defendant's original sentencing memorandum, Mr. Agnew contends that the United States Supreme Court's recent decision in Blakely v. Washington applies to the Federal Sentencing Guidelines. Generally, in applying the Blakely decision, two options are available to the Court. The Court could find that those aspects of the Guidelines which increase a defendant's sentence without requiring a finding by a jury beyond a reasonable doubt are unconstitutional, and cannot be applied. In the alternative, the Court could find that the Blakely decision renders the entire Sentencing Guidelines system unconstitutional, and, therefore, the Court should sentence Mr. Agnew based upon the applicable statutes and not upon the Guidelines. Under either of these approaches, the defendant contends that he should be sentenced to a term of 0-6 months probation or house arrest.

Mr. Agnew's original sentencing memorandum set forth the specific application of the

-1-

Blakely rationale he seeks to his case and other sentencing issues. This memorandum is submitted to counter anticipated arguments by the Government on why this Court should ignore Blakely or find Blakely inapplicable to this case. This memorandum is further submitted to preserve any appeal issues and arguments the defendant may have under Blakely.

## II.    *BLAKELY* APPLIES TO THE FEDERAL GUIDELINES.

While the Blakely majority acknowledged that "[t]he Federal Guidelines are not before us, and we express no opinion on them[,]" Blakely, 124 S.Ct. at 2538 n.9, this statement confirms only that the Court did not explicitly rule on the constitutionality of the Federal Sentencing Guidelines -- or any other sentencing system not directly at issue. It does not answer the question of what effect Blakely has on other sentencing schemes that share key attributes of the Washington system struck down there.

As of this writing, the overwhelming majority of Courts of Appeals that have issued decisions directly applying Blakely have found that Blakely applies to the Federal Sentencing Guidelines. See United States v. Booker, 2004 WL 1535858 (7th Cir. July 9, 2004); United States v. Montgomery, 2004 WL 1562904 (6th Cir. July 14, 2004); United States v. Ameline, 2004 WL 1635808 (9th Cir. July 21, 2004); United States v. Mooney, 2004 WL 1636960 (8th Cir. July 23, 2004).[1]  However the United States Court of Appeals for the Second Circuit, which had previously certified that question to the Supreme Court, decided the case of U.S. v. Mincey,

---

[1] A number of other appellate decisions mention Blakely without making a definitive ruling on its applicability to the Guidelines. See In re Dean, 2004 WL 1534788 (11th Cir. July 9, 2004); United States v. Spero, 2004 WL 1516863 (11th Cir. July 8, 2004) (per curiam); United States v. Marseille, 2004 WL 1627026 (11th Cir. July 21, 2004); United States v. Cooper, 2004 WL 1598798 (10th Cir. July 19, 2004).

380 F.3rd 102 (2004), refused to apply the Blakely holding to the United States Sentencing

Guidelines and instructed all District Courts within the Circuit to fully apply the Guidelines.

Our research suggests further that most District Courts that have had occasion to consider

the question have found that Blakely applies to the Federal Sentencing Guidelines.[2]  Some of

these decisions are discussed at other points in this memorandum.

Legal experts and commentators agree with the courts that Blakely applies to the Federal

Guidelines.  See, e.g., Kate Stith and William Stuntz, Sense and Sentencing, N.Y. Times, June 29,

2004 ("The ruling applies not only to Washington, but also to other states with similar systems --

and to the federal sentencing guidelines."); Warren Richey, Supreme Court Throws Sentencing

Guidelines Into Doubt, Christian Science Monitor, June 28, 2004 (quoting Professor Kevin Reitz,

a University of Colorado law professor and sentencing expert, as stating that "[u]p to 90 percent

of federal sentences will run afoul of Blakely").  Apparently, so do some (if not all) Justices of

the Supreme Court.

Justice O'Connor, dissenting from the majority decision in Blakely and joined by Justice

Breyer, summarily dismissed the notion that the decision did not impact the federal Sentencing

Guidelines.  "It is no answer to say that today's opinion impacts only Washington's scheme and

not others, such as, for example, the Federal Sentencing Guidelines."  Blakely, 124 S.Ct. at 2549,

(O'Connor, J., dissenting).  Instead, Justice O'Connor concluded, as a result of the decision,

"[o]ver 20 years of sentencing reform are all but lost[.]"  Id. at 2543 (O'Connor, J., dissenting).

All four dissenting Justices joined Justice O'Connor's statement that it is "of little moment that

---

[2] This does not include decisions issued by district courts within the Fifth Circuit after Pineiro or the Second Circuit after Mincey.

the majority does not expressly declare guidelines schemes unconstitutional, for, as residents of 'Apprendi-land' are fond of saying, 'the relevant inquiry is one not of form, but of effect.'" Id. at 2543 (internal citations omitted).

