UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 3:03CR241(JCH) |
| V. | : | |
| GARY AGNEW | : | December 1, 2004 |

**GOVERNMENT'S SECOND SUPPLEMENTAL SENTENCING MEMORANDUM**

The Government submits this memorandum to address certain issues raised during the defendant's sentencing hearing on November 8, 2004, which has been postponed to December 6, 2004 at 9:30 a.m.

I.   **Defendant's Objections to the Factual Statements in PSR**

In an effort to retry this case before the Court, the defendant Gary Agnew ("the defendant" or "Agnew") has raised[1] numerous objections to factual statements in the PSR. The majority of the objections, however, are contradicted by the evidence admitted at trial and the jury's verdict. The defendant believes that the PSR should contain a neutral recitation of the allegations of the indictment and objects to references to defendant's guilt. The reality, however, is that the jury found the defendant guilty beyond a reasonable doubt of each count of the indictment.

---

[1] The defendant did not raise specific objections to the factual statements in his sentencing memorandum but, rather, in a letter to U.S. Probation after the first disclosure and subsequently orally at the time of sentencing.

Further, the PSR, which by its nature advises the Court of information relating to the defendant and the offense, is not limited to evidence introduced at trial. If that were the case, the PSR should eliminate all of the background information relating to the defendant's personal history, some of which he relies on as a basis for a downward departure motion.[2] In fact, Rule 32 of the Federal Rules of Criminal Procedure, does not limit the PSR to evidence admitted at trial and states that the PSR must contain "the defendant's history and characteristics, including . . . any circumstances affecting the defendant's behavior that may be helpful in imposing sentence . . . ." Fed. R. Crim P. 32(d)(2).

### A. Jury's Verdict

The defendant claims that the trial evidence did not establish and the jury did not necessarily find that the defendant concealed all the following from DOL and U.S. Postal Service: 1) his ability to work; 2) that he was engaged in doing work at IM; and 3) that he received compensation from doing work at IM. While the jury was instructed that a finding of any one

---

[2] By way of example, the defendant claims that being raised by a single parent, a fact contained in the PSR, is a factor that, together with others, warrants a downward departure. The fact that the defendant's father left his mother when the defendant was 6 years old and he was raised alone by his mother was not supported by testimony at trial or a finding of the jury. Yet the defendant does not object to that factual statement in the PSR and asks the Court to rely upon it in determining his sentencing guidelines.

2

of the three alleged misrepresentations in furtherance of the scheme was sufficient to convict on counts 1 through 15, count 16 specifically charged the defendant with knowingly and willfully falsifying, concealing and covering up on an OWCP Form CA-1032 the fact that he worked at IM.  Thus, with respect to Count 16, the jury was properly instructed and found the defendant guilty of concealing "the fact that he worked at IM" from DOL and USPS. See Jury Instructions at 45-48; Indictment at ¶ 18.

By finding the defendant guilty beyond a reasonable doubt of concealing his actual employment at IM, the jury naturally had to have concluded that the defendant also had the ability to work and concealed that from DOL.  Defendant's reliance on the alternative allegations of counts 1 through 16 to avoid guilt is misplaced in view of the jury's verdict with respect to count 16. There is no question that the jury concluded, beyond a reasonable doubt, that the defendant was working at IM, by virtue of that work was capable of working and concealed the same from DOL and U.S. Postal Service.

### B.  Relevance of VA Benefits

Another objection raised by the defendant is the PSR's statement that the increase in VA benefits was material to DOL's disability payment determination.  There is no question that the increase in VA benefits was material to DOL's determination because it was a question on the form the defendant was required

3

to complete prior to receiving benefits. (Tr. Ex. 9 and 10). The DOL representative testified that the increase in VA benefits is relevant to DOL's inquiry. (Tr. at 151). <u>See</u> Attached Ex. A.

In accordance with 5 U.S.C. § 8116, 20 C.F.R. § 10.421 and the Federal Employees Compensation Act Procedure Manual, Part 2, Chapter 1000, Sections 8 and 9, the defendant was not entitled to receive double compensation (DOL and VA benefits) for the same disability from the Government. Specifically, the statutes and DOL policies require the veteran to elect to receive either the amount of the VA increase or the FECA benefit amount. To assist the Court at sentencing, the Government has requested DOL to confirm the requirement to elect between the benefits. <u>See</u> Attached Ex. B. By applying for and electing to receive the increase in VA benefits, the defendant was not entitled to receive additional FECA benefits regardless of the merit of his disability claim, a consequence he would have been aware of as a union leader. Therefore, the defendant had an incentive to lie about the increase in his VA benefits.

Further, defendant's false statements on the DOL form also establish that the increase in VA benefits was material to DOL's determination. In May of 2002, prior to knowing about the investigation, the defendant denied any increase in his VA benefits. (Tr. Ex. 9). He denied the increase despite the fact that he had received a letter in May of 2001, among other

4

notices[3] prior to May of 2002, informing him of the increase in his VA benefits. Tr. Ex. 79. However, in the CA-1032 submitted in June of 2003, after learning of the investigation, the defendant disclosed not only his work at IM but also the increase in his VA benefits, which, according to him, occurred as of "3/01." At trial, the defendant attempted to explain his initial denial in the May/2002 CA-1032 by claiming that he was not aware of an increase in VA benefits until October of 2002 (Tr. at 1098). On cross examination, however, he admitted receiving the letter, dated May of 2001, informing him of the increase in VA benefits (Tr. at 1100). He also acknowledged that his bank statements indicated deposits of increased VA benefits. (Tr. at 1101 and Tr. Ex. 81) See Ex. A and D. The defendant lied to the jury about his reason for not disclosing the increase in VA benefits in May of 2001 for the same reason he lied on the

