UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA     :    CASE NO. 3:03CR241(JCH)

    V.                 :

GARY AGNEW              :    February 14, 2005

## GOVERNMENT'S MOTION TO DENY OR ALTERNATIVELY STAY DEFENDANT'S 2255 MOTION

The Government submits this memorandum in response to the defendant's motion for relief pursuant to 28 U.S.C. § 2255, which essentially raises a Sixth Amendment claim in light of United States v. Booker, 125 S. Ct. 738 (2005).  The defendant has filed a direct appeal with the Second Circuit and intends to raise the same sentencing issues set forth in his § 2255 motion. The Government intends to file a Motion with the Second Circuit Court of Appeals seeking a limited remand for purposes of findings consistent with the Second Circuit's decision in United States v. Crosby, No-03-1675, slip op. 24-25 (2d Cir. Feb. 2, 2005).  In view of the likely remand and because the rule announced in Booker does not apply retroactively to cases on collateral review, the Government respectfully moves to deny the defendant's § 2255 motion.  Alternatively, the Government seeks a stay of the defendant's motion pending the Second Circuit's decision on his direct appeal and the motion to remand.

### 1.  District Court's Jurisdiction Over 2255 Motion

"[T]here is no jursidictional bar to the district court's adjudication of a pending § 2255 motion during the pendency of a direct appeal."  See United States v. Outen, 286 F.3d 622, 632 (2d Cir. 2002) (citing Derango v. United States, 864 F.2d 520, 522 (7th Cir. 1988)); United States v. Taylor, 648 F.2d 565, 572 (9th Cir. 1981); Womack v. United States, 395 F.2d 630, 631 (D.C. Cir. 1968).  However, "judicial economy and the concern that the results on direct appeal may make the district Court's efforts on the § 2255 motion a nullity," generally dictate against the Court acting on defendant's motion.  Id. (citing United States v. Rodgers, 101 F.3d 247, 251 (2d Cir. 1996)("The divestiture of jurisdiction rule . . . is a judicially crafted rule rooted in the interest in judicial economy, designed to 'avoid confusion or waste of time resulting from having the same issues before two courts at the same time.'")(quoting United States v. Salerno, 868 F.2d 524, 540 (2d Cir. 1989)).  Thus, while a district court has jurisdiction to decide a defendant's pending § 2255 motion notwithstanding a pending appeal, the district court should generally refrain from deciding the issues raised by it pending resolution of a direct appeal.

As set forth in Part II below, however, the defendant's present § 2255 motion presents an issue of pure law -- namely, the retroactive applicability of the rule announced in Booker on

collateral appeal -- which is dispositive of the motion, regardless of the resolution of the defendant's appeal. Accordingly, concerns of judicial economy do not dictate a stay in the present matter, and for the reasons set forth below the Court can simply deny the §2255 motion.

**2.  Booker Does Not Apply Retroactively on Collateral Review**

Should the Court decide to act on the defendant's motion, the Government respectfully requests that the motion be denied because Booker should not be applied retroactively on a collateral attack of the sentence.

Neither Blakely nor Booker are available on a collateral review.  On January 12, 2005, the United States Supreme Court, in United States v. Booker, extended the holding of Blakely v. Washington, 124 S. Ct. 2531 (2004), to the United States Sentencing Guidelines. Under Booker, therefore, the United States Sentencing Guidelines are no longer mandatory.  The Government respectfully submits that the principle adopted in Booker, like the principle adopted in Blakely, constitutes a "new constitutional rule of criminal procedure" which, under Teague v. Lane, 489 U.S. 288 (1989), is not retroactively applicable to cases (like the petitioner's) that became final before the decision was announced.

In McReynolds v. United States, 2005 WL 237642 (7th Cir. Feb. 2, 2005), the Seventh Circuit held that "Booker does not

apply retroactively to criminal cases that became final before
its release on January 12, 2005. . . . . Booker itself represents
the establishment of a new rule about the federal system.
Petitioners' convictions and sentences became final well before
Booker was issued, and its approach therefore does not govern
these collateral proceedings." Id. at *5; see Warren v. United
States, 2005 WL 165385, at *9-10 (D. Conn. Jan. 25, 2005)
(Thompson, J.) (Apprendi v. New Jersey, 530 U.S. 466 (2000),
Blakely and Booker do not "afford[] relief" to the petitioner on
collateral attack); see also, e.g., United States v. Russell,
2005 WL 281183 (E.D. Pa. Feb. 3, 2005)(Booker not retroactive);
Tuttamore v. United States, 2005 WL 234368 (N.D. Ohio Feb. 1,
2005) ("To the extent that petitioner relies on Booker, he cannot
so prevail, because the decision in Booker is not retroactive for
purposes of § 2255 collateral attacks."); Gerrish v. United
States, 2005 WL 159642 (D. Me. Jan. 25, 2005)(same); cf. Green v.
United States, 2005 WL 237204 (2d Cir. Feb. 2, 2005)(motion to
file second or successive application on the basis of Booker
denied since Supreme Court has not explicitly made Booker or
Blakely retroactive on collateral attack); In re Anderson, 2005
WL 123923 (11th Cir. Jan 21, 2005) ("because Booker, like Blakely
and Ring, is based on an extension of Apprendi, defendant cannot
show that the Supreme Court has made that decision retroactive to
cases already final on direct review."); Hamlin v. United

