UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 3:03CR241(JCH) |
| V. | : | |
| GARY AGNEW | : | May 23, 2005 |

**GOVERNMENT'S MEMORANDUM IN AID PROCEEDINGS ON REMAND**

The Government respectfully submits this memorandum in aid of proceedings on remand from the United States Court of Appeals for the Second Circuit and in support of its position that the sentence imposed by this Court on December 6, 2004, was reasonable and appropriate.

**I. Procedural History**

On March 30, 2004, the defendant, Gary Agnew, was convicted on all 16 counts of the indictment charging him with a scheme to defraud in connection with receiving federal employees compensation in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1920 (federal employees compensation fraud). This Court sentenced the defendant to a term of imprisonment of 21 months, and entered judgment on December 6, 2004. On December 6, 2004, the defendant filed a timely notice of appeal. On April 20, 2005, the United States Court of Appeals for the Second Circuit ordered a limited remand in this case, upon request of the Government[1] and consent of the defendant, in light of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), and the Court of Appeals' decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).

---

[1] The Government respectfully disagrees with the Second Circuit's plain-error analysis for substantially the reasons set forth in *United States v. Rodriguez*, 398 F.3d 1291 (11th Cir. 2005). Notwithstanding this disagreement, the Government consents to remand in recognition of *Crosby*'s binding authority in this Circuit.

II.     **SENTENCING CALCULATION**

    A.     Statutory Maximum Sentence

The maximum sentence that may be imposed on defendant is eighty (80) years, five (5) years for each count of conviction.

    B.     Sentencing Guidelines Calculation

As set forth in the PSR and applied by this Court, the applicable guideline calculation in this case was as follows:

Using the guidelines effective November 1, 2002, the base offense level under U.S.S.G. § 2B1.1 is level 6. The loss attributable to the defendant was $84,403 (between $70,000 and $120,000), which increased the defendant's offense level by 8 levels, resulting in an offense level of 14. Two levels were added because the defendant's conduct constituted obstruction of justice, pursuant to U.S.S.G. § 3C1.1, resulting in an offense level of 16. (Sentencing Transcript at pg. 85). Thus, the defendant's total offense level was 16, resulting in a guideline range of to 21 to 27 months' imprisonment and a fine of $5,000 to $50,000.

    C.     Determination of Appropriate Sentence

The Court's imposition of a sentence within the final guideline range was appropriate even after the Supreme Court's decision in *Booker*. In *United States v. Booker*, 2005 WL 50108 (U.S. Jan. 12, 2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury. As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. §

3553(b)(1), thus declaring the Guidelines "effectively advisory." <u>Booker</u>, 2005 WL 50108, at *16. This ruling results in a system in which the sentencing court, while informed by the Guidelines, may impose any sentence within the statutory maximum penalty for the offense of conviction. The sentence will be subject to review by the Court of Appeals for "reasonableness." <u>Id.</u> at *24.

In the wake of <u>Booker</u>, Courts must make a correct calculation under the existing Sentencing Guidelines, and then consider the final guideline calculation when determining the sentence to be imposed. Justice Breyer's majority opinion directed that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." <u>Id.</u> at *27.

The position of the United States is that, absent highly unusual circumstances, the sentence in a criminal case should fall within the guideline range as determined by the Court. This view is shared by Congress and the Supreme Court. As every Supreme Court justice in the various opinions in *Booker* recognized, the Guidelines carry out the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible and be based on the offender's actual conduct and history. <u>See, e.g.</u>, <u>id.</u> at *21 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); <u>id.</u> at *19 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); <u>id.</u> at *42 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime,

was unquestionably Congress' principal aim."); Id. at *47 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of 15 years of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address all of the considerations relevant to sentencing, as articulated in 18 U.S.C. § 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ."

Thus, fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing, and should occur absent unusual circumstances. The government commends to the Court's attention the scholarly opinion in *United States v. Wilson*, 2005 WL 78552 (D. Utah Jan. 13, 2005), which shared this conclusion. In his assessment in *Wilson*, on the day after *Booker* was decided, Judge Cassell explained at length the reasons supporting this view. As he stated, the Guidelines represent the product of an expert commission, which has studied the sentencing process at great length, under the specific mandate of Congress to fashion recommended

sentences which carry out the purposes defined by Congress.  The resulting Guidelines, *Wilson* held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to Congressional preference.  *Wilson* further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness.  For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence.  In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at *1.

Thus, a sentence within the guideline range is presumptively reasonable, and accommodates the Congressional purpose, affirmed by the Supreme Court, of obtaining fair sentences which are uniform to the extent possible.  The government anticipates that only sentences outside the guideline range will be subject to appellate scrutiny for reasonableness in light of the Congressional mandate.

