UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIM NO.  3:03-CR-241(JCH) |
| vs. : | |
| : | |
| GARY R. AGNEW : | August 25, 2005 |
| : | |

**RULING ON MOTION FOR RELEASE PENDING APPEAL [DKT. NO. 117]**

Gary Agnew was indicted and convicted on fifteen counts of mail fraud, 18 U.S.C. § 1341, and one count of federal employees compensation fraud, 18 U.S.C. § 1920.  He was sentenced on December 6, 2004 to 21 months incarceration and ordered to pay restitution in the amount of $84,403; this sentence was subsequently affirmed by this court on Crosby remand on June 13, 2005.  Agnew filed a notice of appeal with the Second Circuit on June 20, 2005, and now moves for release pending appeal pursuant to 18 U.S.C. § 3143(b), arguing that his appeal raises substantial questions regarding the length of his sentence and his conviction. For the following reasons, his motion is DENIED.

**I. STANDARD OF LAW**

28 U.S.C. § 3143(b) provides the standard for granting bail pending appeal.  A person who has been found guilty and sentenced to a term of imprisonment must be detained unless a court finds:

(A) by clear and convincing evidence that the person is not likely to flee or

>pose a danger to the safety of any other person or the community if
>released under section 3142(b) or (c) of this title; and
>(B) that the appeal is not for the purpose of delay and raises a substantial
>question of law or fact likely to result in--
>
>(i) reversal,
>>(ii) an order for a new trial,
>>(iii) a sentence that does not include a term of imprisonment, or
>>(iv) a reduced sentence to a term of imprisonment less than the total of
>>the time already served plus the expected duration of the appeal process.

18 U.S.C.A. § 3143(b). In its response to Agnew's motion, the government does not challenge Agnew's assertion that he is unlikely to flee or that his appeal was not filed for purposes of delay.[1]

The government argues that Agnew has failed to demonstrated issues that raise substantial questions of law that are likely to result in a reversal, new trial, or sentence of a term of imprisonment less than the expected duration of the appeal process. The Second Circuit in United States v. Randell, 761 F.2d 122, 125 (2d Cir. 1985), explicated at length its interpretation of the "substantial question" standard, describing a substantial question as "fairly debatable", or "one which is either novel, which has not been decided by controlling precedent or which is fairly doubtful," as well as "one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." 761 F.2d at 125 (quoting United States v. Handy, 753 F.2d 1487, 1490 (9th Cir. 1985), United States v. Giancola, 754 F.2d 898, 901 (11th Cir. 1985), United States v. Miller, 753 F.2d 19, 23

---

[1] The government does note in their reply that Agnew had previously sought three extensions of his surrender date and thus concludes that a release pending appeal "would only serve as a tool to delay the imposition of the sentence." Government's Objection to Defendant's Motion for Release Pending Appeal ("Objection"), pp. 3-4 [Dkt. No. 119]. It does not assert, however, that the appeal is for purposes of delay.

(3d Cir. 1985)).  The Randell court also made clear that "substantial" is not simply equivalent to "likely to result in reversal or a new trial".  Id.

Agnew argues that he has raised several issues which are substantial and, if decided in his favor, are likely to result in a reduction of his sentence from 21 months to a sentence in the range of 15 to 21 months or 12 to 18 months, or possibly lower, or could result in a reversal or new trial.[2]  Agnew argues that the upward adjustment for obstruction of justice at sentencing was not warranted by the facts of the case, that the court improperly calculated the loss that was employed in sentencing, and there are several issues related to Angew's conviction, such as the admission of the postal inspectors' testimony and the propriety of the jury instructions, that could, if successful, result in a reversal or new trial.  The court will consider each of the issues that he raises in turn.

