**GARY R. AGNEW**
**PLAINTIFF,**

**CRIMINAL ACTION NO.**
**3-03-CR-00241-(JCH)**

**v.**

**UNITED STATES OF AMERICA**
**DEFENDANTS,**

**January 21, 2008**

# MOTION

## RECONSIDERATION OF ORDER

The Petitioner, Gary R. Agnew hereby requests that the court grant his motion for Reconsideration dated November 19, 2007. I sent this package via Certified First Class Mail return receipt requested, (copies of each enclosed). I had not received any correspondence pertaining to my motions as of this date.

The Petitioner submits the following in Support of his motion for reconsideration.

1). Copy of package sent to the District Court on November 19, 2007. Also copies of Certified Mail Receipt, and signed returned card of court receiving package.

2). Defendants Reconsideration motion package dated January 19, 2008 as well as copies of pages out of the Collective Bargaining Agreement, between the National Postal Mail Handler Union and the United States Postal Service.

**WHEREFORE,** the Petitioner respectfully request that this court grant his petition.

Respectfully,

Gary R. Agnew, Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,
    Plaintiff,

                              Crim. No. 3:03CR241 (JCH)

-v-

GARY R. AGNEW,               November 19, 2007
    Defendant,

## DEFENDANTS ADDITIONAL INFORMATION FOR PENDING APPEAL

To:
The Honorable Janet C. Hall,
United States District Court Judge
For the District of Connecticut
Bridgeport, CT. 06601

Dear Your Honor,

I am sending this additional information in hope of getting any type of response to my Ongoing appeal process.

The Assistant United States Attorney; Krishna R. Patel, Esq., requested and been granted: 3 extentions. She is incorrect as to this delay not harming myself as I am already out of prison. I have under gone another total right knee revesion on May 9, 2007 and I am still in the re-hab process with very little means to support my family and self.

I truly hope that send this information will assist in obtaining soon type of decision, one way or the other.

I am not an attorney and know little of the proper procedures in addressing the courts in this matter. If I am out of line I am sorry, but I am trying to go forward with my ongoing Merit Systems Protection Board, Appeals.

I thank you for your time and consideration.

Respectfully,

Gary R. Agnew

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,
     Plaintiff,

                               Crim. No. 3:03CR241 (JCH)

     vs

GARY R. AGNEW,               November 19, 2007
     Defendant,

DEFENDANTS ADDITIONAL INFORMATION FOR PENDING APPEAL

To:
The Honorable Janet C. Hall,
United States District Court Judge
For the District of Connecticut
Bridgeport, CT. 06601

Dear Your Honor,

I am sending this additional information in hope of helping with my ongoing appeal process.

The Assistant United States Attorney; Krishna R. Patel, Esq., requested and been granted: 3 extentions. She is incorrect as to this delay not being harmful, as I am no longer incarcerated. I have under gone another total right knee revesion on May 9, 2007 and I am still in the re-hab process.

I truly hope that sending this information will assist helping move this matter along.

With respect to your honor and the court, I truly hope that I have addressed this matter properly.

Thank you for your time and consideration.

Respectfully,

Gary R. Agnew

GARY R. AGNEW                          Docket No: 3:03CR00241(JCH)
81 Lynn Road
Bristol, CT. 06010-4465

1.

The defendant Gary R. Agnew contends that the greivance procedure adopted for the

preference-eligible postal employees by the United States Postal Service and the National

Postal Mail Handlers Union (LIUNA) do not violate either the Postal Reorganization Act

(PRA) 39 U.S.C. 101 et seq.) or the due process clause of the Fifth Amendment of the

Constutition.

2.

The defendant claims he is an employee of the United States Postal Service and a

member of the N.P.M.H.U. (union) and a preference eligible employee.  The defendant

contends that he was discharged from the U.S.P.S. while he was covered by the 2000-

2004 National Collective Bargaining Agreement between the U.S.P.S. and the Union.

Under Article 16; of the national agreement provided that no employee may be

discipline or discharged execpt for just cause as permitted by 39 U.S.C. 1206 (b).

Under Article 15; of the national agreement set forth a series of steps in the grievance

procedure which could culminate in binding third party arbitration, or through the Civil

Service Commission (CSC) appeal to the Merit Systems Protection Board.

The defendant claims that he is a preference-eligible employee defined in 5 U.S.C.

2108(3).  Under Title 5 grants specified employment and retention preferences, including

the right to appeal to the Civil Service Commission (CSC).  These preferences are

extended to U.S.P.S. employees meeting the preference-eligible definition by 39 U.S.C.

1005 (a) (2).

3.

The defendant contends that the grievance procedures of the national agreement violated

39 U.S.C. 1001 (b), to his due process clause of the Fifth Amendment.  Specifically that

he was discharged without a fair hearing to use the grievance procedures in resolving

adverse action.  Under 39 U.S.C. 1005 (a) (2), gives the defendant who is preference-

eligible the right to appeal to the (CSC) for a trial type hearing or to be allowed to use the

collective bargaining agreement.

4.

The defendant claims that the Constitutional issue that the District Court held that postal

workers, as federal employees have a sufficient property interest in continuing

employment to entitle him to his Fifth Amendment protection.

However the defendant claims that he did not have an opportunity to be heard under his

due process to be allowed to use the grievance procedure, subsequent to the government

proceeding to federal court.

5.

The defendant claims statuary interpretation relying on 39 U.S.C. 1001 (b) that Congress

Specifically provided for full-protection of his right to be heard on any adverse action

before the U.S.P.S. can proceed to federal district court.

6.

The defendant claims that the legislative history, HR 17070 "Sole Purpose" that the U.S.P.S., and the national unions be required to use the grievance procedures for work related complaints to the terms of conditions of employment, relating to on the job-injury, and false statement to worker's compensation CA-1032 form.