United States Senators Orrin Hatch and Patrick Leahy, co-chairs of the Senate Judiciary Committee, appear to share Justice O'Connor's concern. They convened a hearing before the Senate Judiciary Committee on July 13, 2004, "to examine the recent Supreme Court decision in Blakely v. Washington and its impact on the federal sentencing guideline system." Hatch News Release (attached as Exh. A). Senator Leahy described the Blakely decision as "the latest setback for the federal sentencing guidelines" and suggested that the Judiciary Committee would "take the lead in restoring the guidelines system[.]" Id.

Even the Solicitor General of the United States, in his brief as Amicus Curiae in the Blakely case, asserted that "[a] decision invalidating Washington's departure mechanism would raise questions about the federal Sentencing Guidelines' constitutionality." United States Amicus Brief at 29 (attached as Exh. B). Although the Solicitor General advanced several arguments for distinguishing the Washington system from the Federal Guidelines, he nonetheless conceded that it was uncertain whether those distinctions would be sufficient if [the Supreme] Court applied Apprendi here, since the United States Sentencing Guidelines have the force and effect of law, and it is theoretically possible to calculate a guidelines sentence based on the fact reflected in the jury verdict alone (although that would distort the intended operation of the Guidelines). Id. at 9. The rule of Blakely, the Solicitor General foretold, "would have profound consequences for the federal Guidelines." Id. at 26.

      A.      **Apprendi and Ring Apply to the Federal Sentencing Guidelines; Therefore,**

### So Does <u>Blakely</u>.

The Supreme Court's decision in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), forms

the basis of the holding in <u>Blakely</u>. There, the Court stated:

> Other than the fact of a prior conviction, any fact that increases the penalty for a
> crime beyond the prescribed statutory maximum must be submitted to a jury, and
> proved beyond a reasonable doubt. With that exception, we endorse the statement
> of the rule set forth in the concurring opinions in [<u>Jones v. United States</u>, 526 U.S.
> 227 (1999)]: "[I]t is unconstitutional for a legislature to remove from the jury the
> assessment of facts that increase the prescribed range of penalties to which a
> criminal defendant is exposed. It is equally clear that such facts must be established
> by proof beyond a reasonable doubt."

<u>Apprendi</u>, 530 U.S. at 490. The Supreme Court stated that <u>Blakely</u> "requires us to apply the rule

we expressed in <u>Apprendi</u>[.]" <u>Blakely</u>, 124 S.Ct. at 2536. The holding of <u>Blakely</u> is entirely

based on the holdings of <u>Apprendi</u> and <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), a post-<u>Apprendi</u>

death penalty case, and their interpretations of the Sixth Amendment.

<u>Apprendi</u> was decided by the Supreme Court on a grant of certiorari from the New Jersey

Supreme Court. There, the Court considered the constitutionality of "a New Jersey hate-crime

statute that authorized a 20-year sentence, despite the usual 10-year maximum, if the judge found

the crime to have been committed" with a particular motive. <u>Blakely</u>, 124 S.Ct. at 2537.

In <u>Ring</u>, the Court "applied <u>Apprendi</u> to an Arizona law that authorized the death penalty

if the judge found one of ten aggravating factors." <u>Id.</u> The Court held that <u>Apprendi</u> required a

finding that the Arizona law was unconstitutional:

> The right to trial by jury guaranteed by the Sixth Amendment would be senselessly
> diminished if it encompassed the fact-finding necessary to increase a defendant's
> sentence by two years, but not the fact-finding necessary to put him to death. We
> hold that the Sixth Amendment applies to both.

<u>Ring</u>, 536 U.S. at 609.

Both Apprendi and Ring are universally acknowledged to apply to the Federal Sentencing Guidelines. See, e.g., Coleman v. United States, 329 F.3d 77 (2d Cir. 2003) (ruling on Apprendi issue as applied to Federal Sentencing Guidelines); United States v. Luciano, 311 F.3d 146 (2d Cir. 2002) (same); United States v. Quintieri, 306 F.3d 1217 (2d Cir. 2002) (same); see also Allen v. United States, 536 U.S. 953 (2002) (remanding federal sentencing case for reconsideration in light of Ring); United States v. Fell, 360 F.3d 135 (2d Cir. 2004) (noting Ring's applicability in federal cases); United States v. Yousef, 327 F.3d 56 (2d Cir. 2003) (same).  Because the two decisions that form the basis of Blakely apply to the Federal Sentencing Guidelines, it would be nonsensical to claim that Blakely itself does not.

Furthermore, the cases before the Court in Apprendi and Ring, like Blakely, were appeals from state court rulings addressing state sentencing laws.  Neither Apprendi nor Ring discussed the impact of those decisions on the Federal Sentencing Guidelines.  Indeed, faced with arguments from the dissent regarding the impact of Apprendi on the Federal Sentencing Guidelines, the majority there stated:

> The principal dissent, in addition, treats us to a lengthy disquisition on the benefits of determinate sentencing schemes, and the effect of today's decision on the federal Sentencing Guidelines. Post, at 2391-2395.  The Guidelines are, of course, not before the Court.  We therefore express no view on the subject beyond what this Court has already held.  See, e.g., Edwards v. United States, 523 U.S. 511, 515 (1998) (opinion of BREYER, J., for a unanimous court) (noting that "[o]f course, petitioners' statutory and constitutional claims would make a difference if it were possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy.  That is because a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines.  [United States Sentencing Commission Guidelines Manual § 5G1.1 (Nov. 1994) ]").