---

[3] By way of example, the Government attaches an additional letter, dated October 18, 2001, sent to the defendant notifying him that his increase in benefits to $2420.00 would remain at that level until 2005 (rather than drop to $2228.00 due to a reduction in dependents) based on his son's college attendance. See Attached Ex. C. Attached to the letter is a report of contact which indicates that a VA representative contacted the defendant to verify his son's expected date of graduation from college, which was reported as June 1, 2005. The defendant not only knew in May of 2001 of the increase in VA benefits he had sought, he also knew in October of 2001 when he submitted proof of his son's college attendance to maintain the payments at the higher level. The defendant lied to the jury when he claimed he did not know about the increase in VA benefits until October of 2002 for the same reason he lied on the initial DOL form itself, because it is material to the DOL determination's and his guilt.

initial DOL form itself, because it was material to DOL's disability compensation determination and his guilt.

### C. Treating Physicians' Testimony

In yet another frivolous objection to the PSR, the defendant claims that "there was no testimony to support [the PSR] statement that the defendant 'concealed his daily activities' from his doctors." In fact, both of his treating physicians testified that they had no knowledge of the defendant's daily activities at International MotorCars ("IM"). (Tr. at 386-387 and 903-904). Thus, this claim, like others raised by the defendant, is contradicted by the evidence and verdict in this case.

In sum, the defendant's objections to the PSR are not only factually unfounded they undermine the fundamental purpose of the PSR, to advise the Court of the factual background relating to the defendant, the offense of conviction and relevant conduct.

## II. Government's Opposition to Release Pending Appeal

To the extent the defendant seeks a stay of sentencing pending appeal, the Government opposes such a motion. In order to seek release pending appeal, the defendant must make a significant showing of the likelihood of success on appeal. This is a burden the defendant simply cannot meet in this straight forward fraud case with overwhelming evidence of defendant's guilt and guilty verdict on all counts.

Because the defendant was convicted of non-violent offenses -- mail fraud and worker's compensation fraud -- the defendant's release or detention pending appeal is governed by 18 U.S.C. § 3143(b)(1). This section, in relevant part, provides that:

> The judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal be detained, unless the judicial officer finds –
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in
>
>   (i)   reversal
>
>   (ii)  an order for a new trial
>
>   (iii) a sentence that does not include a term of imprisonment or
>
>   (iv)  a reduced sentence to a term of imprisonment less that the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1).

The decision in <u>United States v. Randell</u>, 761 F.2d 122, 125 (2d Cir. 1985), describes the relevant inquiry. Interpreting the statutory language so as not to require the district court to certify that it is likely to be reversed, the Court stated as follows:

"We thus conclude that before a district court may grant bail pending appeal, it must find:

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
>
> (2) that the appeal is not for purpose of delay;
>
> (3) that the appeal raises a substantial question of law or fact; and
>
> (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed."

Randell, 761 F.2d at 125, citing U.S. v. Miller, 753 F.2d 19, 24 (3d Cir. 1985); and U.S. v. Giancola, 754 F.2d 898, 901 (11th Cir. 1985). A question is "substantial" if is a "'close' question or one that very well could be decided the other way" Randell, 761 F.2d at 125 (citation omitted). The burden is on the defendant to show that all the requirements for release pending appeal have been met. Randell, 761 F.2d at 125.

Apart from a challenge to the sentence imposed under Blakely, the defendant, in the instant case, has not and cannot identify a single substantial issue of law or fact that is likely to result in reversal. The defendant has filed post trial motions raising numerous claims, including sufficiency of the evidence, and those were appropriately denied by this Court. Indeed, the evidence of guilt in this case was overwhelming given the lengthy visual and video surveillance, undercover audio recordings and testimonial evidence.

8

With respect to any claim regarding the validity of the sentencing guidelines under Blakely, such claims could only justify release pending appeal if this Court were likely to impose an indeterminate sentence that would be susbtantially lower than a guideline sentence it would otherwise impose. The Government would strongly oppose such a reduced sentence given the strength of the evidence in this case, the loss to the Government, defendant's perjured testimony, continued denials and claims for even more compensation.

A sentence significantly lower than a guideline sentence would reward defendant's obstructive conduct prior to, during and after the trial. This is a defendant who lied repeatedly for his own personal gain and at the expense of the taxpayers. Thus, unless the Court is comtemplating an indeterminate sentence significantly different from a guideline sentence, under Randell, the issues that could be asserted on appeal do not "raise substantial questions of law or fact likely to result in reversal, new trial, or sentence of no imprisonment or term of imprisonment less than the expected duration of the appeal process." Given defendant's conduct, a stay pending appeal would serve only as a tool to delay the imposition of the sentence and further his frivolous claims for continued compensation from the U.S. Postal Service.

9

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

MARIA A. KAHN
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NUMBER ct06573
United States Attorney's Office
157 Church Street
New Haven, Connecticut 06510
(203) 821-3700

KRISHNA R. PATEL
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NUMBER ct24433
United States Attorney's Office
157 Church Street
New Haven, Connecticut 06510
(203) 821-3700

CERTIFICATION OF SERVICE

This is to certify that the within and foregoing has been sent by fax (without attachments) and federal express, this 1st day of December 2004, to:

Cheryl E. Heffernan, Esq.
Law Office of Cheryl E. Heffernan
2842 Old Dixwell Avenue
Hamden, CT 06518-3100

Joseph Zampano, USPO
United States Probation Office
Room 211
915 Lafayette Blvd.
Bridgeport, Ct. 06604

MARIA A. KAHN
ASSISTANT UNITED STATES ATTORNEY