States, 2005 WL 102959 (D. Me. Jan. 19, 2005)(same).

The Government respectfully submits that the Court should follow the Seventh Circuit's reasoning in McReynolds and of the other courts which, to date, have found Booker unavailable on collateral attack. McReynolds relied on Schriro v. Summerlin, 124 S. Ct. 2519 (2004), a case in which the Supreme Court considered whether Ring v. Arizona, 536 U.S. 584 (2002), applied retroactively to cases that had already become final when Ring was decided. Ring had held that because Arizona law authorized the death penalty only if an aggravating factor was present, Apprendi required the existence of such a factor to be proved to a jury rather than to a judge. Summerlin's conviction and death sentence, which was imposed under the same Arizona law that was at issue in Ring, became final long before Ring was decided.

The Supreme Court held that "Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review." 124 S. Ct. at 2526. The Court explained that a "new rule" resulting from one of its decisions applies to convictions that are already final only in limited circumstances. New *substantive* rules generally apply retroactively, but new *procedural* rules generally do not – only "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding" are given retroactive effect. Id. at 2523 (internal quotation marks omitted). The

Court concluded that <u>Ring</u>'s holding is properly classified as procedural, rather than substantive, because it did not alter the range of conduct or the class of persons subject to the death penalty in Arizona; instead, it merely changed the method of determining whether the defendant engaged in that conduct. <u>Id</u>. at 2523-24. The Court also held that <u>Ring</u> did not fall within <u>Teague</u>'s narrow exception for "watershed rules" of criminal procedure. To qualify as a watershed rule, the Court explained, a new procedural rule must be one "without which the likelihood of an accurate conviction is *seriously* diminished." <u>Id</u>. at 2523 (quoting <u>Teague</u>, 489 U.S. at 313) (emphasis added in <u>Summerlin</u>). The Court held that <u>Ring</u> did not announce a watershed rule of criminal procedure because it could not confidently say that judicial fact finding seriously diminishes the accuracy of capital sentencing proceedings. <u>Id</u>. at 2424-25.

Consistent with the reasoning of <u>Summerlin</u>, the Second Circuit had earlier joined every other Court of Appeals to have considered the issue in holding that because <u>Apprendi</u> announced a procedural rule that does not fall within the "watershed" exception, it was not retroactively applicable to cases on collateral review. <u>See</u> <u>Coleman v. United States</u>, 329 F.3d 77 (2d Cir.), <u>cert</u>. <u>denied</u>, 124 S. Ct. 840 (2003).[1] Importantly, the

---

[1]<u>Accord</u> <u>Sepulveda v. United States</u>, 330 F.3d 55 (1st Cir. 2003); <u>United States v. Swinton</u>, 333 F.3d 481 (3d Cir.), <u>cert</u>. <u>denied</u>, 124 S. Ct. 458 (2003); <u>United States v. Sanders</u>, 247 F.3d

Second Circuit in <u>Coleman</u> held that <u>Apprendi</u> was not a watershed rule – not only despite the difference between using the jury and the judge as factfinder – but also despite the difference in the two burdens of proof (preponderance-of-the-evidence v. beyond-a-reasonable-doubt).