D.      Sentence Imposed by the Court was Appropriate

In this case, the sentence imposed by the Court was not only appropriate it  was also reasonable in light of the defendant's conduct and characteristics.   The defendant claims that the Court should resentence him because it was not permitted to consider the defendant's personal history and the impact of the sentence on "his family, his years of service to this country, how others in Mr. Agnew's shoes were handled differently, ie administratively instead of criminally

5

by the Postal Service[2], etc." These claims are meritless.

The Court did consider the defendant's family circumstances and characteristics, including his service to the country. This was a lengthy sentencing process that occurred during two separate hearings. During the sentencing process the defendant raised all of these claims including a motion for downward departure based on having been raised by a single parent, his military and civil service, his otherwise law abiding life, and that his injuries were real. In denying his motion for downward departure, the Court considered all of these factors. (Tr. at pp. 91-100).

The loss calculation applied by the Court was reasonable and supported by the evidence introduced at the trial. The defendant raised two objections to the loss calculation proposed in the PSR. Specifically, the defendant claimed that the enhancement based on a loss that was not determined by the jury was precluded under *Blakely*. The defendant, however, conceded that if *Blakely* was held not to apply the guidelines, the loss amount should be limited to either $57,992.69 or $66,3288.29 because the Government had an obligation to return the defendant to work when his doctor cleared him for work and the disability payments made thereafter should not be included in the loss. While the *Blakely* claim has been resolved by *Booker*, the Court also addressed the issue of reduction of the loss to the range proposed by the defendant. As the Court correctly noted, the defendant maintained his position that he was not physically able to return to

---

[2] The defendant does provide the identify of the "others" in his "shoes," who were handled administratively. However, this was a claim that the defendant made prior to trial bu thereafter abandoned. He was free to raise that claim at the sentencing but apparently chose not to do so.

work even after his doctor opined otherwise[3] and continued to receive disability payments. (Tr. at pg. 57). Further, as the Court noted, the defendant failed to cite any authority for the proposition that the government had a duty to mitigate and the loss should be reduced. Id. The loss figure in this case represented the actual loss to the Postal Service from his conduct, rather than the additional benefits he received from the VA or intended loss.

The additional enhancement for obstruction of justice was also appropriately applied by the Court. The Court set forth an extensive factual basis for this enhancement and the defendant has advanced no justification as to why it was not justified by the record or inappropriately applied. (Tr. at 80-84 and 86).

Finally, while the Court did not impose an indeterminate sentence either not using the guidelines or using them merely as guidelines (Tr. 103-105), in its closing comments at the sentencing the Court noted that "it is the Court's view that the sentence that I have imposed while required by law is an appropriate sentence because I can't judge what condition you were in and what you felt, but what I can judge is that you were not forthright in this Court's view. I know you take a difference view of this and I appreciate that. I want to share with you why it is my view of what I have done that when you went to see your doctor, for example, the purpose of that visit was to provide information that would be relied upon by the government. And not one but both doctors indicated that they had no idea about your activities at IMC. . . . Through various means they never learned that until they began an investigation because you never told them. And that's what I believe the jury found and that's why punishment is appropriate." (Tr.

---

[3] In fact, as noted at sentencing by the Government, he continued to assert his inability to work during his testimony at trial. (Tr. at   ).

at pg.120).    As the Court correctly noted the sentence imposed by the Court is appropriate given the defendant's conduct both prior to and during the trial.  In fact, this is a defendant that to this date still refuses to accept responsibility for his conduct.  This type of conduct would suggest the Court's sentence, even if the guidelines were not applied, is reasonable and appropriate to address the purposes of sentencing as cited by the defendant under 3553(a).

**II. Conclusion**

In this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing.  Therefore, the Government respectfully recommends that the Court issue a determination, without further hearing, that it would not issue a nontrivially different sentence on remand.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

/s/
By:   EDWARD KANG
      ASSISTANT UNITED STATES ATTORNEY

For:  MARIA A. KAHN
      ASSISTANT UNITED STATES ATTORNEY
      FEDERAL BAR NUMBER ct06573
      United States Attorney's Office
      157 Church Street
      New Haven, Connecticut 06510
      (203) 821-3700

CERTIFICATION OF SERVICE

      This is to certify that the within and foregoing has been sent by fax and mail, this   day of May  2005, to:

Cheryl E. Heffernan, Esq.
Law Office of Cheryl E. Heffernan
2842 Old Dixwell Avenue
Hamden, CT 06518-3100

Joseph Zampano, USPO
United States Probation Office
Room 211
915 Lafayette Blvd.
Bridgeport, Ct.  06604

          /s/_____
          MARIA A. KAHN
          ASSISTANT UNITED STATES ATTORNEY