## II.   DISCUSSION

### A.   Obstruction of Justice Upward Adjustment

Agnew argues that, in applying an upward adjustment for obstruction of justice

---

[2] As Agnew points out in his brief, the median time for the disposition of criminal cases in the Second Circuit, from notice of appeal to final disposition, was 12.3 months in 2003.  http://www.ca2.uscourts.gov.  Agnew filed his notice of appeal on June 20, 2005 and began serving his sentence on August 15, 2005.  Assuming that Agnew's appeal would occur within the average amount of time, even if Agnew were successful on more than one of his issues, which would be necessary to result in a reduction of sentencing range to 12 to 18 months under the applicable Sentencing Guidelines, and even if Agnew subsequently received a 12 month sentence, his reduced sentence would still be greater than the amount of time that he would have served by the time of the final disposition of his appeal, assuming it would be in June or July 2006.  In other words, apart from the burden of demonstrating that the issues he raises are substantial, even accepting his own assertions about the timing of his appeal as true, Agnew has a heavy burden to show that a successful appeal would result in a sentence shorter than the time he will have served.

under § 3C1.1 of the Sentencing Guidelines, the court erred in failing to make requisite findings of specific intent, and that the record does not support the factual findings that are the bases for the adjustment.

To apply an obstruction enhancement based on perjury, a sentencing court must find "by a preponderance of the evidence that the defendant 1) willfully 2) and materially 3) committed perjury, which is (a) the intentional (b) giving of false testimony (c) as to a material matter." U.S. v. Agudelo, 414 F.3d 345, 349 (2d Cir. 2005) (quoting United States v. Zagari, 111 F.3d 307 (2d Cir.1997)).  An enhancement for obstruction of justice is appropriate when a defendant "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993).

In the Second Circuit, "[a]n enhancement for obstruction of justice is subject to a mixed standard of review."  U.S. v. Cassiliano 137 F.3d 742, 745 (2d Cir. 1998).  The sentencing court's factual findings "will be upheld unless they are clearly erroneous." Id. (internal citations omitted).  A ruling as to whether the facts constitute obstruction of justice, however, "is a matter of legal interpretation and is to be reviewed de novo . . . giving due deference to the district court's application of the guidelines to the facts." Id. (quoting 18 U.S.C. § 3742(e)).

At sentencing, this court applied an upward adjustment for obstruction of justice on the basis of factual findings that, in several instances, Agnew committed perjury at trial.  This court found that Agnew committed perjury when he testified that he "never concealed" from the doctors who examined him his work activities at International

Motorcars. Sentencing Tr., 12/06/04, pp 81-82 [Dkt. No. 95]. The court based its finding on its recollection of the physicians' testimony in light of Angew's testimony, crediting the doctors' statements that "their reports accurately recounted what Mr. Agnew told them as to the nature of his activities" and noting that those reports do not contain any reference to his activities at International Motorcars. Id. at 81. The court also found that Mr. Agnew went to the doctors for purposes of getting an evaluation as to his continued status as disabled," and "clearly he was asked about his activities [and] his level of activities." Id. at 82. On the basis of these facts, the court concluded that "clearly in the record is a denial by Mr. Agnew to the jury with the intent in my view to persuade them to find him not guilty." Id. at 81.

The court also found that Agnew obstructed justice in his testimony concerning the omission of his activities at International Motorcars on a Department of Labor form that required Agnew to list any involvement he had in a business enterprise. This court found that Agnew's efforts to persuade the jury that he did not understand the form to require such a disclosure was obstructionist as "it has been established by the government by a preponderance of the evidence . . . that Mr. Agnew knew that [the] information of his activities was material and should have been disclosed." Id. at 83. The court noted that the level of Agnew's activity at International Motorcars, as well as Agnew's testimony that he reported income from International Motorcars on his tax returns, demonstrated that Agnew had knowledge of the materiality of his International Motorcars activity. Id. The court concluded that Agnew obstructed justice when "he got on the witness stand and attempted to persuade the jury that was not the case." The court found that both grounds for the obstruction of justice were material and were both

5

attempts "to persuade the jury to reach a conclusion different than it reached." Id. at 84.

At sentencing, the court had also cited United States v. Woodward, 239 F.3d 159, 162 (2d Cir. 2001), for the proposition that "the enhancement . . . is appropriate only if the court makes a finding that the defendant had the specific intent to obstruct justice, i.e. that the defendant consciously acted with the purpose of obstructing justice." Sentencing Tr., p. 78-79. The court declined to find a third basis for the upward adjustment that was urged by the government as it could not make the requisite "mens rea finding" with regards to that proposed basis as it had for the first two. Id. at 80.