7.

The defendant claims through the Postal Reorganization Act of 1970 (PRA), that he is entitled under his due process to use the national agreement under 39 U.S.C. 1209 (a) or his rights under the Civil Service Reform Act of 1978; 5 U.S.C. 7121 (a) (1) negotiated grievance procedures for work related adverse complaint of whether he filed a false CA-1032; form to the workers compensation department.

However the government uses an alternate Statues 18 U.S.C. 1341 and 18 U.S.C/ 1920 to Supercede and undermine the Postal Reorganization Act of 1970, intent: which is discriminatory to conditions of employment of the national agreement grievance procedure.

8.

The defendant claims if he proceeded to the federal court suit on condictions of employment under the Statues under Title VII, Civil Rights Act of 1964 for discrimination whether he filed a false statement on his CA-1032 form to worker's compensation.  The federal courts would have ordered and remanded back to exhaust his administrative remedies of the national agreement.

Cases of reference:

WINSTON vs. UNITED STATES POSTAL SERVICE,
585 F.2d 198,  (7th cir.) 1978

BUSH vs. LUCAS
462 U.U. 367 (1983)

U.S. District Court for the District of Rhode Island,
WILLIAM MILLS vs. UNITED STATES POSTAL SERVICE
C.A., No. 96-628L

TERRY L. WHITMAN, pet. Vs. DEPARTMENT of TRANSPORTATION, et. al.
547, U.S.-126S Ct.-164, L.E.d.2d 771, (no. 04-1131).


See: *ATTACHED FEDERAL TIMES ARTICLE:*

This Federal Times Article; (Whitman case) states Whitman did not have any

Administrative Procedures to use.

So he was arguing his Constitutional Rights to proceed to Federal Court, because he had

no grievance procedures.  But defendant Gary R. Agnew; case is validating if he (you)

have the grievance procedure you are required to use before proceeding to Federal Court

with a suit.

June 12, 2006   FEDERAL TIMES 5

# Supreme Court orders review of complaints process

**By TIM KAUFFMAN**

Can federal employees take work-related complaints to court and, if so, do they first have to exhaust any administrative procedures?

Those are two questions the Supreme Court has instructed a lower court to consider in a case that could have significant implications for federal workers.

In a June 5 ruling, the Supreme Court rejected a lower court's decision that said federal employees covered by collective bargaining agreements can't sue in court because federal courts don't have expressed jurisdiction over those work-related claims.

While it's true the 1978 Civil Service Reform Act doesn't provide a specific role for federal courts in the negotiated grievance process, another statute gives federal courts jurisdiction over all matters related to the Constitution or other U.S. laws, the Supreme Court said.

In its three-page ruling, the high court seems to suggest that federal employees should be able to file workplace complaints in federal court unless they're specifically prohibited from doing so by the 1978 law, which the government concedes they are not. But the court left open the larger question of when employees can go to court and whether they must first exhaust administrative remedies.

"They strongly suggested that ultimately there has to be judicial review. But the question of whether someone should be required to exhaust [other remedies before seeking judicial review] . . . the court didn't reach that issue," said California attorney Pamela Karlan, who represented the federal employee in the case at hand.

The case involves Terry Whitman, an air traffic assistant at the Federal Aviation Administration's Anchorage, Alaska, Air Route Traffic Control Center who had been tested by the agency for drug use 14 times between 1996 and 2002. Whitman filed a lawsuit against the government in 2002, claiming the repeated drug tests violated his constitutional rights.

The U.S. District Court for the District of Alaska dismissed Whitman's lawsuit, saying Whitman should have challenged the drug testing under the agency's negotiated grievance procedures. The 9th U.S. Circuit Court of Appeals affirmed the district court's ruling in 2004.

In arguments before the Supreme Court, the government conceded the lower courts erred in holding that federal employees were precluded from going to federal court under the 1978 Civil Service Reform Act. Instead, it argued that Whitman first should have been required to exhaust any applicable administrative procedures before filing his lawsuit.

The 1978 law spells out some instances where employees first must go through administrative procedures before seeking judicial relief.

However, Whitman's case is different because the complaint concerned a violation of constitutional rights, which isn't addressed in the 1978 law, according to Gregory O'Duden, general counsel at the National Treasury Employees Union, which has filed legal arguments on Whitman's behalf.

"Where there is no administrative procedure prescribed by Civil Service Reform Act, the employee has the independent right to take their claims to court without having to file a contractual grievance first," O'Duden said.

The Supreme Court has remanded the case to the appeals court for further review. If the court decides employees are able to file lawsuits directly in federal court without going through administrative channels first, the impact on the court system could be significant, attorneys said.

"It would result conceivably in a tidal wave of personnel disputes being filed in U.S. District Court under the grounds of a violation of constitutional rights," said Joshua Bowers of Washington.

E-mail: tkauffman@federaltimes.com

```
=======================================
      FORESTVILLE STATION
      BRISTOL, Connecticut
           060107053
        0833690810-0099
11/20/2007 (800)275-8777 11:40:40 AM
=======================================
========= Sales Receipt =========
Product         Sale Unit    Final
Description      Qty Price    Price

BRIDGEPORT CT 06604          $0.97
Zone-1 First-Class
Large Env
  1.70 oz.
  Return Rcpt (Green          $2.15
  Card)

  Certified                  $2.65
  Label #:    70070710000257368832
                          ========
    Issue PVI:               $5.77

                          ==========
Total:                       $5.77

Paid by:
Cash                        $20.02
Change Due:                -$14.25

Order stamps at USPS.com/shop or
call 1-800-Stamp24.  Go to
USPS.com/clicknship to print
shipping labels with postage.  For
other information call
1-800-ASK-USPS.

Bill#:1000100321180
Clerk:06

All sales final on stamps and postage.
Refunds for guaranteed services only.
    Thank you for your business.
****************************************
****************************************
      HELP US SERVE YOU BETTER

    Go to: http://gx.gallup.com/pos

    TELL US ABOUT YOUR RECENT
         POSTAL EXPERIENCE

       YOUR OPINION COUNTS
****************************************
****************************************



       Customer Copy
```