Apprendi, 530 U.S. at 497 n.21 (emphasis added).  The emphasized language in Apprendi is remarkably similar to the language in footnote 9 of Blakely. See Blakely, 124 S.Ct. at 2538 n.9

("The Federal Guidelines are not before us, and we express no opinion on them."). In spite of

this explicit disclaimer, there is no dispute that <u>Apprendi</u> governs cases decided under the Federal

Sentencing Guidelines. Under this reasoning, <u>Blakely</u>, too, is applicable to Guideline cases.

**B.    The Sixth, Seventh, Eighth and Ninth Circuits Have Found that <u>Blakely</u> Applies to the Federal Sentencing Guidelines; the Fifth Circuit's Holding to the Contrary Is Unpersuasive.**

On July 9, 2004, the Seventh Circuit issued an opinion in <u>United States v. Booker</u>,

holding that the Guidelines are unconstitutional, under <u>Blakely</u>, at least in certain cases:

> [W]e think that the guidelines, though only in cases such as the present one in which they limit defendants' right to a jury and to the reasonable-doubt standard, and thus the right of defendant Booker to have a jury determine (using that standard) how much cocaine base he possessed and whether he obstructed justice, violate the Sixth Amendment as interpreted by <u>Blakely</u>. We cannot be certain of this. But we cannot avoid the duty to decide an issue squarely presented to us. If our decision is wrong, may the Supreme Court speedily reverse it.

<u>Booker</u>, 2004 WL 1535858 at *4. The <u>Booker</u> Court declined to determine whether the

Guidelines were necessarily unconstitutional in their entirety, or whether the offending provisions

-- <u>i.e.</u>, those provisions which call for an increase in offense level based on findings by the judge

under a preponderance of the evidence standard -- could be severed from the remainder of the

system. <u>See id.</u> at *5-6.

In reaching this conclusion, the Court considered, and rejected, the two key arguments

advanced by the Government: (1) that the Federal Sentencing Guidelines are distinguishable from

the Washington State system at issue in <u>Blakely</u>; and (2) that prior Supreme Court and Seventh

Circuit precedent holding the Guidelines to be constitutional somehow insulated the Guidelines

from the impact of <u>Blakely</u>.

On July 14, 2004, the Sixth Circuit issued an opinion in <u>United States v. Montgomery</u>,

-7-

holding that Blakely "made a sea change in the administration of the Federal Sentencing Guidelines." Montgomery, 2004 WL 1562904 at *2. The Court concluded:

> In light of Blakely, and the language of the enabling act itself, a district judge should no longer view herself as operating a mandatory or determinate sentencing system, but rather should view the guidelines in general as recommendations to be considered and then applied only if the judge believes they are appropriate and in the interests of justice in the particular case.

Id. at *3. Five days after issuing this decision, the Sixth Circuit granted a rehearing en banc on an expedited basis. On July 23, 2004, after the parties reported that a settlement had been reached, the July 14 decision was vacated. See United States v. Montgomery, 2004 WL 1637660 (6th Cir. July 23, 2004).

On July 21, 2004, the Ninth Circuit joined the Sixth and Seventh Circuits, concluding that although Blakely directly addressed only the Washington State sentencing scheme, its "reasoning applies with equal force to the Sentencing Guidelines." Ameline, 2004 WL 1635808 at *5. Ameline is the most comprehensive of the Circuit Court opinions considering Blakely.

As to the question whether Blakely applies at all to the Federal Sentencing Guidelines, the Court there noted that the Guidelines scheme "is remarkably similar to the Washington State sentencing scheme" invalidated by Blakely. Id. The Court rejected the Government's argument that the fact that the Guidelines are promulgated by the Sentencing Commission, instead of enacted directly by Congress, was relevant to Blakely's applicability. See id. at *7. The Court also rejected the argument that previous Supreme Court and Ninth Circuit opinions "upholding sentences under the Guidelines against a variety of constitutional challenges" precluded a finding that Blakely applies to the Guidelines. Id. at *7-8. Instead, the Court found that Blakely had redefined the term "statutory maximum" as used in Apprendi to refer to the "presumptive"

-8-

maximum sentence dictated by the Guidelines, as opposed to simply the statutory maximum, and that this holding applied equally to the Federal Guidelines as to the Washington State system.