In <u>Coleman</u>, the court pointed out that in order to constitute a "watershed" rule of criminal procedure, "a rule must not only improve the accuracy of criminal proceedings, but also alter our understanding of the bedrock procedural elements essential to the fairness of those proceedings. In short, it must be a groundbreaking occurrence."  329 F.3d at 88 (internal quotation marks, alterations, and citations omitted). "<u>Apprendi</u> did not cut a new rule from whole cloth. It merely clarified and extended the scope of two well-settled principles of criminal procedure: the defendant's right to a jury trial and the government's burden of proof beyond a reasonable doubt."  <u>Id</u>. at 89 (internal quotation marks omitted).  This conclusion was supported by the consistent holdings of the Supreme Court and the

_____

139 (4th Cir.), <u>cert</u>. <u>denied</u>, 534 U.S. 1032 (2001); <u>United States v. Brown</u>, 305 F.3d 304 (5th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 1007 (2003); <u>Goode v. United States</u>, 305 F.3d 378 (6th Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 1096 (2002); <u>Curtis v. United States</u>, 294 F.3d 841 (7th Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 976 (2002); <u>United States v. Moss</u>, 252 F.3d 993 (8th Cir. 2001), <u>cert</u>. <u>denied</u>, 534 U.S. 1097 (2002); <u>United States v. Sanchez-Cervantes</u>, 282 F.3d 664 (9th Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 939 (2002); <u>United States v. Mora</u>, 293 F.3d 1213 (10th Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 961 (2002); McCoy v. United States, 266 F.3d 1245 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 536 U.S. 906 (2002).

Second Circuit that <u>Apprendi</u> errors may be reviewed for harmlessness, and not structural error – a conclusion that would have stood in tremendous tension with a determination that <u>Apprendi</u> announced a watershed rule, <u>see</u> <u>id</u>. at 89-90 – that is, one of the "small core of rules requiring the observance of those procedures that . . . are implicit in the concept of ordered liberty," <u>id</u>. at 88 (quoting <u>United States v. Mandanici</u>, 205 F.3d 519, 528 (2d Cir. 2000) (quoting, in turn, <u>Graham v. Collins</u>, 506 U.S. 461, 478 (1993))).

<u>Coleman</u> involved a determination that a change in the identity of the relevant fact-finder *and* an increase in the burden of proof were insufficient to constitute a "watershed" rule of criminal procedure.  Because <u>Booker</u> did not entail either of those changes – but instead maintained the identity of the fact-finder at sentencing, as well as the preponderance of the evidence standard – it follows, *a fortiori*, that <u>Booker</u>'s rule falls short of being a "watershed" rule. Indeed, as the Second Circuit recently ruled in <u>United States v. Crosby</u>, 2005 WL 240916 (2d Cir. Feb. 2, 2005), the district court might very well have imposed the same sentence regardless of whether the Guidelines were binding (as before <u>Booker</u>) or advisory (after <u>Booker</u>), and that district judges might impose higher *or* lower sentences in <u>Booker</u>'s wake.  In view of the fact that Booker simply restores some additional measure of discretion to sentencing judges, its

holding simply does not shift the foundations of American constitutional law and, hence, does not apply retroactively on collateral attack.

Booker entailed an extension of the procedural rule announced in Apprendi that factual findings that increase the maximum penalty permitted by law must be found by a jury beyond a reasonable doubt. The Supreme Court has defined a "new rule" under Teague as one that was not "'*dictated* by precedent existing at the time the defendant's conviction became final.'" Graham v. Collins, 506 U.S. at 467 (quoting Teague, 489 U.S. at 301 (emphasis in Teague)); see Sawyer v. Smith, 497 U.S. 227, 234 (1990). Subsequent decisions have made clear that a rule may be "new" despite the fact that earlier cases supported it, Sawyer, 497 U.S. at 236, "or even control or govern" it, Saffle v. Parks, 494 U.S. 484, 491 (1990). Under that definition, Booker announced a new rule for Teague purposes.

Moreover, while not directly addressing the retroactivity of its extension of Blakely to the Sentencing Guidelines and its holding that those Guidelines would be advisory, the "merits majority" of Booker went out of its way to clarify that its holding on the merits and the remedy of the Sixth Amendment claim was to apply "to all cases on direct review." 2005 WL 50108 at *29 (citing Griffith v. Kentucky, 479 U.S. 314, 328 (1987): "[A] new rule for the conduct of criminal prosecutions is to be

applied retroactively to all cases . . . pending on direct review
or not yet final, with no exception for cases in which the new
rule constitutes a 'clear break' with the past."). This statement
has already been read by one court, in the context of a
successive petition, as limiting the application of the rule to
cases in the direct review pipeline especially in view of the
fact that the Supreme Court has already concluded that <u>Ring v.
Arizona</u>, 536 U.S. 584 (2002), a case which applied the principle
of <u>Apprendi</u> to death sentences imposed on the basis of
aggravating factors, was not to be applied retroactively to cases
once they were final on direct review. <u>See</u> <u>Hamlin v. United
States</u>, 2005 WL 102959 at *1 (citing <u>Schriro v. Summerlin</u>, 124 S.
Ct. at 2519, 2526 (2004)("<u>Ring</u> announced a new procedural rule
that does not apply retroactively to cases already final on
direct review.")); <u>see</u> <u>also</u> <u>Stevens v. United States</u>, 2005 WL
102958 (D. Me. Jan 18, 2005).[2]