As the foregoing discussion makes clear, the court's finding of perjury was adequately supported by facts in the record, and the court made the requisite findings of materiality and intent to support an upward departure for obstruction of justice. The court thus concludes that there is no substantial issue as to whether its factual findings were not clearly erroneous or whether its legal conclusions were warranted.

**B. Loss Calculation**

Agnew challenges the loss calculation used at sentencing on two grounds: he argues that the government had a duty to mitigate the loss, and that the calculated loss improperly did not account for what Agnew should have received in disability payments.

Agnew argues that the government engaged in "sentencing manipulation" as it did not choose to arrest Agnew at its first potential opportunity, when an undercover agent approached Agnew for a test drive at International Motorcars in January 2002, or in May 2002 when Agnew submitted his fraudulent CA-1032. "Sentencing

manipulation" has not been accepted as a valid theory of law in the Second Circuit. See United States v. Bala, 236 F.3d 87, 93 (2d Cir. 2000); United States v. Gomez, 103 F.3d 249, 256 (2d Cir. 1996). The Second Circuit has also held that, were it to be accepted, its application is limited to "outrageous official conduct which overcomes the [defendant's] will." United States v. Knecht, 55 F.3d 54, 57 (2d Cir. 1995). There is no evidence or allegations of outrageous conduct on the part of the government here, and thus Agnew's "duty to mitigate" argument cannot be considered a substantial one.

Agnew challenges the calculated loss figure employed at sentencing, $84,403, arguing that it should have reflected the "net" amount representing the difference between what Agnew fraudulently received and what he should have received if he had disclosed his activities at International Motorcars. Agnew concedes that this argument was not raised at sentencing. "Generally, issues not raised in the trial court, including sentencing issues, will be deemed waived on appeal in the absence of plain errors or defects affecting substantial rights." United States v. Margiotti  85 F.3d 100,104 (2d Cir. 1996). In addition, the Sentencing Guidelines provide that "[t]he court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference." U.S.S.G. § 2B1.1(3)(C) (2004) (citing 18 U.S.C. §§ 3742(e)-(f)).

The calculated loss figure represented the disability payments that Agnew received while working full time at International Motorcars, with deductions for the disability payments that he received for four to six week periods following his knee replacements in February 2001 and February 2002, until he stopped receiving benefits

in March 2004 when the verdict was returned. At sentencing, the court acknowledged that the calculated loss figure could have been higher than $84,403 if it were calculated to account for the intended loss represented by Agnew's last fraudulent CA-1032 filing, which would have entitled him to receive disability payments beyond March 2004 but for the verdict. Sentencing Tr., pp. 50-51. In addition, the government contends that the loss figure could have been much higher had it pursued an argument that the benefits that Agnew received from the Veterans Administration should have been included in the calculated loss figure.

Agnew argues that the loss figure should not be based on the total amount of disability payments that he received while working at International Motorcars, but on the payments minus what he may have received in disability payments had he disclosed the work he was doing. Even if he had presented this argument at trial, it is not clear that Angew could have shown that he was entitled to any disability payments as he was working full time at International Motorcars and thus could have presumably resumed working at the Postal Service in some capacity. Thus, Agnew has not shown that the loss figured used at sentencing was so unreasonable as to constitute plain error, and, thus, has not not presented a substantial argument on this point.

### C. Issues Related to Conviction

Agnew raises three issues related to the fact of his conviction. As these issues were not presented at trial, Agnew would have to show that they constituted plain error to be successful on appeal. Given the standards of review that Agnew will face on appeal, it is this court's conclusion that Agnew fails to present substantial questions on any of them.