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.97 |
| Certified Fee | | $2.65 |
| Return Receipt Fee (Endorsement Required) | | $2.15 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $5.77 |

Postmark Here
11/20/2007

Sent To  US DISTRICT COURT DIST OF CT
Street, Apt. No.;  915 LaFayette Blvd.
or PO Box No.
City, State, ZIP+4  BRIDGEPORT, Ct. 06604

PS Form 3800, August 2006          See Reverse for Instructions

7007 0710 0002 5736 8832

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

U.S. DRISIC CT COORT
915 LAFAYETE BRN
BRIDGEPORT C8 06604

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                              ☐ Agent
                               ☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery
                                 11/27/07
D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:     ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
   (Transfer from service label)

7007 0710 0002 5736 8832

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**GARY R. AGNEW**
       **PLAINTIFF,**                    **CRIMINAL NO: 3-03-CR-00241-(JCH)**

**v.**

**UNITED STATES OF AMERICA**
       **DEFENDANT,**

**January 21, 2008**

**Motion**
**Reconsideration of order**

1.

The plaintiff is claiming that Attorney Generals Office; Assistant Attorney General;
Eric Glover at a prior interview to the Grand Jury Indictment obstructed justice. By using
Threats and intimidation on James Micca; part owner of International Motorcars; as well
as Mr. Micca attorney.

By U.S.A.A.G. Eric Glover attempting to make James Micca give false statements and
make false accusations. Telling Mr. Micca what he was to say, and if he did not do as
instructed he would close up Mr. Micca business.

Eric Glover was so upset that he threw a pen at Mr, Micca which struck him.

2.

The plaintiff is claiming that his 5th Amendment Constitutional Due Process Rights
were governed by The Civil Service Reform Act of 1978, (C.S.R.A.), (5 U.S.C. 1101 et.
1).

seq.), the Postal Reorganization Act of 1970 (P.R.A.), under Congressional Intent to

provide a comprehensive scheme for administrative and judicial reviews under the

Collective Bargaining Agreement that both sides agreed too, which never occurred.

   The plaintiff is arguing that the district court lacks jurisdiction under the Provision; (5

U.S.C. 7121 (a) (1), under which the negotiated procedures contained in the Collective

Bargaining Agreement; generally these were to be used exclusively in the administrative

procedures for resolving; Grievances which fall within the Collective Bargaining

Agreements coverage of Article 2, NON-DISCRIMINATION and CIVIL RIGHTS.

Article 16, DISCILPLINE PROCEDURE, Article 19, HANDBOOKS AND MANUALS,

Article 21.4, INJURY COMPENSATION.  Article 27.1, CLAIM FILING and Article

27.2, CLAIM ADJUDICATION.  By the government using a Federal Statue it makes the

Collective Bargaining Agreement meaningless to its intent between all labor

organizations.

**AGREEMENT**
Between

National Postal Mail Handlers Union

A Division of The Labors'

International Union of North America,
AFL-ICO

And

United States Postal Service

November 21, 2000-November 20, 2004

2.)

3.

The plaintiff claims that U.S. Postal Inspector; Douglas Millett, continued his **"Abuse of Authority"** towards the plaintiff after the conviction on March 30, 2004.

On April 2, 2004 inspector Millett sent a Fax to the Department of Labor; to get them to make a determination on any overpayment made to the plaintiff. Subsequent; to the

district courts findings for restitution. Inspector Millett, ex-parte communication with the Department of Labor is a violation of the plaintiff privacy. The plaintiff received no notification from the Department of Labor, that his records were being asked for after the conviction on March 30, 2004 If there was a problem with the CA-1032 Forms, why didn't the department of labor seek clarification? Inspector Millett has no jurisdiction after the conviction on March 30, 2004. The Department of Labor to this date has refused to make a decision on any overpayment to the plaintiff.

The plaintiff claims that under the other Circuit Courts have decided that the deposits for collection of Government Check(s), to which the depositor is not entitled to constitute a fraudulent claim under; 18 U.S.C. 1001, can only be SOLEY DETERMINED by the Secretary of the Department of Labor. (D.O.L.) see 5 U.S.C. 8128 (b).

The plaintiff was under the jurisdictional authority of the Department of Labor; not the United States Postal Service. The case was taken to Federal District Court in violation of Article 16.9, VETERANS PREFERENCE ACT, contained in the Collective Bargaining

3).

Agreement, which all Labor Organizations agree too.

4.

The plaintiff claims that he could not file a CONTRACTUAL GREIVANCE at the time of his Indictment and Arrest, on August 26, 2003. Because the plaintiff was in a pay status with the Department of Labor on October 19, 2001 thru to conviction on March 30, 2004. The plaintiff never received any action so that he could file a grievance, denying the Plaintiff of his DUE PROCESS RIGHTS as a VETERAN. The Department of Labor continued to pay the plaintiff until court found him guilty. As long as the plaintiff was receiving pay checks from the Department of Labor, he could not take any action against the United States Postal Service under the Collective Bargaining Agreement. Due to the fact that the plaintiff was full property of the Department of Labor, and under their jurisdiction.

5.

The Grand Jury never Indicted the plaintiff for a Veterans Administration Fraudulent Claim. This issue was never before the Grand Jury. The plaintiff claims that he falls under the Secretary of Veterans Affairs and not the District Courts for any determination as to whether the plaintiff was entitled to his monthly disability checks. The Secretary of Veterans Affairs never made a determination that the checks received by the plaintiff were improper.

6.

4).

The plaintiff claims that during his criminal trial proceedings ; witness for the plaintiff Joseph Horvith; testified that he performed volunteer work at a Getty Gas Station in East Hartford, CT.  Working there while being out on Worker's Compensation, in Violation of the Department of Labor Rules and Regulations.

Mr. Horvith worked for the same supervisor at the Postal Service as the plaintiff. Doing the same LIMITED DUTY JOB as the plaintiff in the Mimeo Department at The Hartford Post Office.

Mr. Horvith was never charged with any crime; showing disparate treatment, too equal Protection to penalties of a crime.  The plaintiff 1st Amendment Constitutional Due Process Rights are being violated by not being treated equally under the same supervisor.

7.

The plaintiff claims that his 5th Amendment Constitutional Due Process Rights were violated on February 27, 2003 at International Motorcars; during the plaintiff accusing questioning by U.S. Postal Inspectors for CRIMINAL activities.

The plaintiff claims that during his questioning at International Motorcars by the U.S. Postal Inspectors he was never given his Miranda Rights Warning or that he had the Right to Remain Silent; and that anything he states can be used in Criminal Courts.  This In direct violation of the plaintiff 5th Amendment Constitutional Rights.  In violation of United States Postal Service Inspection Service Manual section 432. 5).

The plaintiff claims that the U.S. Postal Inspectors never had him sign a Miranda Warning Waiver Form admitting to this questioning at International Motorcars; making all references to Center Automotive and International Motorcars "**hearsay**" and not proven by the preponderance of the evidence.

8.

The plaintiff objects to the enhancement penalties on the basis that the Postal Inspectors should have confronted the plaintiff; the first time they physically viewed and observed him at Center Automotive, (International Motorcars) on December 18, 2001. By not confronting the plaintiff they enhanced the penalties which was discriminatory. If the Postal Inspectors would have confronted the plaintiff under the agency rules and regulations; and under the Collective Bargaining Agreement; Article 16, DISCIPLINE PROCEDURE. Section 16.1, Statement of Principle; which states; In the administration of this Article, a basic principle shall be that **all discipline should be corrective in nature, rather than punitive.** No employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations. Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for this Agreement, which could result in reinstatement an restitution, including back pay.





# AGREEMENT

between

## National Postal Mail Handlers Union
### A Division of The Laborers'
International Union of North America,
AFL-CIO

and

## United States Postal Service

**November 21, 2000 - November 20, 2004**

## Article 1.3

### Section 1.3 Facility Exclusions

This Agreement does not apply to employees who work in other employer facilities which are not engaged in customer services and mail processing, previously understood and expressed by the parties to mean mail processing and delivery, including but not limited to Headquarters, Area Offices, Postal Data Centers, Postal Service Training and Development Institute, Oklahoma Postal Training Operations, Postal Academies, Postal Academy Training Institute, Stamped Envelope Agency, Supply Centers, Mail Equipment Shops, or Mail Transport Equipment Centers and Repair Centers.

### Section 1.4 Definition

Subject to the foregoing sections, this Agreement shall be applicable to all employees in the regular work force of the U.S. Postal Service, as defined in Article 7, at all present and subsequently acquired installations, facilities, and operations of the Employer, wherever located.

### Section 1.5 New Positions

A    Each newly created position shall be assigned by the Employer to the national craft unit most appropriate for such position within thirty (30) days after its creation. Before such assignment of each new position the Employer shall consult with the Union for the purpose of assigning the new position to the national craft unit most appropriate for such position. The following criteria shall be used in making this determination:

A1   existing work assignment practices;

A2   manpower costs;

A3   avoidance of duplication of effort and "make work" assignments;

A4   effective utilization of manpower, including the Postal Service's need to assign employees across craft lines on a temporary basis;

A5   the integral nature of all duties which comprise a normal duty assignment;

A6   the contractual and legal obligations and requirements of the parties.

B    The Union shall be notified promptly by the Employer regarding assignments made under this provision. Should the Union dispute the assignment of the new position within thirty (30) days

from the date the Union has received notification of the assignment of the position, the dispute shall be subject to the provisions of the grievance and arbitration procedure provided for herein.

### Section 1.6 Performance of Bargaining Unit Work

A    Supervisors are prohibited from performing bargaining unit work at post offices with 100 or more bargaining unit employees, except:

A1   in an "emergency" which is defined to mean an unforeseen circumstance or a combination of circumstances which calls for immediate action in a situation which is not expected to be of a recurring nature;

A2   for the purpose of training or instruction of employees;

A3   to assure the proper operation of equipment;

A4   to protect the safety of employees; or

A5   to protect the property of the USPS.

B    In offices with less than 100 bargaining unit employees, supervisors are prohibited from performing bargaining unit work except as enumerated in Section 1.6A1 through 1.6A5 above or when the duties are included in the supervisor's position description.

[See Memo, page 117]

## ARTICLE 2
## NON-DISCRIMINATION AND CIVIL RIGHTS

### Section 2.1 Statement of Principles

The Employer and the Union agree that there shall be no discrimination by the Employer or the Union against employees because of race, color, creed, religion, national origin, sex, age, or marital status. In addition, consistent with the other provisions of this Agreement, there shall be no unlawful discrimination against employees, as prohibited by the Rehabilitation Act of 1973 or the Vietnam Era Veterans Readjustment Act of 1974.

[See Memo, page 117]

### Section 2.2 Committee

Non-Discrimination and Civil Rights are proper subjects for discussion at Labor-Management Committee meetings at the national, regional/ area and local levels provided in Article 38.

**Article 2.3**

### Section 2.3 Grievances

Grievances arising under this Article may be filed at Step 2 of the grievance procedure within fourteen (14) days of when the employee or the Union has first learned or may reasonably have been expected to have learned of the alleged discrimination, unless filed directly at the national level, in which case the provisions of this Agreement for initiating grievances at that level shall apply.

### Section 2.4 Dual Filing

The Union, at the national and local levels, will take affirmative steps to ensure that bargaining-unit employees are informed that they should not pursue essentially contractual matters simultaneously under the grievance and EEO processes.

The Union, at the national and local levels, will not encourage dual filing of grievances.

## ARTICLE 3
## MANAGEMENT RIGHTS

The Employer shall have the exclusive right, subject to the provisions of this Agreement and consistent with applicable laws and regulations:

3.1  To direct employees of the Employer in the performance of official duties;

3.2  To hire, promote, transfer, assign, and retain employees in positions within the Postal Service and to suspend, demote, discharge, or take other disciplinary action against such employees;

3.3  To maintain the efficiency of the operations entrusted to it;

3.4  To determine the methods, means, and personnel by which such operations are to be conducted;

3.5  To prescribe a uniform dress to be worn by designated employees; and

3.6  To take whatever actions may be necessary to carry out its mission in emergency situations, i.e., an unforseen circumstance or a combination of circumstances which calls for immediate action in a situation which is not expected to be of a recurring nature.

**Article 4.3**

## ARTICLE 4
## TECHNOLOGICAL AND MECHANIZATION CHANGES

Both parties recognize the need for improvement of mail service.

### Section 4.1  Advance Notice

The Union at the national level will be informed as far in advance as practicable, but no less than 30 days in advance, of implementation of technological or mechanization changes which affect jobs including new or changed jobs in the area of wages, hours or working conditions. When major new mechanization or equipment is to be purchased and installed, the Union at the national level will be informed as far in advance as practicable, but no less than 90 days in advance.

### Section 4.2  Committee

There shall be established at the national level a Joint Technological and Mechanization Changes Committee composed of an equal number of representatives of management and the union. The Committee shall meet semiannually, or as necessary, from the conceptual stage onward, to discuss any issues concerning proposed technological and mechanization changes which may affect jobs, including new or changed jobs, which affect the wages, hours, or working conditions of the bargaining unit. For example, the Postal Service will keep the Union advised concerning any research and development programs (e.g., study on robotics) which may have an effect on the bargaining unit.

In addition, the Committee shall be informed of any new jobs created by technological or mechanization changes. Where present employees are capable of being trained to perform the new or changed jobs, the Committee will discuss the training opportunities and programs which will be available. These discussions may include the availability of training opportunities for self-development beyond the new or changed jobs.

### Section 4.3  Resolution of Differences

Upon receiving notice of the changes, an attempt shall be made at the national level to resolve any questions as to the impact of the proposed change upon affected employees and if such questions are not resolved within a reasonable time after such change or changes are operational, the unresolved questions may be submitted by the Union to arbitration under the grievance-arbitration procedure. Any arbitration arising under this Article will be given priority in scheduling.

## MEMORANDUM OF UNDERSTANDING
## SUPERVISORS PERFORMING BARGAINING UNIT WORK

It is agreed between the U.S. Postal Service and the National Postal Mail Handlers Union, a Division of LIUNA, that where additional work hours would have been assigned to employees but for a violation of Article 1, Section 1.6.A of the 2000 National Agreement and where such work hours are not de minimis, the employee(s) whom management would have assigned the work shall be paid for the time involved at the applicable rate.

## MEMORANDUM OF UNDERSTANDING
## REASONABLE ACCOMMODATION FOR THE
## DEAF AND HARD OF HEARING

### MANAGEMENT'S RESPONSIBILITY

Management has an obligation to reasonably accommodate impaired employees and applicants who request assistance in communicating with or understanding others in work related situations, such as:

a.   During investigatory interviews which may lead to discipline, or discussions with a supervisor on job performance or conduct, or presentation of a grievance.

b.   During some aspects of training, including formal classroom instruction.

c.   During portions of EAP programs and EEO counselings.

d.   In critical elements of the selection process such as during testing and interviews.

e.   During employee orientations and safety talks, CFC and Savings Bond Kickoff meetings.

f.   During the filing or meetings concerning an employee's OWCP claim.

### IMPLEMENTATION

This obligation is met by selecting an appropriate resource from the variety of resources available.  In selecting a resource, the following, among others, should be considered, as appropriate:

• The ability of the deaf and hard of hearing employee to understand various methods of communication and the ability of others to understand the deaf and hard of hearing employee.

117

### Article 38.3

scheduled meeting, discussions may take place by mutual agreement in lieu thereof.

### Section 38.3  Christmas Operation

The policies to be established by management for the Christmas operation will be a subject of discussion at a timely regularly scheduled Labor-Management Committee meeting.

### Section 38.4  Minutes

Minutes of local Labor-Management Committee meetings may be taken by each party.

## ARTICLE 39
## SEPARABILITY AND DURATION

### Section 39.1 Separability

Should any part of this Agreement or any provision contained herein be rendered or declared invalid by reason of any existing or subsequently enacted legislation or by a court of competent jurisdiction, such invalidation of such part or provision of this Agreement shall not invalidate the remaining portions of this Agreement, and they shall remain in full force and effect.

### Section 39.2 Duration

Unless otherwise provided, this agreement shall be effective November 21, 2000, and shall remain in full force and effect to and including 12 midnight, November 20, 2004 and unless either party desires to terminate or modify it, for successive annual periods.  The party demanding such termination or modification must serve written notice of such intent to the other party, not less than 90 or more than 120 days before the expiration date of the Agreement.

In witness whereof the parties hereto affix their signatures below this **10th day of April, 2002.**

For the United States Postal Service

*John E. Potter*

John E. Potter
Postmaster General,
CEO
U.S. Postal Service

For the Union

*William H. Quinn*

William H. Quinn
National President
National Postal Mail Handlers' Union,
A Division of Laborers' International
Union of North America, AFL-CIO

116

## Article 15.5

### Section 15.5 Administration

The parties recognize their continuing joint responsibility for efficient functioning of the grievance procedure and effective use of arbitration. The Employer will furnish to the Union a copy of a quarterly report containing the following information covering operation of the arbitration procedure at the National level, and for each District docket separately:

A   number of cases appealed to arbitration;

B   number of cases scheduled for hearing;

C   number of cases heard;

D   number of scheduled hearing dates, if any, which were not used;

E   the total number of cases pending but not scheduled at the end of the quarter.

## ARTICLE 16
## DISCIPLINE PROCEDURE

### Section 16.1 Statement of Principle

In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive. No employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations. Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement, which could result in reinstatement and restitution, including back pay.

### Section 16.2 Discussions

For minor offenses by an employee, management has a responsibility to discuss such matters with the employee. Discussions of this type shall be held in private between the employee and the supervisor. Such discussions are not considered discipline and are not grievable. Following such discussions, there is no prohibition against the supervisor and/or the employee making a personal notation of the date and subject matter for their own personal record(s). However, no notation or other information pertaining to such discussion shall be included in the employee's personnel folder. While such discussions may not be cited as an element of a prior adverse record in any subsequent disciplinary action against an employee, they may be, where relevant and timely, relied upon to establish that employees have been made aware of their obligations and responsibilities.

## Article 16.5

### Section 16.3 Letter of Warning

A letter of warning is a disciplinary notice in writing, identified as an official disciplinary letter of warning, which shall include an explanation of a deficiency or misconduct to be corrected.

[See MOU, page 146]

### Section 16.4 Suspensions of Less Than 14 Days

In the case of discipline involving suspensions of less than fourteen (14) days, the employee against whom disciplinary action is sought to be initiated shall be served with a written notice of the charges against the employee and shall be further informed that he/she will be suspended, but that such suspension shall be served while on duty with no loss of pay (no-time-off suspension). No-time-off suspensions shall be considered to be of the same degree of seriousness, and will satisfy the same step in the pattern of progressive discipline as the time-off suspension being replaced. As such, no-time-off suspensions are equivalent to the previously issued time-off suspensions as an element of past discipline.

### Section 16.5 Suspensions of 14 or More Days or Discharge

In the case of discipline involving suspensions of fourteen (14) days, the employee against whom disciplinary action is sought to be initiated shall be served with a written notice of the charges against the employee and shall be further informed that he/she will be suspended after fourteen (14) calendar days during which ten day period the employee shall remain on the job or on the clock (in pay status) at the option of the Employer. However, if the Union or the employee initiates a timely grievance prior to the effective date of the action and if the grievance is timely appealed to Step 2, the grievant shall not begin to serve the suspension until after the Step 2 decision has been rendered.

In the case of suspensions of more than fourteen (14) days, or discharge, any employee shall, unless otherwise provided herein, be entitled to an advance written notice of the charges against him/her and shall remain either on the job or on the clock at the option of the Employer for a period of thirty (30) days. Thereafter, the employee shall remain on the rolls (non-pay status) until disposition of the case has been had either by settlement with the Union or through exhaustion of the grievance arbitration procedure.

A preference eligible who chooses to appeal a suspension of more than fourteen (14) days or his discharge to the Merit Systems Protection Board (MSPB) rather than through the grievance arbitration procedure shall remain on the rolls (non-pay status) until disposition of the case has

Article 19.1

## ARTICLE 19
## HANDBOOKS AND MANUALS

### Section 19.1

Those parts of all handbooks, manuals and published regulations of the Postal Service, that directly relate to wages, hours or working conditions, as they apply to employees covered by this Agreement, shall contain nothing that conflicts with this Agreement, and shall be continued in effect except that the Employer shall have the right to make changes that are not inconsistent with this Agreement and that are fair, reasonable, and equitable. This includes, but is not limited to, the Postal Service Manual and the F-21 Timekeeper's Instructions.

### Section 19.2

Notice of such proposed changes that directly relate to wages, hours, or working conditions will be furnished to the Union at the national level at least sixty (60) days prior to issuance. At the request of the Union, the ing, believes the proposed changes violate this Agreement (including this Article), it may then submit the issue to arbitration in accordance with the arbitration procedure within sixty (60) days after receipt of the notice of proposed changes. Copies of those parts of all new handbooks, manuals and regulations that directly relate to wages, hours or working conditions, as they apply to employees covered by this Agreement, shall be furnished the Union upon issuance.

## ARTICLE 20
## PARKING

### Section 20.1 Parking Program

The existing parking program will remain in effect.

### Section 20.2 Security

Recognizing the need for adequate security for employees in parking areas, and while en route to and from parking areas, the Employer will take reasonable steps, based on the specific needs of the individual location, to safeguard employee security, including, but not limited to, establishing liaison with local police authorities, requesting the assignment of additional uniformed police in the area, improving lighting and fencing, and, where available, utilizing mobile security force patrols.

Article 21.1

### Section 20.3 Energy Usage

In order to reduce energy usage the Employer and the Union will promote the use of carpooling and public transportation, where available.

[See Memo, page 149]

### Section 20.4 Parking

A    In postal facilities where parking is on a first-come/first-served basis, there will not be a parking space assigned to the designated agent of the Mail Handlers Union, except where such space has been previously negotiated.

B    In postal facilities where at least one space has been assigned to a postal employee (either bargaining or nonbargaining), a parking space shall be assigned to the designated agent of the Mail Handlers Union.

C    The provisions of B above will not apply to parking spaces assigned for the handicapped, nonpostal people (i.e. tenants), customers, postal vehicles, personal vehicles normally utilized in official postal duties or if a parking space is assigned adjunct to a security post. The above provisions are not intended to eliminate any parking space previously acquired by the designated agent of the Mail Handler Union through local negotiations.

### Section 20.5 Committee

The parking program is a proper subject for discussion at Labor-Management Committee meetings at the national level provided in Article 38.

## ARTICLE 21
## BENEFIT PLANS

### Section 21.1 Health Benefits

The method for determining the Employer bi-weekly contributions to the cost of employee health insurance programs under the Federal Employees Health Benefits Program (FEHBP) will be as follows:

A.    The Office of Personnel Management shall calculate the subscription charges under the FEHBP that will be in effect the following January with respect to self only enrollments and self and family enrollments.

B.    The bi-weekly Employer contribution for self only and self and family plans is adjusted to an amount equal to 85% of the

## Article 21.2

weighted average bi-weekly premiums under the FEHBP as determined by the Office of Personnel Management. The adjustment begins on the effective date determined by the Office of Personnel Management in January 2003, **January 2004, and January 2005.**

C.   The weight to be given to a particular subscription charge for each FEHB plan and option will be based on the number of enrollees in each such plan and option for whom contributions have been received from employers covered by the FEHBP as determined by the Office of Personnel Management.

D.   The amount necessary to pay the total charge for enrollment after the Employer's contribution is deducted shall be withheld from the pay of each enrolled employee. To the extent permitted by law, the Employer shall permit employees covered by this Agreement to make their premium contributions to the cost of each plan on a pre-tax basis, and shall extend eligibility to such employees for the U.S. Postal Service's flexible spending account plans for unreimbursed health care expenses and work-related child care and elder care expenses as authorized under Section 125 of the Internal Revenue Code.

E.   The limitation upon the Employer's contribution towards any individual employee shall be 88.75% of the subscription charge under the FEHBP in 2003, 2004, **and 2005.**

### Section 21.2 Life Insurance

The Employer shall maintain the current life insurance program in effect during the term of this Agreement.

### Section 21.3 Retirement

The provisions of Chapters 83 and 84 of Title 5 U.S. Code, and any amendments thereto, shall continue to apply to employees covered by this Agreement.

### Section 21.4 Injury Compensation

Employees covered by this Agreement shall be covered by subchapter I of Chapter 81 of Title 5, and any amendments thereto, relating to compensation for work injuries. The Employer will promulgate appropriate regulations which comply with applicable regulations of the Office of Workers' Compensation Programs and any amendments thereto.

96

## Article 24.1

### Section 21.5 Health Benefit Brochures

When a new employee who is eligible for enrollment in the Federal Employee's Health Benefit Program enters the Postal Service, the employee shall be furnished a copy of the Health Benefit Plan brochure of the Union.

[See Memo, page 149]

### ARTICLE 22
### BULLETIN BOARDS

The Employer shall furnish a bulletin board for the exclusive use of the Union, subject to the conditions stated herein, if space is available. **The Union may place a literature rack in swing doors, if space is available.** Only suitable notices and literature may be posted or placed in literature racks. There shall be no posting or placement of notices or literature in literature racks except upon the authority of the officially designated Union representative.

### ARTICLE 23
### RIGHTS OF UNION OFFICIALS TO ENTER POSTAL INSTALLATIONS

Upon reasonable notice to the Employer, duly authorized representatives of the Union shall be permitted to enter postal installations for the purpose of performing and engaging in official union duties and business related to this Agreement. There shall be no interruption of the work of employees due to such visits and representatives shall adhere to the established security regulations.

### ARTICLE 24
### EMPLOYEES ON LEAVE WITH REGARD TO UNION BUSINESS

### Section 24.1 Continuation of Benefits

Any employee on leave without pay to devote full or part-time service to the Union shall be credited with step increases as if in a pay status. Retirement benefits will accrue on the basis of the employee's step so attained, provided the employee makes contributions to the retirement fund in accordance with current procedure. Annual and sick leave will be earned in accordance with existing procedures based on hours worked.

97

**Article 28.1**

## ARTICLE 27
## EMPLOYEE CLAIMS

### Section 27.1  Claim Filing

Subject to a $10 minimum, an employee may file a claim within fourteen (14) days of the date of loss or damage and be reimbursed for loss or damage to his/her personal property except for motor vehicles and the contents thereof taking into consideration depreciation where the loss or damage was suffered in connection with or incident to the employee's employment while on duty or while on postal premises. The possession of the property must have been reasonable, or proper under the circumstances and the damage or loss must not have been caused in whole or in part by the negligent or wrongful act of the employee. Loss or damage will not be compensated when it resulted from normal wear and tear associated with day-to-day living and working conditions.

### Section 27.2  Claim Adjudication

Claims should be documented, if possible, and submitted with recommendations by the Union steward to the Employer at the local level. The Employer will submit the claim, with the Employer's and the steward's recommendation within 15 days, to the District office for determination. The claim will be adjudicated within thirty (30) days after receipt at the District office. An adverse determination on the claim may be appealed pursuant to the procedures for appealing an adverse decision in Step 3 of the grievance-arbitration procedure. A decision letter denying a claim in whole or in part will include notification of the Union's right to appeal the decision to arbitration. The District office will provide to the Union's Regional Representative a copy of the denial letter, the claim form, and all documentation submitted in connection with the claim. The installation head or designee will provide a copy of the denial letter to the steward whose recommendation is part of the claim form.

## ARTICLE 28
## EMPLOYER CLAIMS

### Section 28.1  Statement of Principle

The parties agree that continued public confidence in the Postal Service requires the proper care and handling of the U.S.P.S. property, postal funds, and the mails. In advance of any money demand upon an employee for any reason, the employee must be informed in writing and the demand must include the reasons therefor.

---

**Article 26.1**

B    Terminal leave payments resulting from death will be paid at the higher level for all employees who are assigned or detailed to higher level assignments on their last workday.

## ARTICLE 26
## UNIFORM AND WORK CLOTHES

### Section 26.1  Uniform and Work Clothes Administration

All employees who are required to wear uniforms or work clothes shall be furnished uniforms or work clothes or shall be reimbursed for purchases of authorized items from duly licensed vendors. The current administration of the Uniform and Work Clothes Program shall be continued unless otherwise changed by this Agreement or the Employer.

### Section 26.2  Contract Program Administration

Employees who are currently furnished uniforms pursuant to the contract program shall continue to be so entitled. Such uniforms shall be issued in a timely manner. The allowance to Mail Handlers under this program shall be as follows:

**$118 effective November 21, 2001**
**$121 effective November 21, 2002**

**Each increase shall become effective on the employee's anniversary date following the effective date of change.**

### Section 26.3  Annual Allowance

The current Work Clothes Program will be continued for those full-time employees who have been determined to be eligible for such clothing based on the nature of work performed on a full-time basis in pouching and dispatching units, parcel post sorting units, bulk mail sacking operations, and ordinary paper sacking units. The Employer will provide eligible employees with an annual allowance to obtain authorized work clothes on a reimbursable basis from licensed vendors as follows:

**$59 effective November 21, 2001**
**$60 effective November 21, 2002**

**Each increase shall become effective on the employee's anniversary date following the effective date of change.**

13. Any other grievance mutually agreed upon by the parties at Step 3.

This Agreement does not change either party's right to refer an expedited case to regular arbitration in accordance with the applicable procedures of Article 15, Section 4.C... of the National Agreement.

## MEMORANDUM OF UNDERSTANDING
### Re: Purge of Warning Letters

The parties agree that there will be a one-time purge of Official Disciplinary Letters of Warning from the personnel folders of all employees represented by the National Postal Mail Handlers Union. To qualify to be purged, a Letter of Warning must:

1. Have an issue date prior to the effective date of the **2000** National Agreement between the parties;

2. Have been in effect for 6 months or longer and not cited as an element of prior discipline in any subsequent disciplinary action; and

3. Not have been issued in lieu of a suspension or a removal action.

All grievances associated with discipline that is purged as a result of this Memorandum shall be withdrawn.

## MEMORANDUM OF UNDERSTANDING
### TASK FORCE ON DISCIPLINE

The parties agree to establish at the national level a "Task Force on Discipline." The Task Force shall have three (3) representatives of the Union and three (3) representatives of the USPS.

The purpose of the Task Force shall be to study the manner in which discipline is administered by the USPS, the manner in which disputes are handled by the parties, and to recommend changes and improvements which can be made in the discipline and dispute resolution systems.

The Task Force is authorized, at its discretion, to conduct tests of alternative discipline and dispute resolution systems in various facilities.

The Task Force shall convene periodically but at least quarterly, at such times and at such places as it deems appropriate during the term of the **2000** National Agreement. No action or recommendations may be taken by the Task Force except by an agreement of the parties.

Nothing herein shall preclude any of the parties from exercising the rights which they may otherwise have.

146

## MEMORANDUM OF UNDERSTANDING
### MODIFIED DISCIPLINE PROGRAMS

The parties agree to continue with the testing of Modified Article 16. The purpose and format of Modified Article 16 shall remain the same as it was originally developed under the Task Force on Discipline, unless changed by the Task Force. Those sites which are currently involved in the testing of Modified Article 16 shall continue with the testing, unless the local parties notify the Task Force on Discipline to the contrary, in accordance with the stated guidelines as developed by the Task Force.

This Memorandum of Understanding will terminate upon the expiration of the **2000** National Agreement.

## MEMORANDUM OF UNDERSTANDING
### RE: ROLE OF THE INSPECTION SERVICE IN LABOR RELATIONS MATTERS

The parties recognize the role of the Postal Inspection Service in the operation of the Postal Service and its responsibility to provide protection to our employees, security to the mail and service to our customers.

Postal Inspection Service policy does not condone disrespect by Inspectors in dealing with an individual. The Postal Inspection Service has an obligation to comply fully with the letter and spirit of the National Agreement between the United States Postal Service and the National Postal Mail Handlers Union, and will not interfere in the dispute resolution process as it relates to Articles 15 and 16.

The parties further acknowledge the necessity of an independent review of the facts by management prior to the issuance of disciplinary action, emergency procedures, indefinite suspensions, enforced leave or administrative actions. Inspectors will not make recommendations, provide opinions, or attempt to influence management personnel regarding a particular disciplinary action, as defined above.

Nothing in this document is meant to preclude or limit Postal Service management from reviewing Inspection Service documents in deciding to issue discipline.

147

# CERTIFICATE OF SERVICE

I certify that these documents; MOTION FOR ORDER as well as MOTION FOR

RECONSIDERATION OF ORDER.;

Were sent to the following on this date; January 23, 2008

ADMINISTRATIVE JUDGE

**JANET C. HALL**
United States District Court
District of Connecticut
915 Lafayette Boulevard
Bridgeport, CT. 06604

**HAND DELIVERED, TO U.S. DISTRICT
COURT CLERK, BRIDGEPORT, CT.**
915 Lafayette Boulevard
Bridgeport, CT. 06604

ASSISTANT U.S. ATTORNET

**KRISHNA R. PATEL**
Assistant United States Attorney
915 Lafayette Boulevard
Bridgeport, CT. 06604

**U.S. MAIL,**
First Class

GARY R. AGNEW
PLAINTIFF,

**Dated; January 23, 2008**