The Government argued in Ameline, as it has consistently in all other Blakely cases, that if the Court found Blakely to be applicable to the Federal Guidelines, it must find that the Guidelines as a whole are unconstitutional and impose sentence under an indeterminate statutory sentencing scheme. The Ninth Circuit rejected this argument, finding that the unconstitutional provisions of the Guidelines are severable from the system as a whole, and that those aspects which can be applied in accordance with Blakely and the Sixth Amendment should be applied. See id. at *10-11.

The Eighth Circuit was the fourth Appellate Court to rule that, under Blakely, the Federal Sentencing Guidelines are unconstitutional. In United States v. Mooney, the panel unanimously remanded for resentencing in light of Blakely. See Mooney, 2004 WL 1636960 at *1. Two judges of the panel determined that the district court, on remand, should treat "the Guidelines as non-binding but advisory, unless the defendant consents to a Guidelines sentence." Id. at *13. The third agreed that the case should be remanded for resentencing in light of Blakely, but disagreed that the Guidelines must be found unconstitutional in its wake. See id. at *14.

The Fifth Circuit is the only court to date to hold that Blakely does not apply to the Federal Guidelines. In Pineiro, the Court concluded that although it was undeniable that Blakely "strikes hard at the prevailing understanding of the Guidelines[,]" it does not affect the Guidelines directly because "the Guidelines do not set maximum sentences in the same way as do congressional enactments." Pineiro, 2004 WL 1543170 at *6. The Court stated:

Blakely may have weakened the long-embraced distinction between United States

-9-

> Code maxima and the Guidelines ranges, but we cannot conclude that Blakely --
> which explicitly reserved comment on the Guidelines -- has abolished the
> distinction's importance.

Id. at *9.  Thus, the Court found, the Guidelines are unaffected by Blakely.  On that basis, the

Court affirmed the district court's judgment, sentencing the defendant at an increased offense

level based upon the judge's finding that the defendant was a supervisor or leader of the crime of

conviction.[3]

The Second Circuit originally certified three questions to the Supreme Court seeking

clarification of whether Blakely applies to the Federal Sentencing Guidelines, but has not issued

any substantive ruling on the matter.  See United States v. Penaranda, 2004 WL 1551369 (2d Cir.

July 12, 2004).  At that time this Circuit effectively silent on the merits of this question, however

in August the United States Court of Appeals for the Second Circuit, decided the case of U.S. v.

Mincey, 380 F.3[rd] 102 (2004), refused to apply the Blakely holding to the United States

Sentencing Guidelines and instructed all District Courts within the Circuit to fully apply the

Guidelines.  Considering the uncertainty of the Supreme Court's expected ruling the defendant

asked this Court to suspend execution of any sentence pending with does not follow the Blakely

principles until a decision has been issued on this issue by the United States Supreme Court.

**C.      District Courts Faced with the Issue Have Uniformly Found that Blakely
         Applies to the Federal Sentencing Guidelines.**

On June 29, 2004, United States District Judge Paul G. Cassell of the District of Utah

---

[3] The Fifth Circuit appears to recognize that its position is unlikely to prevail.  See Pineiro, 2004 WL 1543170 at *9 ("In writing these words we are more aware than usual of the potential transience of our decision.  We trust that the question presented in cases like this one will soon receive a more definitive answer from the Supreme Court; and then, if necessary, Congress can craft a uniform, rational, nationwide response.").

issued a decision concluding that, under <u>Blakely</u>, the Federal Sentencing Guidelines were

unconstitutional. <u>See</u> <u>United States v. Croxford</u>, 2004 WL 1462111 (D. Utah June 29, 2004)

("<u>Croxford I</u>").  The Court stated:

> For more than fifteen years, sentencings such as [this one] have been governed by the federal sentencing guidelines.  Last Thursday, however, the United States Supreme Court ruled that portions of the State of Washington's sentencing guidelines were unconstitutional.  The Court held that Washington's guidelines scheme deprived a defendant of his Sixth Amendment right to a jury trial by increasing his presumptive sentence based on a judge's, rather than a jury's, factual findings regarding sentencing factors.  Because the federal sentencing guidelines suffer from the same constitutional infirmity, the court holds that, as applied to this case, the federal sentencing guidelines are unconstitutional and cannot govern defendant [this] sentencing.

<u>Id.</u> at *1.  The Court reached this conclusion by examining how the Guidelines would apply in the

case before it.

In <u>Croxford</u>, the PSR recommended that the defendant's offense level be increased on

two bases: obstruction of justice and certain "relevant conduct."  <u>See</u> <u>id.</u> at *7.  Each of these

enhancements would have increased the defendant's sentence beyond that dictated by the

"presumptive" offense level applied to his case.  The facts underlying these two proposed

enhancements had not been admitted by the defendant, and had not been presented to the jury for

a finding beyond a reasonable doubt.  The Court found that it could not apply these enhancements

in light of <u>Blakely</u>:

> Because application of these two enhancements would require findings of fact by the court and lead to a penalty beyond the statutory maximum for the conduct admitted to by <u>Croxford</u>, the court finds that their application would result in a violation of the Sixth Amendment.

<u>Id.</u> at *7.

The Court noted that it could find no meaningful difference between the Federal

Sentencing Guidelines and the Washington State system at issue in <u>Blakely</u>. <u>See id.</u> at *8. Thus, it stated, "to the extent that the Guidelines require an upward enhancement of the defendant's sentencing range without a jury determination, this court concludes that they do not satisfy the commands of <u>Blakely</u>." <u>Id.</u> at *9. The Court then identified three possible ways of addressing the problem:

> (1) the court could convene a sentencing jury, which would determine (presumably by proof beyond a reasonable doubt) whether the facts underlyin

Only one decision applying <u>Blakely</u> has been published in the District of Connecticut. Judge Dorsey issued a "Memorandum re: Order Correcting Sentence" on July 8, 2004, in <u>United States v. Toro</u>, 2004 WL 1575325 (D. Conn. July 8, 2004). 4 There, Judge Dorsey held that <u>Blakely</u> applied to the Federal Sentencing Guidelines. He selected <u>Croxford</u>'s "second option," applying the basic Guidelines scheme, including the base offense level and downward adjustments, but refusing to increase the defendant's Guidelines range based upon any facts that were neither proven to the jury nor admitted by the defendant.

In <u>United States v. Montgomery</u>, 2004 WL 1535646 (D. Utah July 8, 2004), Judge Ted Stewart held that "Blakely's effect upon federal sentencing is unavoidable," noting that "there is no meaningful difference between the sentencing regime employed by the State of Washington and the federal sentencing guidelines[.]" <u>Id.</u> at *1. While adopting some of the holding in <u>Croxford</u>, Judge Stewart disagreed with its conclusion that the entire Guidelines system should be disregarded, and instead announced that the Court would adopt the second [<u>Croxford</u>] option, and will continue to apply the sentencing guidelines, but without additional fact-finding by the Court that might result in an upward enhancement or departure that would result in a sentence above that which would otherwise apply under the guidelines, absent those findings. <u>Id.</u> at *4.

United States District Judge Joseph R. Goodwin of the Southern District of West Virginia issued a decision on June 30, 2004, adopting the same approach. <u>See</u> <u>United States v. Shamblin</u>, 2004 WL 1468561 (S.D.W.V. June 30, 2004). Judge Goodwin stated that "the Guidelines are the law which bind this court in sentencing matters, and to the extent that the Guidelines can be applied in a manner consistent with the Sixth Amendment, the court shall strive to do so." <u>Id.</u> at *

---

4 This decision was issued prior to the Second Circuit's decision in <u>Mincey.</u>

8. Judge Goodwin specifically noted that he "part[ed] ways with Judge Cassell concerning a choice between available options." Id. at *8 n.11.

United States District Judge Thomas Penfield Jackson of the District of Columbia held, at a hearing on a Rule 35 motion on June 30, 2004, that the sentence he had previously imposed on the defendant was unconstitutional in light of Blakely. See United States v. Watson, CR-03-0146(TPJ) (D.D.C. June 30, 2004

On June 28, 2004, United States District Judge D. Brock Hornby of the District of Maine held in United States v. Fanfan, 03-47-P-H, that "the Federal Guidelines [are] exactly comparable to the Washington state scheme in all respects material to the Blakely decision." Fanfan Transcript at p. 103 (attached as Exh. C). Accordingly, the Court found that it would be "unconstitutional for [it] to apply the federal guideline enhancements in the sentence of Ducan Fanfan[.]" Id. at p. 104.

Additional district court decisions finding Blakely to apply to the Federal Sentencing Guidelines include: United States v. Marrero, 2004 WL 1621410 (S.D.N.Y. July 21, 2004) (Rakoff, J.); United States v. Khan, 2004 WL 1616460 (E.D.N.Y. July 20, 2004) (Weinstein, J.); United States v. Lockett, 2004 WL 1607496 (E.D. Va. July 16, 2004) (Hudson, J.); United States v. Landgarten, 2004 WL 1576516 (E.D.N.Y. July 15, 2004) (Weinstein, J.); United States v. Einstman, 2004 WL 1576622 (S.D.N.Y. July 14, 2002) (McMahon, J.); United States v. Medas, 2004 WL 1498183 (E.D.N.Y. July 1, 2004) (Glasser, J.) (finding that Blakely applies to federal cases but declining to submit an amended verdict form calling for findings on enhancement issues to a jury already deliberating); United States v. Wada, 2004 WL 1488695 (D. Or. June 29, 2004) (Brown, J.).

-14-

**D.** **There Is no Meaningful Difference Between the Washington State Sentencing System at Issue in <u>Blakely</u> and the Federal Sentencing Guidelines.**

In other cases, and in public statements, the Government has argued that the Federal Sentencing Guidelines are distinguishable from the Washington system at issue in <u>Blakely</u> because that system was comprised of statutes enacted directly by the legislature, while the federal system is comprised of Guidelines adopted by the Sentencing Commission as authorized by Congress. <u>See</u>, <u>e.g.</u>, Watson Tr. at 5, 6 (Exh. C) (Assistant United States Attorney argued that "unlike the guidelines in Washington . . . [the Federal Guidelines] are not statutory. They are by commission."). This is a meaningless distinction.

As Justice O'Connor noted, "[t]he fact that the Federal Sentencing Guidelines are promulgated by an administrative agency nominally located in the Judicial Branch is irrelevant to the majority's reasoning." <u>Blakely</u>, 124 S.Ct. at 2549 (O'Connor, <u>J.</u>, dissenting). The Seventh Circuit has opined that "it is hard to believe that the fact that the [federal] guidelines are promulgated by the U.S. Sentencing Commission rather than by a legislature can make a difference." <u>Booker</u>, 2004 WL 1535858 at *2. The <u>Shamblin</u>, <u>Fanfan</u> and <u>Toro</u> Courts each implicitly rejected any argument based on this alleged distinction. <u>See</u> <u>Shamblin</u>, 2004 WL 1468561 at * 6; Fanfan Tr. at 102-03; <u>Toro</u>, 2004 WL 1575325 at *6-7. This Court should do the same.

It is well established that "[t]he Sentencing Guidelines have the force and effect of law, and are to be construed as if they were a statute[.]" United States v. Sicurella, 367 F.3d 82, 85 (2d Cir. 2004) (internal quotation marks and citation omitted) (emphasis added); <u>see</u> <u>also</u> <u>United</u>

-15-

States v. Gordon, 291 F.3d 181, 190 (2d Cir. 2002). Even the commentary to the Guidelines is binding on the Court. See Stinson v. United States, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). Congress retains supervision over the Sentencing Commission, and Guidelines provisions "can be amended or revoked by Congress at any time." United States v. Smith, 354 F.3d 171, 175 (2d Cir. 2003).

Likewise, any structural differences between the Washington and federal systems have no bearing here. Justice O'Connor noted few differences and opined that, "[i]f anything, the structural differences that do exist make the Federal Guidelines more vulnerable to attack." Blakely, 124 S.Ct. at 2549 (O'Connor, J., dissenting).

The Sentencing Guidelines are the product of statutory authority. They are the functional equivalent of statutes, and have the same authority. There is no reason to believe that simply because they were adopted by the Sentencing Commission, they are not subject to the constitutional rulings of the Supreme Court. Accordingly, should the Government raise this argument here, the Court should reject it.

### E.    Supreme Court and Second Circuit Precedent that Predates Blakely Does Not Prevent a Finding that Blakely Applies to the Federal Guidelines.

The Government has also argued in other cases that the Court is bound by existing precedent declaring the Guidelines to be constitutional because Blakely did not expressly state that such precedent was overruled by its decision. This argument, too, lacks merit. The Supreme Court has advised lower courts as follows:

-16-

> If a precedent of this Court has <u>direct application</u> in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.

<u>Rodriguez de Quijas v. Shearson/American Exp., Inc.</u>, 490 U.S. 477, 484 (1989) (emphasis added).  This admonishment does not apply here, because there is no Supreme Court precedent of "direct application."  Prior to its decision in <u>Blakely</u>, the Supreme Court had issued a number of rulings upholding various aspects of the Guidelines against various types of attack.  But the Court had never been called on to decide whether a defendant's Sixth Amendment rights are violated if his sentence is increased beyond the presumptive Guidelines range on the basis of factual findings made by a judge under a preponderance of the evidence standard.  Each of the major decisions in which the Court evaluated the Sentencing Guidelines can be read in harmony with <u>Blakely</u>, and none suggests that <u>Blakely</u> cannot properly be applied to the Federal Sentencing Guidelines.

Far from demanding a different outcome than <u>Blakely</u>, as discussed above, the Court's decision in <u>Apprendi</u> actually forms the basis of the holding in <u>Blakely</u>.  There, the Court stated:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.  With that exception, we endorse the statement of the rule set forth in the concurring opinions in [<u>Jones v. United States</u>, 526 U.S. 227 (1999)]: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.  It is equally clear that such facts must be established by proof beyond a reasonable doubt."

<u>Apprendi</u>, 530 U.S. at 490.  <u>Blakely</u> simply defines "prescribed statutory maximum" to mean the maximum sentence prescribed by the Guidelines based solely on facts established either by a proper jury finding or admission.  <u>Apprendi</u> and its predecessor, <u>Jones v. United States</u>, 526 U.S.

-17-

227, 243 n.6 (1999), and its successor, <u>Ring</u>, do not undermine <u>Blakely</u>'s applicability to the

Federal Sentencing Guidelines; they foreshadow and support it.

Prior to its decisions in <u>Apprendi</u>, <u>Jones</u>, <u>Ring</u> and <u>Blakely</u>, the Supreme Court had held

that the Double Jeopardy Clause does not bar consideration of relevant, uncharged conduct in

determining a defendant's sentence under the Guidelines:

> Because consideration of relevant conduct in determining a defendant's sentence
> <u>within the legislatively authorized punishment range</u> does not constitute punishment
> for that conduct, the instant prosecution does not violate the Double Jeopardy
> Clause's prohibition against the imposition of multiple punishments for the same
> offense.

<u>Witte v. United States</u>, 515 U.S. 389, 406 (1995) (emphasis added). This decision does not

constitute precedent of "direct application" because it has nothing to do with a defendant's Sixth

Amendment right to a jury trial. Furthermore, as the emphasis above illustrates, <u>Witte</u> is perfectly

compatible with <u>Blakely</u>; <u>Blakely</u> simply clarifies the definition of "legislatively authorized

punishment range."

The Court's decision in <u>Edwards v. United States</u>, 523 U.S. 511 (1998), is also

inapposite. <u>See</u> <u>Booker</u>, 2004 WL 1535858 at *4-5 (<u>Edwards</u> "did not rebuff a Sixth Amendment

challenge to the guidelines because there was no Sixth Amendment challenge to the guidelines.").

<u>United States v. Watts</u>, 519 U.S. 148 (1997), does not even mention the Sixth Amendment; it

appears instead to be anchored in the Double Jeopardy holding of <u>Witte</u>. <u>See</u> <u>id.</u> at 154.

Likewise, in <u>United States v. Dunnigan</u>, 507 U.S. 87 (1993), the Court offered no opinion -- nor

was it asked to -- on the Sixth Amendment issues addressed by <u>Blakely</u>. Finally, <u>Mistretta v.</u>

<u>United States</u>, 488 U.S. 361 (1989), is also inapposite here. There, the Court held that "in

creating the Sentencing Commission -- an unusual hybrid in structure and authority -- Congress

-18-

neither delegated excessive legislative power nor upset the constitutionally mandated balance of powers among the coordinate branches." Id. at 412.  It made no ruling on, nor mention of, a defendant's Sixth Amendment right to a trial by jury.

Thus, none of these prior decisions of the Supreme Court requires or even suggests that the holding of Blakely cannot be applied to the Federal Sentencing Guidelines.  Each and every one can be read in harmony with Blakely.  Accordingly, should the Government raise this argument, the defendant respectfully urges the Court to reject it.


**CONCLUSION:**

Wherefore for the foregoing reasons the Court should apply the reasoning of the Supreme Court in Blakely v. Washington to the case at bar using the approach of Judge Dorsey in United States v. Toro.  In the alternative, should this Court refuse to apply Blakely, the defendant respectfully request the Court to suspend execution of any sentence until the United States Supreme Court issues a decision on the Blakely line of cases before it at this time.

THE DEFENDANT,

Cheryl E. Heffernan
Farver & Heffernan
2842 Old Dixwell Avenue
Hamden, Connecticut 06518
Telephone: 203-288-8266
Facsimile: 203-288-4702
Fed Bar #: CT 06473

## CERTIFICATION

I hereby certify that a copy of the forgoing Defendant's Supplemental Sentencing Memorandum was forwarded on this 4th day of November 2004 to.

AUSA Maria Kahn, Esquire
AUSA Kirshna Patel, Esquire
United States Attorney
157 Church Street
New Haven, CT 06510

Cheryl E. Heffernan

-20-

# EXHIBIT A



# NEWS RELEASE
# ORRIN HATCH
*United States Senator for Utah*

July 13th, 2004                                    Contact: Margarita Tapia (202) 224-5225

## JUDICIARY STATEMENT: "BLAKELY V. WASHINGTON AND THE FUTURE OF THE FEDERAL SENTENCING GUIDELINES"

Statement of Chairman Orrin G. Hatch
before the
United States Senate Judiciary Committee

Hearing on
"*Blakely v. Washington* and the Future of the Federal Sentencing Guidelines"

Good morning and welcome to the Senate Judiciary Committee's hearing examining the Supreme Court's recent decision in *Blakely v. Washington* and the future of the Federal Sentencing Guidelines. As one of the original co-sponsors of the United States Sentencing Commission, and a proponent of reducing sentencing disparity across the nation, I have a strong interest in preserving the integrity of the federal guidelines against constitutional attack.

As many here may already know, defendants are routinely sentenced by judges who decide sentencing facts based upon a preponderance of the evidence standard. This has all changed in the last two weeks. On June 24, 2004, in *Blakely v. Washington*, the Supreme Court held that any fact that increases the maximum penalty under a state statutory sentencing guidelines scheme must be presented to a jury and proved beyond a reasonable doubt even though the defendant's sentence falls below the statutory maximum sentence.

Although the Supreme Court explicitly stated in a footnote that "The Federal Guidelines are not before us, and we express no opinion on them," it also characterized the government's amicus brief as questioning whether differences between the state and federal sentencing schemes are constitutionally significant. The ambiguity apparent in *Blakely* and the strong suggestions by the dissent that it will apply to the federal sentencing guidelines, has understandably created angst throughout the federal criminal justice system.

If *Blakely* were to apply to the federal sentencing guidelines, you would have a clear double standard. Any sentencing fact that would increase a sentence would have to be presented to a jury and proven beyond a reasonable doubt. But any sentencing fact that would decrease a sentence could be decided by a judge by a preponderance of the evidence. Not only would this be incredibly confusing to everyone involved in this process but I imagine that crime victims and their families would consider this one way ratchet to be fundamentally unfair.

In the last two and a half weeks alone, the criminal justice system has begun to run amok. Some

judges have thrown out the guidelines and are sentencing defendants with unfettered discretion. Other judges have adopted some of the guidelines—those guidelines that favor defendants—and ignored all guidelines that might increase a defendant's sentence. Still other judges have convened juries to decide sentencing factors that might increase a sentence—even though there are no procedures in place to govern such sentencing juries. Prosecutors are submitting verdict forms for juries that are over 20 pages in length because they cover every possible sentencing factor that might be applied in a particular case.

While I believe most federal judges are trying their hardest to address this issue deliberately and with the utmost fairness, I fear that some judges might view *Blakely* as an opportunity to selfishly garner judicial power in the hopes of restoring unlimited judicial discretion with respect to sentencing. Even among those judges with the best intentions, however, there is legitimate disagreement about whether the federal sentencing guidelines will be subject to the proof and procedural requirements announced in *Blakely*.

You've heard of circuit splits, but here we have splits even within a single district. Not only have the Fifth and Seventh Circuit disagreed on this issue, but, in my home of Utah, district judges have adopted three different approaches to sentencing defendants in light of *Blakely*. As I am sure Judge Cassell will explain in more detail in his testimony, he found the federal sentencing guidelines unconstitutional as applied in *United States v. Croxford*, but just yesterday, Judge Dee Benson upheld the sentencing guidelines.

I am heartened to hear that, just yesterday afternoon, the Second Circuit, en banc, certified a set of three questions for the United States Supreme Court and urged it to adjudicate promptly the threshold issue of whether *Blakely* applies to the federal sentencing guidelines. I hope the Supreme Court promptly considers the matter.

I know we will hear more about what is going on in the courts from our witnesses, so I will not go on at length about those cases now. I would, however, like to mention just a couple of examples for those who have not been following the issue closely. I'm sure we all recall Dwight Watson, the man who sat in a tractor last year outside the U.S. Capitol for 47 hours and threatened to blow up the area with organophosphate bombs. The day before the *Blakely* opinion, Mr. Watson was sentenced to a 6 year prison sentence. Less than a week after the Supreme Court's opinion, he was re-sentenced to 16 months, which was essentially time served. He is now a free man.

A defendant in West Virginia had an offense level that was off the sentencing charts. Although he would have been subject to a life sentence under the guidelines, the statutory maximum penalty was 20 years. He was given a 20 year sentence three days before *Blakely* was decided. A week later, his sentence was drastically reduced to 12 months. The judge did not rely on any relevant conduct or any sentencing enhancements in calculating the defendant's sentence. In other words, he only applied a portion of the sentencing guidelines—those that he thought remained valid after *Blakely*.

And *Blakely* is potentially harmful to defendants as well as to prosecutors. Right now, the Federal Rules of Evidence prevent extraneous information about prior bad acts from coming before a jury during a trial. But the Federal Rules of Evidence do not apply at sentencing hearings. If *Blakely* applies to the federal sentencing guidelines, the Rules may need to be amended to ensure that prior bad acts that constitute relevant conduct can be presented to a jury so they can determine sentencing facts.

In addition, it is possible that some here in Congress may respond by creating new mandatory minimum penalties to compensate for the unfettered discretion. The House already has legislation

pending that would do exactly that. It may only take a couple of lenient sentences in high profile cases to raise enough of a stir to increase mandatory minimum penalties.

Another long term problem for defendants is in negotiating plea agreements. Prosecutors, who are better acquainted with sentencing nuances, will be in a better position to dictate which factors will apply in the 97 percent of cases that plead out every year. This will result is greater disparity among equally culpable defendants across the nation.

I have been working with my colleagues on the left as well as my counterparts in the House to come up with a temporary, bi-partisan fix to this sentencing dilemma that now faces our nation. Although we do not have any legislative language as of yet, we are looking at a proposal that is similar to one that Professor Frank Bowman, one of our witnesses today, proposed to the Sentencing Commission a couple of weeks ago. In addition to raising the maximum penalties within a guideline range to the statutory maximum penalty, we are considering some safeguards to prevent hanging judges from sentencing all defendants to the statutory maximum.

###