---

[2] One court, declining to decide whether the rule announced
in <u>Blakley</u>/<u>Booker</u> applies retroactively, held that, even if those
cases were retroactively applied, relief would be limited to
persons presently serving a sentence that was enhanced on the
basis of contested facts that were not found to be true, beyond a
reasonable doubt, nor admitted by the defendant. <u>See</u> <u>United
States v. Siegelbaum</u>, 2005 WL 196526 at *3 (D. Or. Jan. 26,
2005). The court noted that only if a defendant actually disputed
the facts that resulted in the sentence enhancement, and the
court decided the matter against him, can the defendant show that
he may have been prejudiced by application of the wrong standard
of proof and, to vacate a sentence enhancement on the basis of
<u>Blakely</u>/<u>Booker</u>, when a defendant never disputed the facts upon
which that enhancement was premised, would confer an unwarranted
windfall.

### 3.  Motion Under § 2255 Should be Stayed Pending Remand

Alternatively, the Government respectfully requests that this Court stay the defendant's motion for relief under § 2255 pending the Second Circuit's decision on the issue of remand to the District Court for findings as required by United States v. Crosby, No. 03-1675, slip op. at 24-25 (2d Cir. Feb. 2, 2005)

The Court of Appeals for the Second Circuit has summarized the impact of *Booker* as follows:

> First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). *Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range,* or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. *Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence.* Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

Crosby, No. 03-1675, slip op. at 24-25 (2d Cir. Feb. 2, 2005) (emphasis added).  When imposing sentence, a district court must be mindful that "*Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *Id.* at 25.  Both the Supreme Court and the Court of Appeals expect "sentencing

11

judges faithfully to discharge their statutory obligation to 'consider' the Guidelines and all of the other factors listed in section 3553(a), . . . and that the resulting sentences will continue to substantially reduce unwarranted disparities while now achieving somewhat more individualized justice." *Id.*

In <u>Crosby</u>, the Court of Appeals determined that it would remand most pending appeals involving challenges to sentences imposed prior to <u>Booker</u> "not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine *whether* to resentence, now fully informed of the new sentencing regime, and if so, to resentence." <u>Crosby</u>, slip op. at 34. In this respect, the Court of Appeals explained that a remand would be necessary to learn "whether a sentencing judge would have imposed a materially different sentence, *under the circumstances existing at the time of the original sentence*, if the judge had discharged his or her obligations under the post-*Booker/Fanfan* regime and counsel had availed themselves of their new opportunities to present relevant considerations." <u>Id</u>., slip op. at 34-35. "In making that threshold determination, the District Court should obtain the views of counsel, at least in writing, but 'need not' require the presence of the Defendant . . . ." <u>Id</u>., slip op. at 40. The defendant should, however, have an "opportunity . . . to avoid resentencing by promptly notifying the district judge that

12

resentencing will not be sought." Id., slip op. at 37. "Upon reaching its decision (with or without a hearing) whether to resentence, the District Court should either place on the record a decision not to resentence, with an appropriate explanation, or vacate the sentence and, with the Defendant present, resentence in conformity with the [Sentencing Reform Act], Booker/Fanfan, and this opinion, including an appropriate explanation, see § 3553(c)." Id.

### Conclusion

For the reasons stated herein, it is respectfully submitted that petitioner's Section 2255 petition seeking to vacate his sentence should be summarily denied without a hearing, or alternatively stayed pending the Second Circuit's decision on his direct appea, including the Government's request for a remand in light of Crosby.

        Respectfully submitted,
        KEVIN J. O'CONNOR
        UNITED STATES ATTORNEY


        MARIA A. KAHN
        ASSISTANT UNITED STATES ATTORNEY
        FEDERAL BAR NUMBER ct06573
        United States Attorney's Office
        157 Church Street
        New Haven, Connecticut 06510
        (203) 821-3700

        KRISHNA R. PATEL
        ASSISTANT UNITED STATES ATTORNEY
        FEDERAL BAR NUMBER ct24433

## CERTIFICATION OF SERVICE

This is to certify that the within and foregoing has been sent by fax and federal express, this 14th day of February 2005, to:

Cheryl E. Heffernan, Esq.
Law Office of Cheryl E. Heffernan
2842 Old Dixwell Avenue
Hamden, CT 06518-3100

_____
MARIA A. KAHN
ASSISTANT UNITED STATES ATTORNEY

14