Agnew argues that he was prejudiced by the ineffectiveness of his trial counsel in her failure to move to suppress the testimony of the postal inspectors that interviewed Agnew on the basis that their interview was a custodial interrogation that violated Miranda v. Arizona, 384 U.S. 436 (1966). To be successful on this claim, Agnew would have to meet the strict standard of Strickland v. Washington, 466 U.S. 668 (1984), to state a claim for ineffectiveness of counsel, i.e. he must show that his counsel's performance was seriously deficient and that, but for the performance of counsel, the outcome of the proceeding would have been different. Agnew's argument necessarily fails because his testimony at trial regarding the interview demonstrates that it was voluntary and thus not custodial, and the overwhelming videotape and audiotape evidence against him precludes a finding that, but for the testimony of the inspectors, the outcome of the proceeding would have been different. Trial Transcript, 3/25/04, p. 738 [Dkt. No. 65].

Agnew also argues that the jury instruction regarding Count 16, which charged Agnew with "the fact that he worked at International Motorcars in Berlin, Connecticut, in connection with the application for and receipt of compensation and other benefits and payments exceeding $1,000 under the Federal Employees' Compensation Act" in violation of 18 U.S.C. § 1920. Indictment, ¶ 18 [Dkt. No. 1]. Agnew argues that the jury instruction on this charge, which did not instruct the jury that it could not convict unless it found that the benefits falsely obtained by Mr. Agnew exceeded $1,000, violated the rule in Apprendi v. New Jersey, 530 U.S. 466 (2000). While it would appear that the specific jury instruction in question on its face may violate Apprendi, it is unlikely that such an error could be considered harmful error or plain error given that the jury was

9

given a copy of the indictment and were instructed that the indictment specifically charged that the defendant "knowingly and willfully falsified . . .the fact that he worked at International Motorcars . . . in connection with the . . . application for and receipt of compensation and other benefits and payments exceeding $1,000." Trial Transcript, p. 1179. The overwhelming evidence that the amount in question was well in excess of $1,000 also counsels against a possible finding of harmful error.

Finally, Agnew challenges the inclusion and language of the "conscious avoidance" jury instruction for the mail fraud charge in the Indictment. It is worth noting that the charge and the language of the charge were suggested by Agnew's trial counsel. Government's Objection, p. 17. In addition, the charge was appropriate, given Agnew's defense that he was mistaken about the information sought by the Department of Labor forms. See United States v. Ferrarini, 219 F.3d 145, 154 (2000)(holding instruction may only be given if "(1) the defendant asserts the lack of some aspect of knowledge required for conviction . . . and (2) the appropriate factual predicate for the charge exists").

Agnew argues that the charge was deficient in its content in that it did not include the requisite "high probability" language. Trial Transcript, p. 1176; see also United States v. Khan, 53 F.3d 507, 516-17 (2d Cir. 1995) ("a 'conscious avoidance' charge should indicate to the jury that "knowledge of the existence of a particular fact is established (1) if a person is aware of a high probability of its existence, (2) unless he actually believes that it does not exist.") However, this court does not think it is likely that the Second Circuit, even if it were to find that this court's instruction was erroneous, would reverse the defendant's convictions or order a new trial, in light of the evidence

presented at trial of the defendant's actual knowledge regarding the mail fraud charge. See e.g., Ferrarini, 219 F.3d at 155 (finding error in giving conscious avoidance charge was harmless given evidence of defendant's actual knowledge); United States v. Shareef, 714 F.2d 232, 234 (2d Cir. 1983)(finding that erroneous conscious avoidance charge was harmless error in "view of the strength of the Government's case"); United States v. Cano, 702 F.2d 370, 371 (2d Cir. 1983)(finding that the absence of the "actual belief" language from the conscious avoidance instruction "was not egregious enough" to constitute plain error); United States v. Barber, No. 1:00-CR072, 2004 WL 1505529, at *4 (July 6, 2004)(absence of "high probability" language from conscious avoidance charge did not present substantial issue under 18 U.S.C. § 1343(b)).  Therefore, like the court in Barber, this court finds that Agnew has failed to present a substantial issue on the question of the conscious avoidance jury instruction.

For the foregoing reasons, Agnew has failed to establish the prerequisites for release under 18 U.S.C. § 1343(b).  Accordingly, his motion for release pending appeal is DENIED.

### III.   CONCLUSION

For the reasons stated above, the Motion for Release Pending Appeal [Dkt. No. 117] is DENIED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 25th day of August, 2005.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge