**GARY R. AGNEW**
**PLAINTIFF,**

**CRIMINAL ACTION NO.**
**3-03-CR-00241-(JCH)**

2008 MAR 12  P 12: 48

DISTRICT COURT

**v.**

**UNITED STATES OF AMERICA**
**DEFENDANTS,**

**March 12, 2008**

## MOTION FOR PETITION OF COMPLAINT,

## COLLATERAL ATTACK

The Petitioner, Gary R. Agnew hereby requests that the court grant his motion for

Petition of Complaint; Collateral Attack.

The plaintiff was found guilty of 16 Counts; 15 Counts of Mail Fraud, 18 U.S.C.

1341; and 1 Count of Falsification of Office of Worker's Compensation Programs Forms

to Obtain Federal Benefits, 18 U.S.C. 1920.

The plaintiff claims for the following reasons he applies for this motion on the

grounds that the Department of Labor Letter; dated, August 27, 2007 was not available

during the trial, and is newly discovered evidence.

The plaintiff claims this letter states that the Department of Labor has not made any

decision of any overpayment to the plaintiff in the above mentioned case. Do to the

plaintiff filing a M.S.P.B. Appeal.(Docket No. PH-3443-08-0003-I-1). Therefore how

can the plaintiff be held to the restitution order of  $84,403.00 if the Secretary of the

1.

Department of Labor has not made any decision under; 20 C.F.R. 10.432, that the plaintiff was not entitled to the workers compensation checks sent to him for his claim.

The plaintiff claims that under; 2nd Circuit Courts have decided that the deposits, received and endorsed for collection of Government Check(s), to which the depositor is not entitled, can not be charged with a scheme to defraud; is not entitled to constitute a fraudulent claim under; 18 U.S.C. 1001, can only be SOLEY DETERMINED by the Secretary of Labor. (DOL). See: 5 U.S.C. 8128 (b). See: U.S. vs. Branker 395 F.2d 881-889, 2nd Cir.1968 and See: Daniel vs. U.S.P.S., 57 M.S.P.R. 272-279, 1993.

The plaintiff is claiming that his; U.S. Constitutional Due Process Rights under the 5th Amendment were governed by The Civil Service Reform Act of 1978, (C.S.R.A.), (5 U.S.C. 1101 et. seq.), The Postal Reorganization Act of 1970 (P.R.A.), under the Congressional Intent to provide a comprehensive scheme for administrative remedies before perusing judicial reviews which fall under, The Collective Bargaining Agreement, that both parties agreed too, which never occurred.  While this issue was never decided in detail of an explanation of jurisdiction. See: George Goshdigian letter to Judge Hall. dated February 23, 2005.

The plaintiff is claiming that the U.S. Attorney Office, circumvented the Collective Bargaining Agreement; this case should have been heard before the Merit Systems Protection Board for a trial type hearing; before their administrative judge to decide, which is the Plaintiff, Due Process Right under the Collective Bargaining Agreement;

2.

See; 5 U.S.C. 7121 (a) (1).  The contract negotiated procedures contained in the

Collective Bargaining Agreement; generally these were to be used exclusively in

administrative procedures for resolving; Grievances which fall within the Collective

Bargaining Agreements coverage of; ARTICLES:

2,  NON-DISCRIMINATION and CIVIL RIGHTS.

13,  ASSIGNMENT OF ILL OR INJURED REGULAR WORK FORCE EMPLOYEES.

15,  GRIEVANCE-ARBITRATION PROCEDURE.

16,  DISCIPLINE PROCEDURE.

19,  HANDBOOKS AND MANUALS.

21.4  INJURY COMPENSATION.

27.1  EMPLOYEE CLAIMS.

MEMORANDUM OF UNDERSTANDING:

RETURN TO DUTY (pg 136)

RE: ROLE OF THE INSPECTION SERVICE IN LABOR RELATIONS MATTERS.
(pg 147)

   The plaintiff claims, under these Articles this case should have gone through the

Grievance, Arbitration Procedures for an Arbitrator; or a M.S.P.B. Administrative Judge

to decide if he, (she), can rule under The Collective Bargaining Agreement, provisions;

to be heard in good faith to all parties.

   The plaintiff claims the Government used a; Quasi Criminal Federal Statue to bring him

3.

to Federal Court, this was done to circumvent the Collective Bargaining Agreements and The Civil Service Reform Act of 1978; The Postal Reorganization Act of 1970; making them meaningless to their intent between all labor organizations.

The plaintiff claims that if he tried to bring this matter to the 2nd District Federal Court, for a hearing claiming that the Department of Labor, Office of Workman's Compensation owed him benefits or underpayment. I believe that both the 2nd District Federal Court and the agency would have told the plaintiff to exhaust all the administrative procedures and remedies before his case could be heard at the federal court level. For these reasons it be remanded back to the Agency and or the Department of Labor, Office of Workman's Compensation Programs; under 5 U.S.C. 8128 (b) and 5 U.S.C. 8129, Recovery of overpayment, or for lack of jurisdiction.

The plaintiff claims that if the Secretary of the Department of Labor has not issued a decision on the plaintiff receiving these checks falsely, or that he was not entitled to these checks; then the 15 Counts of Mail Fraud; 18 U.S.C. 1341, should be removed from Federal Criminal Sentencing; and removed from the level of enhancements, because no determination has been made to this date by the Secretary of the Department of Labor, which is a manifest of injustice to the plaintiff minimum due process rights.

The plaintiff claims the government never proved by the preponderance of evidence;

4.

that the plaintiff gave a false statements and was fit to return to work beyond a reasonable doubt at the federal court trial which is a manifest of injustice. that the plaintiff was not entitled to receive these workers compensation checks, due to his, Claim for Disability Compensation.

For the above mentioned laws, statues and regulations the plaintiff wishes for his Petition; Complaint of Collateral Attack; to be granted; and or heard by the courts, to Prevent a Manifest of Injustice.

Sincerely,

Gary R. Agnew
Plaintiff

5.

# CERTIFICATE OF SERVICE

I certify that these documents: MOTION FOR PETITION OF COMPLAINT,

COLLATERAL ATTACK.

Were sent to the following on this date; March 12, 2008

ADMINISTRATIVE JUDGE

**JANET C. HALL**
United States District Court
District of Connecticut
915 Lafayette Boulevard
Bridgeport, CT. 06604

**HAND DELIVERED, TO U.S. DISTRICT
COURT CLERK, BRIDGEPORT, CT.**
915 Lafayette Blvd.
Bridgeport, CT. 06604

ASSIATANT U.S. ATTORNEY

**KRISHNA R. PATEL**
Assistant United States Attorney
915 Lafayette Blvd.
Bridgeport, CT. 06604

**U.S. MAIL,** First Class

**GARY R. AGNEW**
Plaintiff

Dated: March 12, 2008

Kent Bertino, Claims Examiner
United States Department of Labor
J.F.K. Federal Building
Room E-260
Boston, MA. 02203

Gary R. Agnew
81 Lynn Road
Bristol, Ct. 06010-4465

April 18, 2007

OWCP CLAIN NO: 01-0271843

Dear Mr. Bertino,

    At this time I am requesting from the Department of Labor a complete and detailed outcome determination of the overpayment from 2/15/01 thru 4/17/04.

    This overpayment was declared in the discovery notification documents which are attached for you to make a prompt examination. A prompt return reply in this matter will be greatly appreciated.

Sincerely,

Gary R. Agnew

Kent Bertino, Claims Examiner           Gary R. Agnew
United states Department of Labor        81 Lynn Road
J.F.K. Federal Building                  Bristol, CT. 06010-4465
Room E-260                               (860)-584-0589
Boston, MA. 02203

## OWCP CLAIM NO: 01-0271843

July 27, 2007

Dear Mr. Bertino,

I have mailed you a letter of request for information in the past relating to the overpayment determination relating to my case; number 01-0271843; relating to my conviction on March 30, 2004.

In your letter dated April 9, 2004 to postal inspector Douglas millet; stating, **We will review the case record now to determine whether there is an overpayment, with respect to the monetary compensation paid in the past.**

As prescribed the Secretary of Labor; code, **5 U.S.C. 8106, 8128 and 8129** the Secretary of Labor has the exclusive authority to decide this case and not subject to judicial review. (See); **PITTMAN v. U.S. 312 F supp 818 (us district ct e.d. vir. 1970.**

If I receive no reply to this second request, I will consider taking legal action. You are aware that denying this request is a violation of my Constitutional Due Process rights to my property interest.

See attached letters:

Respectfully,

Gary R. Agnew

File Number: 010271843
ff-O-NO

U.S. DEPARTMENT OF LABOR

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMP PROGRAMS
PO BOX 8300 DISTRICT 1 BOS
LONDON, KY 40742-8300
Phone:  (617) 624-6600

August 27, 2007

Date of Injury: 01/24/1989
Employee:  GARY R. AGNEW

GARY REID AGNEW
81 LYNN ROAD
BRISTOL, CT 06010

Dear Mr. AGNEW:

In response to your July 27, 2007 letter to this Office, we have not issued an overpayment decision in
your case at this time.  If an overpayment decision is issued, you will be notified in writing of the
amount due and you will have appeal rights.

Sincerely,

Clark C. Crandall
Claims Examiner

GEORGE GOSHDIGIAN
62 JENNIFER DRIVE
HEBRON, CT 06248

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### NEW YORK FIELD OFFICE

GARY R. AGNEW,
               Appellant,

v.

DEPARTMENT OF LABOR,
               Agency.

DOCKET NUMBER
PH-3443-08-0003-I-1

DATE: January 25, 2008

George Goshdigian, Hebron, Connecticut, for the appellant.

Personnel Office, New York, New York, for the agency.

**BEFORE**
Barry G. Booker
Administrative Judge

## INITIAL DECISION

### INTRODUCTION

On September 26, 2007, the appellant filed his Board appeal seeking review of his claim the Department of Labor's Office of Workers' Compensation Programs (OWCP) abused its discretion by not issuing a final overpayment decision. For the reasons stated below, the appellant's appeal is DISMISSED.

### JURISDICTION

General Legal Standards

The Board's jurisdiction is not plenary; it is limited to those matters over which it has been given jurisdiction by law, rule or regulation. 5 U.S.C. § 7701(a) (1999); *Martinez v. Merit Systems Protection Board*, 126 F.3d 1480,

1482 (Fed. Cir. 1997); *Maddox v. Merit Systems Protection Board*, 759 F.2d 9, 10 (Fed. Cir. 1985). When a question is raised concerning the Board's jurisdiction, the employee filing the appeal has the burden of proof by a preponderance of the evidence.[1] 5 C.F.R. § 1201.56(a)(2)(i) (2007); *Swango v. Department of Veterans Affairs,* 59 M.S.P.R. 235, 241 (1993). To be entitled to a jurisdictional hearing, an employee need only set forth assertions of fact which, if proven, could establish *prima facie* case of Board jurisdiction. *Cf. Harper v. Department of Veterans Affairs,* 68 M.S.P.R. 594, 601 (1995).

<u>The appellant has failed to meet his burden of establishing the Board's jurisdiction over his appeal.</u>

By order to show cause dated October 16, 2007, the appellant was notified that the Board may not have jurisdiction over his appeal. *See* Initial Appeal File (IAF), Tab 4. The appellant was directed to submit evidence and argument establishing a nonfrivolous allegation of Board jurisdiction.

In his response dated October 23, 2007, the appellant argued that in connection with his conviction in United States District Court, he was ordered to pay restitution in the amount of $84,403.00 to the United States Postal Service (USPS or agency). *Id.,* Tab 5. In response to the jurisdictional issue, the appellant alleged, in pertinent part, that:

> The appellant is claiming that the Department of Labor, by not making a final decision on the jurisdictional issues under 5 U.S.C. 8128(b) and 5 U.S.C. 8148 is discriminatory and harmful to the appellant (sic) Due Process Rights.

> The appellant claims that this is a "jurisdictional issue" and this case should have gone before the Merit Systems Protection Board for a hearing. That this case was not an issue for the Federal District Court to decide.

---

[1]     Preponderant evidence is defined to mean that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely true than not. *See* 5 C.F.R. § 1201.56 (c)(2) (1999).

*Id.* Attached to his submission is a letter dated April 9, 2004 from Mr. Michael J. Harvill, District Director, U.S. Department of Labor, Employment Standards Administration, OWCP, to Inspector Douglas J. Millet of the U.S. Postal Inspection Service, wherein it is stated:

> Thank you for your April 2, 2004, investigative memorandum and the all-important documentation of the fraud conviction effective March 29, 2004. It will be that date that all compensation benefits will cease in this case. We will review the case record now to determine whether there is an overpayment with respect to the monetary compensation paid in the past. We naturally want to have that matter resolved, if possible, before the June 18, 2004, sentencing and restitution is considered.

*Id.,* Attachment. The appellant also submitted a letter dated August 27, 2007 from Mr. Clark C. Crandall, Claims Examiner, U.S. Department of Labor, Employment Standards Administration, OWCP, addressed to him, wherein he is informed:

> In response to your July 27, 2007 letter to this Office, we have not issued an overpayment decision in your case at this time. If an overpayment decision is issued, you will be notified in writing of the amount due and you will have appeal rights.

*Id.,* Attachment. In his appeal, the appellant alleged the Department of Labor's OWCP has failed to issue a final decision regarding "forfeiture of benefits of compensation."

It is well settled that pursuant to 5 U.S.C. § 8128(b), the action of the Secretary of Labor or his designee in allowing or denying a payment related to workers compensation is (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by a court by mandamus or otherwise. *Cf. Pueschel v. United States,* 297 F.3d 1371, 1377 (Fed. Cir. 2002). With the exception of reemployment rights after a compensable injury, the Board has interpreted 5 U.S.C. 8128(b) as foreclosing Board review of Department of Labor decisions regarding Federal Employment Compensation Act (FECA) benefits. *See Lee v Department of Labor,* 76 M.S.P.R. 142, 146 (1997).

I therefore find the Board lacks jurisdiction to review the matters raised by the appellant.

## DECISION

The appeal is DISMISSED.

FOR THE BOARD:

Barry G. Booker
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **February 29, 2008**, unless a petition for review is filed by that date or the Board reopens the case on its own motion. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. You must establish the date on which you received it. The date on which the initial decision becomes final also controls when you can file a petition for review with the Court of Appeals for the Federal Circuit. The paragraphs that follow tell you how and when to file with the Board or the federal court. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review. Your petition, with supporting evidence and argument, must be filed with:

The Clerk of the Board
Merit Systems Protection Board

1615 M Street, NW.,
Washington, DC 20419

A petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition for review submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

If you file a petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. Your petition must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you more than 5 days after the date of issuance, 30 days after the date you actually receive the initial decision. If you claim that you received this decision more than 5 days after its issuance, you have the burden to prove to the Board the date of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. *See* 5 C.F.R. § 1201.4(j).

## JUDICIAL REVIEW

If you are dissatisfied with the Board's final decision, you may file a petition with:

The United States Court of Appeals
for the Federal Circuit

717 Madison Place, NW.
Washington, DC 20439

You may not file your petition with the court before this decision becomes final. To be timely, your petition must be <u>received</u> by the court no later than 60 calendar days after the date this initial decision becomes final.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703). You may read this law, as well as review the Board's regulations and other related material, at our website, <u>http://www.mspb.gov.</u> Additional information is available at the court's website, <u>www.cafc.uscourts.gov.</u> Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's <u>Rules of Practice</u>, and Forms <u>5</u>, <u>6</u>, and <u>11</u>.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

U.S. Mail

Gary R. Agnew
81 Lynn Road
Bristol, CT 06010-4465

Appellant Representative

U.S. Mail

George Goshdigian
62 Jennifer Drive
Hebron, CT 06248

Agency Representative

U.S. Mail

Personnel Office
Department of Labor
Office of the Assistant Secretary
for Administration and Management
201 Varick Street, Room:813
New York, NY 10014

_____
January 25, 2008
(Date)

_____
Stephanie Brown
Legal Assistant



**Cornell University Law School**

Search Law School        Search Cornell

LII / Legal Information Institute

# U.S. Code collection

TITLE 5 > PART III > Subpart G > CHAPTER 81 > SUBCHAPTER I > § 8123

## § 8123. Physical examinations

**(a)** An employee shall submit to examination by a medical officer of the United States, or by a physician designated or approved by the Secretary of Labor, after the injury and as frequently and at the times and places as may be reasonably required. The employee may have a physician designated and paid by him present to participate in the examination. If there is disagreement between the physician making the examination for the United States and the physician of the employee, the Secretary shall appoint a third physician who shall make an examination.

**(b)** An employee is entitled to be paid expenses incident to an examination required by the Secretary which in the opinion of the Secretary are necessary and reasonable, including transportation and loss of wages incurred in order to be examined. The expenses, when authorized or approved by the Secretary, are paid from the Employees' Compensation Fund.

**(c)** The Secretary shall fix the fees for examinations held under this section by physicians not employed by or under contract to the United States to furnish medical services to employees. The fees, when authorized or approved by the Secretary, are paid from the Employees' Compensation Fund.

**(d)** If an employee refuses to submit to or obstructs an examination, his right to compensation under this subchapter is suspended until the refusal or obstruction stops. Compensation is not payable while a refusal or obstruction continues, and the period of the refusal or obstruction is deducted from the period for which compensation is payable to the employee.

*LII has no control over and does not endorse any external Internet site that contains links to or references LII.*



**Cornell University Law School**

Search Law School    Search Cornell

LII / Legal Information Institute

# U.S. Code collection

TITLE 5 > PART III > Subpart G > CHAPTER 81 > SUBCHAPTER I > § 8128

## § 8128. Review of award

**(a)** The Secretary of Labor may review an award for or against payment of compensation at any time on his own motion or on application. The Secretary, in accordance with the facts found on review, may—

**(1)** end, decrease, or increase the compensation previously awarded; or

**(2)** award compensation previously refused or discontinued.

**(b)** The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—

**(1)** final and conclusive for all purposes and with respect to all questions of law and fact; and

**(2)** not subject to review by another official of the United States or by a court by mandamus or otherwise.

Credit shall be allowed in the accounts of a certifying or disbursing official for payment in accordance with that action.

*LII has no control over and does not endorse any external Internet site that contains links to or references LII.*

Case 3:03-cr-00241-JCH    Document 142    Filed 03/12/2008    Page 19 of 42

**Cornell University Law School**

LII / Legal Information Institute

Search Law School     Search Cornell

# U.S. Code collection

TITLE 5 > PART III > Subpart G > CHAPTER 81 > SUBCHAPTER I > § 8129

## § 8129. Recovery of overpayments

**(a)** When an overpayment has been made to an individual under this subchapter because of an error of fact or law, adjustment shall be made under regulations prescribed by the Secretary of Labor by decreasing later payments to which the individual is entitled. If the individual dies before the adjustment is completed, adjustment shall be made by decreasing later benefits payable under this subchapter with respect to the individual's death.

**(b)** Adjustment or recovery by the United States may not be made when incorrect payment has been made to an individual who is without fault and when adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

**(c)** A certifying or disbursing official is not liable for an amount certified or paid by him when—

> **(1)** adjustment or recovery of the amount is waived under subsection (b) of this section; or

> **(2)** adjustment under subsection (a) of this section is not completed before the death of all individuals against whose benefits deductions are authorized.

*LII has no control over and does not endorse any external*
*Internet site that contains links to or references LII.*



**Cornell University
Law School**

Search Law School        Search Cornell

LII / Legal Information Institute

# U.S. Code collection

TITLE 5 > PART III > Subpart F > CHAPTER 71 > SUBCHAPTER III > § 7121

## § 7121. Grievance procedures

**(a)**

**(1)**  Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d), (e), and (g) of this section, the procedures shall be the exclusive administrative procedures for resolving grievances which fall within its coverage.

**(2)**  Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

**(b)**

**(1)**  Any negotiated grievance procedure referred to in subsection (a) of this section shall—

**(A)**  be fair and simple,

**(B)**  provide for expeditious processing, and

**(C)**  include procedures that—

**(i)**  assure an exclusive representative the right, in its own behalf or on behalf of any employee in the unit represented by the exclusive representative, to present and process grievances;

**(ii)**  assure such an employee the right to present a grievance on the employee's own behalf, and assure the exclusive representative the right to be present during the grievance proceeding; and

**(iii)**  provide that any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitration which may be invoked by either the exclusive representative or the agency.

**(2)**

**(A)**  The provisions of a negotiated grievance procedure providing for binding arbitration in accordance with paragraph (1)(C)(iii) shall, if or to the extent that an alleged prohibited personnel practice is involved, allow the arbitrator to order—

**(i)**  a stay of any personnel action in a manner similar to the manner described in section 1221 (c) with respect to the Merit Systems Protection Board; and

      **(ii)** the taking, by an agency, of any disciplinary action identified under section 1215 (a)(3) that is otherwise within the authority of such agency to take.

    **(B)** Any employee who is the subject of any disciplinary action ordered under subparagraph (A)(ii) may appeal such action to the same extent and in the same manner as if the agency had taken the disciplinary action absent arbitration.

**(c)** The preceding subsections of this section shall not apply with respect to any grievance concerning—

    **(1)** any claimed violation of subchapter III of chapter 73 of this title (relating to prohibited political activities);

    **(2)** retirement, life insurance, or health insurance;

    **(3)** a suspension or removal under section 7532 of this title;

    **(4)** any examination, certification, or appointment; or

    **(5)** the classification of any position which does not result in the reduction in grade or pay of an employee.

**(d)** An aggrieved employee affected by a prohibited personnel practice under section 2302 (b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both. An employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first. Selection of the negotiated procedure in no manner prejudices the right of an aggrieved employee to request the Merit Systems Protection Board to review the final decision pursuant to section 7702 of this title in the case of any personnel action that could have been appealed to the Board, or, where applicable, to request the Equal Employment Opportunity Commission to review a final decision in any other matter involving a complaint of discrimination of the type prohibited by any law administered by the Equal Employment Opportunity Commission.

**(e)**

    **(1)** Matters covered under sections 4303 and 7512 of this title which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedures of section 7701 of this title or under the negotiated grievance procedure, but not both. Similar matters which arise under other personnel systems applicable to employees covered by this chapter may, in the discretion of the aggrieved employee, be raised either under the appellate procedures, if any, applicable to those matters, or under the negotiated grievance procedure, but not both. An employee shall be deemed to have exercised his option under this subsection to raise a matter either under the applicable appellate procedures or under the negotiated grievance procedure at such time as the employee timely files a notice of appeal under the applicable appellate procedures or timely files a grievance in writing in accordance with the provisions of the parties' negotiated grievance procedure, whichever event occurs first.

**(2)** In matters covered under sections 4303 and 7512 of this title which have been raised under the negotiated grievance procedure in accordance with this section, an arbitrator shall be governed by section 7701 (c)(1) of this title, as applicable.

**(f)** In matters covered under sections 4303 and 7512 of this title which have been raised under the negotiated grievance procedure in accordance with this section, section 7703 of this title pertaining to judicial review shall apply to the award of an arbitrator in the same manner and under the same conditions as if the matter had been decided by the Board. In matters similar to those covered under sections 4303 and 7512 of this title which arise under other personnel systems and which an aggrieved employee has raised under the negotiated grievance procedure, judicial review of an arbitrator's award may be obtained in the same manner and on the same basis as could be obtained of a final decision in such matters raised under applicable appellate procedures.

**(g)**

**(1)** This subsection applies with respect to a prohibited personnel practice other than a prohibited personnel practice to which subsection (d) applies.

**(2)** An aggrieved employee affected by a prohibited personnel practice described in paragraph (1) may elect not more than one of the remedies described in paragraph (3) with respect thereto. For purposes of the preceding sentence, a determination as to whether a particular remedy has been elected shall be made as set forth under paragraph (4).

**(3)** The remedies described in this paragraph are as follows:

**(A)** An appeal to the Merit Systems Protection Board under section 7701.

**(B)** A negotiated grievance procedure under this section.

**(C)** Procedures for seeking corrective action under subchapters II and III of chapter 12.

**(4)** For the purpose of this subsection, a person shall be considered to have elected—

**(A)** the remedy described in paragraph (3)(A) if such person has timely filed a notice of appeal under the applicable appellate procedures;

**(B)** the remedy described in paragraph (3)(B) if such person has timely filed a grievance in writing, in accordance with the provisions of the parties' negotiated procedure; or

**(C)** the remedy described in paragraph (3)(C) if such person has sought corrective action from the Office of Special Counsel by making an allegation under section 1214 (a)(1).

**(h)** Settlements and awards under this chapter shall be subject to the limitations in section 5596 (b)(4) of this title.

*LII has no control over and does not endorse any external Internet site that contains links to or references LII.*

Case 3:03-cr-00241-JCH     Document 142     Filed 03/12/2008     Page 23 of 42

US Attorneys > USAM > Title 9 > Criminal Resource Manual
prev | next

# 902 1996 Amendments to 18 U.S.C. § 1001

The False Statements Accountability Act of 1996 (FSAA), Pub. L. No. 104-292, H.R. 3166 (October 11, 1996), made several changes that affect the work of United States Attorneys' Offices, including revisions to 18 U.S.C. §§ 1001, 1505, 6005, and 28 U.S.C. 1365. This section describes the changes to section 1001.

Section 2 of the FSAA revises section 1001 of title 18, United States Code. The new 18 U.S.C. § 1001, effective October 11, 1996, reads as follows:

   a. Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully --

      1. falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
      2. makes any materially false, fictitious, or fraudulent statement or representation; or
      3. makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title or imprisoned not more than 5 years, or both.

   b. Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.

   c. With respect to any matter within the jurisdiction of the legislative branch, subsection (a) shall apply only in --

      1. administrative matters, including a claim for payment, a matter related to the procurement of property or services, personnel or employment practices, or support services, or a document required by law, rule, or regulation to be submitted to the Congress or any office or officer within the legislative branch; or
      2. any investigation or review, conducted pursuant to the authority of any committee, subcommittee, commission or office of the Congress, consistent with applicable rules of the House or Senate.

The new section 1001 contains several important features. First, section 2 of the FSAA restores the Department's ability to prosecute false statements made to the judicial and legislative branches. In 1995, the Supreme Court reversed long-settled precedent in *Hubbard v. United States*, 115 S.Ct. 1754 (1995), and held that a court is neither a "department" nor an "agency" under § 1001. Although the Court's opinion left open the possibility that a judicial or legislative entity might still be considered an "agency" under section 1001, several courts interpreted *Hubbard* broadly to mean that section 1001 applies only to false statements made to the executive branch. *See, e.g.*, *United States v. Dean*, 55 F.3d 640 (D.C. Cir. 1995), *cert. denied*, 116 S.Ct. 1288 (1996); *United States v. Rostenkowski*, 59 F.3d 1291, 1301 (D.C. Cir. 1995). As of March 1997, there was pending in the District of Columbia Circuit an interlocutory appeal concerning whether the old version of section 1001, even after *Hubbard*, still

applies to financial disclosure statements that Members of Congress filed, pursuant to the Ethics in Government Act, with the Clerk of the House of Representatives before October 11, 1996. *See United States v. Oakar*, No. 96-3084 (D.C. Cir.). Prosecutors therefore should not concede, in any pleadings or arguments presented in federal courts, that the old section 1001 does not apply to such statements, at least until the Court of Appeals for the District of Columbia Circuit decides this case.

The new statute effectively overrules *Hubbard*, and expressly provides that section 1001 covers false statements that are made to all three branches of the federal government, without regard to whether the entity may be categorized as a "department" or "agency."

By including certain statutory terms (*e.g.*, "jurisdiction" and "statement") from the former section 1001 without change, Congress intended that those terms, as reenacted, continue to carry with them the body of existing judicial constructions of those terms. For example, with respect to statements made within the jurisdiction of the executive branch, prosecutors should continue to consider all statements -- whether oral or written, and whether sworn or unsworn -- as being within the scope of the new section 1001. *See* H.R. Rep. No. 104-680 (July 16, 1996) at 8 ("Other than establishing materiality as an element of all three offenses, the Committee does not view the offenses defined in paragraphs (1), (2) and (3) as changing already existing case law as it relates to the elements of the offenses.")(There was no Senate report concerning the Act, and the House report covers only the changes that the Act made to section 1001).

Section 2 of the FSAA, however, contains certain limitations concerning statements within the jurisdiction of the judicial and legislative branches. Subsection 2(b) of the FSAA provides that statements made to a judge or magistrate by parties or their counsel in a judicial proceeding will not be subject to prosecution under section 1001. Section 2 of the FSAA thus codifies a limited version of the "judicial function exception," which was created by the courts under the old section 1001 to avoid the chilling of advocacy that might occur if attorneys and parties were subject to prosecution for concealing facts from a court or jury. Under the codified version of the judicial function exception, parties or their counsel may be prosecuted for false submissions to other entities within the judicial branch, such as the probation office. *See* H.R. Rep. No. 104-680 at 9. Non-parties may be prosecuted for any false submission within the jurisdiction of the judicial branch.

In subsection (c) of amended § 1001, Congress created a "legislative function exception." Under the new provision, false statements within the jurisdiction of the legislative branch are subject to prosecution only if they relate to administrative matters or congressional investigations conducted consistent with the applicable congressional rules. Amended § 1001 will thus reach those documents that have most often been the subject of congressional false statement prosecutions, such as vouchers, payroll documents, and Ethics in Government Act (EIGA) financial disclosure forms. The exception was intended to protect, among other things, the free flow of constituent submissions to Congress. *See* H.R. Rep. No. 104-680 at 4-5.

Amended § 1001 also expressly includes materiality as an element under each of the three clauses in subsection (a). This resolves a conflict among the courts on that issue. *See, e.g., United States v. Corsino*, 812 F.2d 26 (1st Cir. 1987); *United States v. Elkin*, 731 F.2d 1005 (2d Cir. 1984).

**October 1997**

                                                        **Criminal Resource Manual 902**

June 12, 2006 **FEDERAL TIMES** 5

# Supreme Court orders review of complaints process

**By TIM KAUFFMAN**

Can federal employees take work-related complaints to court and, if so, do they first have to exhaust any administrative procedures?

Those are two questions the Supreme Court has instructed a lower court to consider in a case that could have significant implications for federal workers.

In a June 5 ruling, the Supreme Court rejected a lower court's decision that said federal employees covered by collective bargaining agreements can't sue in court because federal courts don't have expressed jurisdiction over those work-related claims.

While it's true the 1978 Civil Service Reform Act doesn't provide a specific role for federal courts in the negotiated grievance process, another statute gives federal courts jurisdiction over all matters related to the Constitution or other U.S. laws, the Supreme Court said.

In its three-page ruling, the high court seems to suggest that federal employees should be able to file workplace complaints in federal court unless they're specifically prohibited from doing so by the 1978 law, which the government concedes they are not. But the court left open the larger question of when employees can go to court and whether they must first exhaust administrative remedies.

"They strongly suggested that ultimately there has to be judicial review. But the question of whether someone should be required to exhaust [other remedies before seeking judicial review] ... the court didn't reach that issue," said California attorney Pamela Karlan, who represented the federal employee in the case at hand.

The case involves Terry Whitman, an air traffic assistant at the Federal Aviation Administration's Anchorage, Alaska, Air Route Traffic Control Center who had been tested by the agency for drug use 14 times between 1996 and 2002. Whitman filed a lawsuit against the government in 2002, claiming the repeated drug tests violated his constitutional rights.

The U.S. District Court for the District of Alaska dismissed Whitman's lawsuit, saying Whitman should have challenged the drug testing under the agency's negotiated grievance procedures. The 9th U.S. Circuit Court of Appeals affirmed the district court's ruling in 2004.

In arguments before the Supreme Court, the government conceded the lower courts erred in holding that federal employees were precluded from going to federal court under the 1978 Civil Service Reform Act. Instead, it argued that Whitman first should have been required to exhaust any applicable administrative procedures before filing his lawsuit.

The 1978 law spells out some instances where employees first must go through administrative procedures before seeking judicial relief.

However, Whitman's case is different because the complaint concerned a violation of constitutional rights, which isn't addressed in the 1978 law, according to Gregory O'Duden, general counsel at the National Treasury Employees Union, which has filed legal arguments on Whitman's behalf.

"Where there is no administrative procedure prescribed by Civil Service Reform Act, the employee has the independent right to take their claims to court without having to file a contractual grievance first," O'Duden said.

The Supreme Court has remanded the case to the appeals court for further review. If the court decides employees are able to file lawsuits directly in federal court without going through administrative channels first, the impact on the court system could be significant, attorneys said.

"It would result conceivably in a tidal wave of personnel disputes being filed in U.S. District Court under the grounds of a violation of constitutional rights," said Joshua Bowers of Washington.

E-mail: tkauffman@federaltimes.com

# Article 1.3

## Section 1.3 Facility Exclusions

This Agreement does not apply to employees who work in other employer facilities which are not engaged in customer services and mail processing, previously understood and expressed by the parties to mean mail processing and delivery, including but not limited to Headquarters, Area Offices, Postal Data Centers, Postal Service Training and Development Institute, Oklahoma Postal Training Operations, Postal Academies, Postal Academy Training Institute, Stamped Envelope Agency, Supply Centers, Mail Equipment Shops, or Mail Transport Equipment Centers and Repair Centers.

## Section 1.4 Definition

Subject to the foregoing sections, this Agreement shall be applicable to all employees in the regular work force of the U.S. Postal Service, as defined in Article 7, at all present and subsequently acquired installations, facilities, and operations of the Employer, wherever located.

## Section 1.5 New Positions

A   Each newly created position shall be assigned by the Employer to the national craft unit most appropriate for such position within thirty (30) days after its creation. Before such assignment of each new position the Employer shall consult with the Union for the purpose of assigning the new position to the national craft unit most appropriate for such position. The following criteria shall be used in making this determination:

A1   existing work assignment practices;

A2   manpower costs;

A3   avoidance of duplication of effort and "make work" assignments;

A4   effective utilization of manpower, including the Postal Service's need to assign employees across craft lines on a temporary basis;

A5   the integral nature of all duties which comprise a normal duty assignment;

A6   the contractual and legal obligations and requirements of the parties.

B   The Union shall be notified promptly by the Employer regarding assignments made under this provision. Should the Union dispute the assignment of the new position within thirty (30) days

from the date the Union has received notification of the assignment of the position, the dispute shall be subject to the provisions of the grievance and arbitration procedure provided for herein.

## Section 1.6 Performance of Bargaining Unit Work

A   Supervisors are prohibited from performing bargaining unit work at post offices with 100 or more bargaining unit employees, except:

A1   in an "emergency" which is defined to mean an unforeseen circumstance or a combination of circumstances which calls for immediate action in a situation which is not expected to be of a recurring nature;

A2   for the purpose of training or instruction of employees;

A3   to assure the proper operation of equipment;

A4   to protect the safety of employees; or

A5   to protect the property of the USPS.

B   In offices with less than 100 bargaining unit employees, supervisors are prohibited from performing bargaining unit work except as enumerated in Section 1.6A1 through 1.6A5 above or when the duties are included in the supervisor's position description.

[See Memo, page 117]

# ARTICLE 2
# NON-DISCRIMINATION AND CIVIL RIGHTS

## Section 2.1 Statement of Principles

The Employer and the Union agree that there shall be no discrimination by the Employer or the Union against employees because of race, color, creed, religion, national origin, sex, age, or marital status. In addition, consistent with the other provisions of this Agreement, there shall be no unlawful discrimination against employees, as prohibited by the Rehabilitation Act of 1973 or the Vietnam Era Veterans Readjustment Act of 1974.

[See Memo, page 117]

## Section 2.2 Committee

Non-Discrimination and Civil Rights are proper subjects for discussion at Labor-Management Committee meetings at the national, regional/area and local levels provided in Article 38.

Article 13.1

# ARTICLE 13
## ASSIGNMENT OF ILL OR INJURED REGULAR WORK FORCE EMPLOYEES

### Section 13.1 Introduction

A   Part-time fixed schedule employees assigned in the craft unit shall be considered to be in a separate category. All provisions of this Article apply to part-time fixed schedule employees within their own category.

B   The U.S. Postal Service and the Union, recognizing their responsibility to aid and assist deserving full-time regular or part-time flexible employees who through illness or injury are unable to perform their regularly assigned duties, agree to the following provisions and conditions for reassignment to temporary or permanent light duty or other assignments. It will be the responsibility of each installation head to implement the provisions of this Agreement within the installation, after local negotiations.

### Section 13.2 Employee's Request for Reassignment

A   Temporary Reassignment

Any full-time regular or part-time flexible employee recuperating from a serious illness or injury and temporarily unable to perform the assigned duties may voluntarily submit a written request to the installation head for temporary assignment to a light duty or other assignment. The request shall be supported by a medical statement from a licensed physician or by a written statement from a licensed chiropractor stating, when possible, the anticipated duration of the convalescence period. Such employee agrees to submit to a further examination by a physician designated by the installation head if that official so requests.

B   Permanent Reassignment

B1   Any ill or injured full-time regular or part-time flexible employee having a minimum of five years of postal service, or any full-time regular or part-time flexible employee who sustained injury on duty, regardless of years of service, while performing the assigned duties can submit a voluntary request for permanent reassignment to light duty or other assignment to the installation head if the employee is permanently unable to perform all or part of the assigned duties. The request shall be accompanied by a medical certificate–from a physician designated by the installation

56

Article 13.3

head and made known to the Union and the employee–giving full evidence of the physical condition of the employee, the need for reassignment, and the ability of the employee to perform other duties. A certificate from the employee's personal physician will not be acceptable.

B2   The following procedures are the exclusive procedures for resolving a disagreement between the employee's physician and the physician designated by the USPS concerning the medical condition of an employee who has requested a permanent light duty assignment. These procedures shall not apply to cases where the employee's medical condition arose out of an occupational illness or injury. On request of the Union, a third physician will be selected from a list of five Board Certified Specialists in the medical field for the condition in question, the list to be supplied by the local Medical Society. The physician will be selected by the alternate striking of names from the list by the Union and the Employer. The Employer will supply the selected physician with all relevant facts including job description and occupational physical requirements. The decision of the third physician will be final as to the employee's medical condition and occupational limitations, if any. Any other issues relating to the employee's entitlement to a light duty assignment shall be resolved through the grievance-arbitration procedure. The costs of the services of the third physician shall be shared by the Union and the Employer.

C   Installation heads shall show the greatest consideration for full-time regular or part-time flexible employees requiring light duty or other assignments, giving each request careful attention, and reassign such employees to the extent possible in the employee's office. When a request is refused, the installation head shall notify the concerned employee in writing, stating the reasons for the inability to reassign the employee.

### Section 13.3 Local Implementation

Due to varied size installations and conditions within installations, the following important items having a direct bearing on these reassignment procedures (establishment of light duty assignments) should be determined by local negotiations.

A   Through local negotiations, each office will establish the assignments that are to be considered light duty within the office.

57

**Article 14.9**

J    In installations where employees represented by the Union accept, handle and/or transport hazardous materials, the Employer will establish a program of promoting safety awareness through communications and/or training, as appropriate. Elements of such a program would include, but not be limited to:

J1    Informational postings, pamphlets or articles in postal and Area publications.

J2    Distribution of Publication 52 to employees whose duties require acceptance of and handling hazardous items.

J3    On-the-job training of employees whose duties require the handling and/or transportation of hazardous items. This training will include, but is not limited to, hazard identification; proper handling of hazardous materials; personal protective equipment availability and its use; cleanup and disposal requirements for hazardous materials.

J4    All mailbags containing any hazardous materials, as defined in Publication 52, will be appropriately identified so that the employee handling the mail is aware that the mailbag contains one or more hazardous material packages.

J5    Personal protective equipment will be made available to employees who are exposed to spills and breakage of hazardous materials.

**Section 14.9 Field Federal Safety and Health Councils**

In those cities where Field Federal Safety and Health Councils exist, one representative of the Mail Handler Union who is on the Local Safety and Health Committee in an independent postal installation in that city and who serves as a member of such Councils, will be permitted to attend the meetings. Such employee will be excused from regularly assigned duties without loss of pay. Employer-authorized payment as outlined above will be granted at the applicable straight time rate, provided the time spent in such meetings is a part of the employee's regular work day.

**ARTICLE 15**
**GRIEVANCE-ARBITRATION PROCEDURE**

**Section 15.1 Definition**

A grievance is defined as a dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment. A grievance shall include, but is not limited to, the complaint

68

**Article 15.2**

of an employee or of the Union which involves the interpretation, application of, or compliance with the provisions of this Agreement or any local Memorandum of Understanding not in conflict with this Agreement.

**Section 15.2 Grievance Procedure—Steps**

Step 1:  (a) Any employee who feels aggrieved must discuss the grievance with the employee's immediate supervisor within fourteen (14) days of the date on which the employee or the Union first learned or may reasonably have been expected to have learned of its cause. The employee, if he or she so desires, may be accompanied and represented by the employee's steward or a Union representative. The Union also may initiate a grievance at Step 1 within 14 days of the date the Union first became aware of (or reasonably should have become aware of) the facts giving rise to the grievance. In such case the participation of an individual grievant is not required.

A Step 1 Union grievance may involve a complaint affecting more than one employee in the office. Whenever the facts giving rise to a grievance relate to an incident/issue occurring or arising on a specific date and involve more than one employee in the office, a Step 1 or Step 2 grievance may only be initiated by the Union as a Union grievance on behalf of all involved employees within a specific work location in an installation as provided in Article 17.2A or as defined by local practice. Should any grievances concerning the same incident/issue be filed at Step 1 by individual employees, the Union will consolidate all such grievances and select a representative grievance which may be appealed to Step 2. Should multiple grievances concerning the same incident/issue be improperly filed/initiated at Step 1 by the Union, management shall notify the Union, and if so notified, the Union shall consolidate all such grievances and select a representative grievance which may be heard at Step 1.

(b) In any discussion at Step 1 the supervisor shall have authority to settle the grievance. The steward or other Union representative likewise shall have authority to settle or withdraw the grievance in whole or in part. No resolution reached as a result of such discussion shall be a precedent for any purpose.

(c) If no resolution is reached as a result of such discussion, the supervisor shall render a decision orally stating the reasons for the decision. The supervisor's decision should be stated during the discussion, if possible, but in no event shall it be given to the Union representative (or the grievant, if no Union representative was requested) later than five (5)

69

## Article 15.2

days thereafter unless the parties agree to extend the five (5) day period. Within five (5) days after the supervisor's decision, the supervisor shall, at the request of the Union representative, initial the standard grievance form that is used at Step 2 confirming the date upon which the decision was rendered.

(d) The Union shall be entitled to appeal an adverse decision to Step 2 of the grievance procedure within ten (10) days after receipt of the supervisor's decision. Such appeal shall be made by completing a standard grievance form developed by agreement of the parties, which shall include appropriate space for at least the following:

1. Detailed statement of facts;

2. Contentions of the grievant;

3. Particular contractual provisions involved; and

4. Remedy sought.

The parties at the national level shall agree upon a computer-generated version of the standard grievance form that may be used to appeal an adverse decision to Step 2.

Step 2. (a) The standard grievance form appealing to Step 2 shall be filed with the installation head or designee. In any appeal the post office of twenty (20) or less employees, the Employer shall designate an official outside of the installation as the Step 2 official, and shall so notify the Union Step 1 representative.

(b) Any grievance initiated at Step 2, pursuant to Article 2 of this Agreement, must be filed within fourteen (14) days of the date on which the Union or the employee first learned or may reasonably have been expected to have learned of its cause.

(c) The installation head or designee will meet with the steward or a Union representative as expeditiously as possible, but no later than seven (7) days following receipt of the Step 2 appeal unless the parties agree upon a later date. In all grievances appealed from Step 1 or filed at Step 2, the grievant shall be represented in Step 2 for all purposes by a steward or a Union representative who shall have authority to settle or withdraw the grievance as a result of discussions or compromise in this Step. The installation head or designee in Step 2 also shall have authority to grant or settle the grievance in whole or in part.

(d) At the meeting the Union representative shall make a full and detailed statement of facts relied upon, contractual provisions involved, and remedy sought. The Union representative may also furnish written statements from witnesses or other individuals. The Employer

## Article 15.2

representative shall also make a full and detailed statement of facts and contractual provisions relied upon. The parties' representatives shall cooperate fully in the effort to develop all necessary facts, including the exchange of copies of all relevant papers or documents in accordance with Article 31. The parties' representatives may mutually agree to jointly interview witnesses where desirable to assure full development of all facts and contentions. In addition, in cases involving discharge either party shall have the right to present no more than two witnesses. Such right shall not preclude the parties from jointly agreeing to interview additional witnesses as provided above.

(e) Where grievances appealed to Step 2 involve the same, or substantially similar issues or facts, one such grievance to be selected by the Union representative shall be designated the "representative" grievance. If not resolved at Step 2, the "representative" grievance may be appealed to Step 3 of the grievance procedure. All other grievances which have been mutually agreed to as involving the same, or substantially similar issues or facts as those involved in the "representative" grievance shall be held at Step 2 pending resolution of the "representative" grievance, provided they were timely filed at Step 1 and properly appealed to Step 2 in accordance with the grievance procedure.

(f) Following resolution of the "representative" grievance, the parties involved in that grievance shall meet at Step 2 within seven (7) days of their receipt of that resolution, unless the parties agree upon a later date, to identify the other pending grievances involving the same, or substantially similar issues or facts, and to apply the resolution to those grievances. Disputes over the applicability of the resolution of the "representative" grievance shall be resolved through the grievance-arbitration procedures contained in this Article; in the event it is decided that the resolution of the "representative" grievance is not applicable to a particular grievance, the merits of that grievance shall also be considered.

(g) Any settlement or withdrawal of a grievance in Step 2 shall be in writing or shall be noted on the standard grievance form and shall be furnished to the Union representative within ten (10) days after the Step 2 meeting unless the parties agree to extend the ten (10) day period. Any such settlement or withdrawal shall not be a precedent for any purpose, unless the parties specifically so agree or develop an agreement to dispose of future similar or related problems.

(h) Where agreement is not reached, the Employer's decision shall be furnished to the Union representative in writing within ten (10) days after the Step 2 meeting unless the parties agree to extend the ten (10) day

## Article 15.2

period. The decision shall include a full statement of the Employer's understanding of (1) all relevant facts, (2) the contractual provisions involved, and (3) the detailed reasons for denial of the grievance.

(i) If the Union representative believes that the facts or contentions set forth in the decision are incomplete or inaccurate, such representative should, within ten (10) days of receipt of the Step 2 decision, transmit to the Employer's representative a written statement setting forth corrections or additions deemed necessary by the Union. Any such statement must be included in the file as part of the grievance record in the case. The filing of such corrections or additions shall not affect the time limits for appeal to Step 3.

(j) The Union may appeal an adverse Step 2 decision to Step 3. Any such appeal must be made within fifteen (15) days after receipt of the Employer's decision unless the parties' representatives agree to extend the time for appeal. Any appeal must include copies of (1) the standard grievance form, (2) the Employer's written Step 2 decision, and, if filed (3) the Union corrections or additions to the Step 2 decision.

Step 3: (a) Any appeal from an adverse decision in Step 2 shall be in writing to the appropriate management official at the Grievance/Arbitration Processing Center with a copy to the Employer's Step 2 representative, and shall specify the reasons for the appeal.

(b) The grievant shall be represented at Step 3 level by the Union's Regional representative, or designee. The Step 3 meeting of the parties' representatives to discuss the grievance shall be held at the respective Postal Service office (former regional headquarters) within fifteen (15) days after it has been appealed to Step 3. Each party's representative shall be responsible for making certain that all relevant facts and contentions have been developed and considered. The Union representative shall have authority to settle or withdraw the grievance in whole or in part. The Employer's representative likewise shall have authority to grant the grievance in whole or in part. In any case where the parties' representatives mutually conclude that relevant facts or contentions were not developed adequately in Step 2, they shall have authority to jointly return the grievance to the Step 2 level for full development of all facts and further consideration at that level. In such event, the parties' representatives at Step 2 shall meet within seven (7) days after the grievance is returned to Step 2. Thereafter, the time limits and procedures applicable to Step 2 grievances shall apply.

(c) The Employer's written Step 3 decision on the grievance shall be provided to the Union's Step 3 representative within fifteen (15) days after the parties have met in Step 3, unless the parties agree to extend the

72

## Article 15.2

fifteen (15) day period. Such decision shall state the reasons for the decision in detail and shall include a statement of any additional facts and contentions not previously set forth in the record of the grievance as appealed from Step 2. Such decision also shall state whether the Employer's Step 3 representative believes that no interpretive issue under this Agreement or some supplement thereto which may be of general application is involved in the case.

(d) The Union, at the Regional level, may appeal an adverse decision directly to arbitration at the Regional level within twenty-one (21) days after the receipt of the Employer's Step 3 decision in accordance with the procedure hereinafter set forth; provided the Employer's Step 3 decision states that no interpretive issue under this Agreement or some supplement thereto which may be of general application is involved in the case.

(e) If either party's representative maintains that the grievance involves an interpretive issue under this Agreement, or some supplement thereto which may be of general application, the Union representative shall be entitled to appeal an adverse decision to Step 4 (National level) of the grievance procedure. Any such appeal must be made within twenty-one (21) days after receipt of the Employer's decision and include copies of any Union corrections and additions filed at Step 2 or 3. The Union shall furnish a copy of the Union appeal to the appropriate management official at the Grievance/Arbitration Processing Center.

**The party whose representative maintains that the grievance involves an interpretive issue shall provide the other party a written notice specifying in detail the precise interpretive issue(s) to be decided. The Employer's Step 3 decision shall be included in the Step 3 decision. The Union's written notice shall be automatically included as part of the grievance record in the case but the filing of such notice shall not affect the time limits for appeal.**

[See Memos, pages 137, 138]

Step 4: (a) In any case properly appealed or referred to this Step the parties shall meet at the National level promptly, but in no event later than thirty (30) days after filing such appeal or referral in an attempt to resolve the grievance. The Union representative shall have authority to settle or withdraw the grievance in whole or in part. The Employer's representative shall have authority to grant or settle the grievance in whole or in part. The parties' Step 4 representatives may, by mutual agreement, return any grievance to Step 3 where (a) the parties agree that no national interpretive issue is fairly presented or (b) it appears that all

73

Article 15.3

relevant facts have not been developed adequately. In such event, the parties shall meet at Step 3 within fifteen (15) days after the grievance is returned to Step 3. Thereafter the procedures and time limits applicable to Step 3 grievances shall apply. Following their meeting in any case not returned to Step 3, a written decision by the Employer will be rendered within fifteen (15) days after the Step 4 meeting unless the parties agree to extend the fifteen (15) day period. The decision shall include an adequate explanation of the reasons therefor. In any instance where the parties have been unable to dispose of a grievance by settlement or withdrawal, the Union shall be entitled to appeal it to arbitration at the National level within thirty (30) days after receipt of the Employer's Step 4 decision.

[See Memo, page 138]

## Section 15.3  Grievance Procedure—General

A  **The parties expect that good faith observance, by their respective representatives, of the principles and procedures set forth above will result in settlement or withdrawal of substantially all grievances initiated hereunder at the lowest possible step and recognize their obligation to achieve that end. Every effort shall be made to ensure timely compliance and payment of monetary grievance settlements and arbitration awards. The Employer agrees that upon receipt of necessary paperwork, from the grievant and/or union, concerning a grievance settlement of arbitration award, monetary remuneration will be made. The necessary paperwork is the documents and statements specified in Subchapter 436.4 of the ELM. The Employer will provide the union copies of appropriate pay adjustment forms, including confirmation that such forms were submitted to the appropriate postal officials for compliance and that action has been taken to ensure that the affected employee(s) receives payment and/or allowance of the provisions of this Agreement. In the event that an employee is not paid within sixty (60) days after submission of all the necessary paperwork, such employee, upon request, will be granted authorization from management to receive a pay advance equal to seventy (70) percent of the payment owed the employee. In the event of a dispute between the parties concerning the correct amount to be paid, the advance required by this section will be the amount that is not in dispute.**

74

Article 15.3

B  The failure of the employee or the Union in Step 1, or the Union thereafter to meet the prescribed time limits of the Steps of this procedure, including arbitration, shall be considered as a waiver of the grievance. However, if the Employer fails to raise the issue of timeliness at Step 2, or at the step at which the employee or Union failed to meet the prescribed time limits, whichever is later, such objection to the processing of the grievance is waived.

C  Failure by the Employer to schedule a meeting or render a decision in any of the Steps of this procedure within the time herein provided (including mutually agreed to extension periods) shall be deemed to move the grievance to the next Step of the grievance-arbitration procedure.

D  It is agreed that in the event of a dispute between the Union and the Employer as to the interpretation of this Agreement, such dispute may be initiated as a grievance at the Step 4 level by the Union. Such a grievance shall be initiated in writing and must specify in detail the facts giving rise to the dispute, the precise interpretive issues to be decided and the contention of the Union. Thereafter the parties shall meet in Step 4 within thirty (30) days in an effort to define the precise issues involved, develop all necessary facts, and reach agreement. Should they fail to agree, then, within fifteen (15) days of such meeting, each party shall provide the other with a statement in writing of its understanding of the issues involved, and the facts giving rise to such issues. In the event the parties have failed to reach agreement within sixty (60) days of the initiation of the grievance in Step 4, the Union then may appeal it to arbitration, within thirty (30) days thereafter.

E  The parties have agreed to jointly develop and implement a Contract Interpretation Manual (CIM) within six (6) months after the effective date of the 1998 National Agreement. The CIM will set forth the parties' mutual understanding regarding the proper interpretation and/or application of the provisions of this Agreement. It is not intended to add to, modify, or replace, in any respect, the language in the current Agreement; nor is it intended to modify in any way the rights, responsibilities, or benefits of the parties under the Agreement. However, production of the CIM demonstrates the mutual intent of the parties at the National level to encourage their representatives at all levels to reach resolution regarding issues about which the parties are in agreement and to encourage consistency in the application of the terms of the

75

## Article 15.4

Agreement. For these reasons, the positions of the parties as set forth in the CIM shall be binding on the representatives of both parties in the resolution of disputes at the Local and Regional levels, and in the processing of grievances through Steps 1, 2 and 3 of the grievance-arbitration procedure. In addition, the positions of the parties as set forth in the CIM are binding on the arbitrator, in accordance with the provisions of Article 15.4A6, in any Regional level arbitration case in which the CIM is introduced. The CIM will be updated periodically to reflect any modifications to the parties' positions which may result from National level arbitration awards, Step 4 decisions, or other sources. The parties' representatives are encouraged to utilize the most recent version of the CIM at all times.

[See Memos, pages 140, 141, Letters, pages 141, 143, 156]

### Section 15.4 Arbitration

A   General Provisions

A1   A request for arbitration shall be submitted within the specified time limit for appeal.

A2   No grievance may be arbitrated at the National level except when timely notice of appeal is given the Employer in writing by the Union. No grievance may be appealed to arbitration at the Regional level except when timely notice of appeal is given in writing to the appropriate management representative at the Grievance/Arbitration Processing Center by official at the Grievance/Arbitration Processing Center by the certified representative shall be certified to appeal grievances by the Union to the Employer at the National level.

A3   All grievances appealed to arbitration will be placed on the appropriate pending arbitration list(s) in the order in which appealed. The Employer, in consultation with the Union, will be responsible for maintaining appropriate dockets of grievances, as appealed, and for administrative functions necessary to assure efficient scheduling and hearing of cases by arbitrators at all levels.

A4   In order to avoid loss of available hearing time, except in National level cases, a sufficient number of back-up cases shall be scheduled in accordance with Article 15.4B2 to be heard in the event of late settlement or withdrawal of grievances before the hearing. In the event that the parties settle a

76

case or either party withdraws a case five (5) or more days prior to the scheduled arbitration date, the backup cases on the appropriate arbitration list shall be scheduled. In the event that either party withdraws a case less than five (5) days prior to the scheduled arbitration date, and the parties are unable to agree on scheduling other cases on that date, the party withdrawing the case shall pay the full costs of the arbitrator for that date. If the parties settle a case less than five (5) days prior to the scheduled arbitration date and are unable to agree to schedule other cases, the parties shall share the costs of the arbitrator for that date. This paragraph shall not apply to National level arbitration cases.

A5   Arbitration hearings normally will be held during working hours where practical. Employees whose attendance as witnesses is required at hearings during their regular working hours shall be on Employer time when appearing at the hearing, provided the time spent as a witness is part of the employee's regular working hours. Absent a more permissive local past practice and at no cost to the Employer, the Employer will permit one (1) change of work schedule per case scheduled for arbitration for either the grievant or a witness, provided notice is given to his or her immediate supervisor at least two (2) days prior to the scheduled arbitration hearing.

A6   All decisions of an arbitrator will be final and binding. All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator. Unless otherwise provided in this Article, all costs, fees and expenses charged by an arbitrator will be shared equally by the parties.

A7   The parties agree that, upon receipt of the award, each arbitrator's fees and expenses shall be paid in a prompt and timely manner.

A8   All arbitrators on the District Regular Contract/Discipline Panels and the District Expedited Panels and on the National Panel shall serve for the term of this Agreement and shall continue to serve for six (6) months thereafter, unless the parties otherwise mutually agree.

[See Letter, page 143]

77

## Article 15.4

A9 Arbitrators on the National and on the District Regular Contract/Discipline and District Expedited Panels shall be selected by the method agreed upon by the parties at the National Level. The parties shall meet for this purpose within ninety (90) days after signing this Agreement. In the event the parties cannot agree on individuals to serve on these panels, or to fill any vacancies, selection shall be made by the alternate striking of names from the appropriate list.

[See Letter, page 144]

B   Regional Level Arbitration—Regular

B1  In each District three (3) separate dockets of cases to be heard in arbitration shall be maintained for the Union by the Employer at the Area level:

B1a   one for all removal cases and cases involving suspensions for more than 30 days;

B1b   one for all cases appealed or referred to Expedited Arbitration; and

B1c   one for all other cases appealed to arbitration at the Regional Level.

B2  Regional Arbitration Scheduling

B2a   All cases will be scheduled from their respective dockets for each District on a first-in, first-out order based on appeal to arbitration date unless the Union and Employer otherwise agree at the Regional level.

B2b   The parties agree that all cases will be heard in arbitration within 90 days from the date of the grievance appeal to arbitration. If a grievance is not heard in arbitration within the 90 days, the grievance will be scheduled as the first primary case on the next available arbitration hearing date. If, one (1) year after the effective date of this Agreement, this hearing requirement is not complied with by a particular District Panel(s) for three (3) consecutive Accounting Periods, the parties will meet to jointly select a sufficient number of additional arbitrators for that panel(s) to ensure compliance with this hearing requirement. Such meetings and addition of arbitrators will continue, as jointly agreed to by the parties, until the panel(s) is in compliance with the hearing requirement.

## Article 15.4

B2c   The primary case(s) assigned for each arbitration date will be listed on the scheduling letter. Unless mutually agreed otherwise, a maximum of two (2) primary cases from the District Regular Contract and District Regular Discipline dockets and a minimum of six (6) cases from the District Expedited docket will be listed on the respective scheduling letters. In addition every open case from the particular post office where the primary case(s) are located will be scheduled in the event the primary case(s) are resolved or withdrawn; a listing of such cases will be attached to the scheduling letter. If multiple cases exist at the primary location, the cases will be heard in order of appeal date, unless otherwise mutually agreed by the parties. The primary cases will be backed up with three (3) additional cases from the same District and Union geographic area. It is understood that the parties will resolve or arbitrate the cases at this primary location prior to moving to the first back-up location. The parties agree that cases will be heard rather than lose a hearing date.

The primary case(s) and the back-up cases will appear in the scheduling letter to the arbitrator and the parties, which will be submitted no later than forty-five (45) days prior to the scheduled hearing date, unless the parties at the Area/Regional level agree otherwise in a specific instance.

B2d   If all cases at the primary location are resolved or withdrawn, the first back-up case shall become the scheduled case. If the first back-up case is resolved or withdrawn, additional back-up cases will consist of any open cases (see Section 4B2a for priority scheduling) at the post office location where the first back-up case is scheduled. The scheduling of these cases at the first back-up location shall go in order of appeal date to arbitration unless otherwise agreed at the Area/Regional level. If all cases at the first back-up location are resolved or withdrawn, the second back-up case shall become the scheduled case. If that case is resolved or withdrawn, any open cases (see Section 4B2a for priority scheduling) at the

Article 15.4

second back-up location will be scheduled as above, first-in, first-out. If all cases at the second back-up location are resolved or withdrawn, the third back-up case shall become the scheduled case, and the same procedures shall apply for scheduling additional cases at that location.

B2e In the event that all back-up locations are exhausted, the location will be determined by the order of appeal date of cases within the same District and Union geographic area and will continue until no arbitration appeals remain either in the original District or union geographic area.

B2f If the procedures in B2c through B2e are exhausted, additional locations will be determined by the parties based upon mutual agreement at the Area/Regional level. If no agreement is reached, scheduling of cases will be based upon the order in which cases were appealed to Regional arbitration.

B2g The appropriate management official at the Grievance/Arbitration Processing Center will provide to the Union at the Regional level a list of the pending cases on each docket by District listed in order of first-in, first-out.

B2h If more than one hearing on a particular date is scheduled for a particular union geographic area, the union at the Regional level may request, and the Employer will agree to a mutually acceptable scheduling adjustment to another union geographic area.

B3 Only discipline cases involving suspensions of 30 days or less and those other disputes as may be mutually determined by the parties shall be appealed or referred to Expedited Arbitration in accordance with Section 4C hereof.

B4 Cases appealed or referred to arbitration, which involve removals or suspensions for more than 30 days, shall be scheduled from the appropriate District Regular Discipline docket for hearing at the Regional Level at the earliest possible date in the order in which appealed by the Union or referred.

Article 15.4

B5 If a written request is submitted by **either party** at least thirty (30) days prior to the scheduled hearing date for a case(s) appealed to Regional arbitration, the parties will promptly (normally no later than ten (10) calendar days after the request is received by the **other party**) conduct pre-arbitration discussions regarding the specified case(s).

B6 If either party concludes that a case appealed or referred to Regional Arbitration involves an interpretive issue under the National Agreement or some supplement thereto which may be of general application, that party may withdraw the case from arbitration and refer the case to Step 4 of the grievance procedure. The party referring the case to Step 4 shall pay the full costs of the arbitrator for that case unless another scheduled case is heard on that date.

**The party whose representative maintains that the grievance involves an interpretive issue shall provide the other party a written notice specifying in detail the precise interpretive issue(s) to be decided and that party's contention with regard to the issue. A copy of the notice will be provided to the designated management and union officials at the Area/Regional level.**

B7 The arbitrators on each District Panel shall be scheduled to hear cases on a rotating system basis, unless otherwise agreed by the parties.

B8 Normally, there will be no transcripts of arbitration hearings or filing of post-hearing briefs in cases heard in Regular Regional level arbitration, except either party at the National level may request a transcript, and either party at the hearing may request to file a post-hearing brief. However, each party may file a written statement setting forth its understanding of the facts and issues and its argument at the beginning of the hearing and also shall be given an adequate opportunity to present argument at the conclusion of the hearing.

B9 The arbitrator in any given case should render an award therein within thirty (30) days of the close of the record in the case.

C Regional Level Arbitration Expedited

C1 The parties agree to continue the utilization of an expedited arbitration system for disciplinary cases of 30 days

**Article 15.4**

suspension or less which do not involve interpretation of this Agreement and for such other cases as the parties may mutually determine. This system may be utilized by agreement of the Union through the Union and the Vice-President, Labor Relations, or designee. In any such case, the Federal Mediation and Conciliation Service or American Arbitration Association shall immediately notify the designated arbitrator. The designated arbitrator is that member of the District Expedited Panel who, pursuant to a rotation system, is scheduled for the next arbitration hearing. Immediately upon such notification the designated arbitrator shall arrange a place and date for the hearing promptly but within a period of not more than ten (10) working days. If the designated arbitrator is not available to conduct a hearing within the ten (10) working days, the next panel member in rotation shall be notified until an available arbitrator is obtained.

C2  The parties agree that all cases will be heard in arbitration within 90 days from the date of the grievance appeal to arbitration. If a grievance is not heard in arbitration within the 90 days, the grievance will be scheduled as the first case to be heard on the next available arbitration date. If, one (1) year after the effective date of this Agreement, this hearing requirement is not complied with by a particular District Panel(s) for three (3) consecutive Accounting Periods, the parties will meet to jointly select a sufficient number of additional arbitrators for that panel(s) to ensure compliance with this hearing requirement. Such meetings and addition of arbitrators will continue, as jointly agreed to by the parties, until the panel(s) is in compliance with the hearing requirement.

C3  If either party concludes that the issues involved are of such complexity or significance as to warrant reference to the District Regular Contract/Discipline Arbitration Panel(s), that party shall notify the other party of such reference at least twenty-four (24) hours prior to the scheduled time for the expedited arbitration.

C4  The hearing shall be conducted in accordance with the following:

C4a  the hearing shall be informal;
C4b  no briefs shall be filed or transcripts made;

82

**Article 15.4**

C4c  there shall be no formal rules of evidence;
C4d  the hearing shall normally be completed within one day;
C4e  if the arbitrator or the parties mutually conclude at the hearing that the issues involved are of such complexity or significance as to warrant reference to the District Regular Contract/Discipline Arbitration Panel, the case shall be referred to that panel; and
C4f  the arbitrator may issue a bench decision at the hearing but in any event shall render a decision within forty-eight (48) hours after conclusion of the hearing. Such decision shall be based on the record before the arbitrator and may include a brief written explanation of the basis for such conclusion. These decisions will not be cited as a precedent. The arbitrator's decision shall be final and binding. An arbitrator who issues a bench decision shall furnish a written copy of the award to the parties within forty-eight (48) hours of the close of the hearing.

C5  No decision by a member of the District Expedited Panel in such a case shall be regarded as a precedent or be cited in any future proceeding, but otherwise will be a final and binding decision.

C6  The District Expedited Arbitration Panel shall be developed by the National parties, on a geographic area basis, with the aid of the American Arbitration Association and the Federal Mediation and Conciliation Service.

[See MOU, page 145]

D  National Level Arbitration

D1  Only cases involving interpretive issues under this Agreement or supplements thereto of general application will be arbitrated at the National level.

D2  A docket of cases appealed to arbitration at the National level shall be maintained for the Union. The arbitrators on the National Panel shall be scheduled to hear cases on a rotating system basis, unless otherwise agreed by the parties. Cases on the docket will be scheduled for arbitration in the order in which appealed, unless the Union and Employer otherwise agree.

83

**Article 15.5**

### Section 15.5 Administration

The parties recognize their continuing joint responsibility for efficient functioning of the grievance procedure and effective use of arbitration. The Employer will furnish to the Union a copy of a quarterly report containing the following information covering operation of the arbitration procedure at the National level, and for each District docket separately:

A   number of cases appealed to arbitration;

B   number of cases scheduled for hearing;

C   number of cases heard;

D   number of scheduled hearing dates, if any, which were not used;

E   the total number of cases pending but not scheduled at the end of the quarter.

## ARTICLE 16
## DISCIPLINE PROCEDURE

### Section 16.1 Statement of Principle

In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive. No employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations. Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement, which could result in reinstatement and restitution, including back pay.

### Section 16.2 Discussions

For minor offenses by an employee, management has a responsibility to discuss such matters with the employee. Discussions of this type shall be held in private between the employee and the supervisor. Such discussions are not considered discipline and are not grievable. Following such discussions, there is no prohibition against the supervisor and/or the employee making a personal notation of the date and subject matter for their own personal record(s). However, no notation or other information pertaining to such discussion shall be included in the employee's personnel folder. While such discussions may not be cited as an element of a prior adverse record in any subsequent disciplinary action against an employee, they may be, where relevant and timely, relied upon to establish that employees have been made aware of their obligations and responsibilities.

84

**Article 16.5**

### Section 16.3 Letter of Warning

A letter of warning is a disciplinary notice in writing, identified as an official disciplinary letter of warning, which shall include an explanation of a deficiency or misconduct to be corrected.

[See MOU, page 146]

### Section 16.4 Suspensions of Less Than 14 Days

In the case of discipline involving suspensions of less than fourteen (14) days, the employee against whom disciplinary action is sought to be initiated shall be served with a written notice of the charges against the employee and shall be further informed that he/she will be suspended, but that such suspension shall be served while on duty with no loss of pay (no-time-off suspension). No-time-off suspensions shall be considered to be of the same degree of seriousness, and will satisfy the same step in the pattern of progressive discipline as the time-off suspension being replaced. As such, no-time-off suspensions are equivalent to the previously issued time-off suspensions as an element of past discipline.

### Section 16.5 Suspensions of 14 or More Days or Discharge

In the case of discipline involving suspensions of fourteen (14) days, the employee against whom disciplinary action is sought to be initiated shall be served with a written notice of the charges against the employee and shall be further informed that he/she will be suspended after fourteen (14) calendar days during which ten day period the employee shall remain on the job or on the clock (in pay status) at the option of the Employer. However, if the Union or the employee initiates a timely grievance prior to the effective date of the action and if the grievance is timely appealed to Step 2, the grievant shall not begin to serve the suspension until after the Step 2 decision has been rendered.

In the case of suspensions of more than fourteen (14) days, or discharge, any employee shall, unless otherwise provided herein, be entitled to an advance written notice of the charges against him/her and shall remain either on the job or on the clock at the option of the Employer for a period of thirty (30) days. Thereafter, the employee shall remain on the rolls (non-pay status) until disposition of the case has been had either by settlement with the Union or through exhaustion of the grievance arbitration procedure.

A preference eligible who chooses to appeal a suspension of more than fourteen (14) days or his discharge through the Merit Systems Protection Board (MSPB) rather than through the grievance arbitration procedure shall remain on the rolls (non-pay status) until disposition of the case has

85

## Article 16.6

been had either by settlement or through exhaustion of his MSPB appeal. When there is reasonable cause to believe an employee is guilty of a crime for which a sentence of imprisonment can be imposed, the Employer is not required to give the employee the full thirty (30) days' advance written notice in a discharge action, but shall give such lesser number of days advance written notice as under the circumstances is reasonable and can be justified. The employee is immediately removed from a pay status at the end of the notice period.

### Section 16.6 Indefinite Suspension Crime Situation

A   The Employer may indefinitely suspend an employee in those cases where the Employer has reasonable cause to believe an employee is guilty of a crime for which a sentence of imprisonment can be imposed. In such cases, the Employer is not required to give the employee the full thirty (30) days advance notice of indefinite suspension, but shall give such lesser number of days of advance written notice as under the circumstances is reasonable and can be justified. The employee is immediately removed from a pay status at the end of the notice period.

B   The just cause of an indefinite suspension is grievable. The arbitrator shall have the authority to reinstate and make the employee whole for the entire period of the indefinite suspension.

C   If after further investigation or after resolution of the criminal charges against the employee, the Employer determines to return the employee to a pay status, the employee shall be entitled to back pay for the period that the indefinite suspension exceeded seventy (70) days, if the employee was otherwise available for duty, and without prejudice to any grievance filed under 6B above.

D   The Employer may take action to discharge an employee during the period of an indefinite suspension whether or not the criminal charges have been resolved, and whether or not such charges have been resolved in favor of the employee. Such action must be for just cause, and is subject to the requirements of Section 16.5 of this Article.

### Section 16.7 Emergency Procedure

An employee may be immediately placed on an off duty status (without pay) by the Employer, but remain on the rolls where the allegation involves intoxication (use of drugs or alcohol), pilferage, or failure to observe safety rules and regulations, or in cases where retaining the

86

---

## Article 16.9

employee on duty may result in damage to U.S. Postal Service property, loss of mail or funds, or where the employee may be injurious to self or others. The employee shall remain on the rolls (non pay status) until disposition of the case has been had. If it is proposed to suspend such an employee for more than thirty (30) days or discharge the employee, the emergency action taken under this Section may be made the subject of a separate grievance.

An employee placed in an off-duty status under this Section may utilize his or her accrued annual leave during this period.

### Section 16.8 Review of Discipline

A   In no case may a supervisor impose suspension or discharge upon an employee unless the proposed disciplinary action by the supervisor has first been reviewed and concurred in, in a signed and dated writing, by the installation head or designee.

B   In associate post offices of twenty (20) or less employees, or where there is no higher level supervisor than the supervisor who proposes to initiate suspension or discharge, the proposed disciplinary action shall first be reviewed and concurred in, in a signed and dated writing, by a higher authority outside such installation or post office before any proposed disciplinary action is taken.

### Section 16.9 Veterans' Preference

A   A preference eligible is not hereunder deprived of whatever rights of appeal such employee may have under the Veterans' Preference Act; however, if the employee appeals under the Veterans' Preference Act, the employee will be deemed to have waived further access to the grievance arbitration procedure beyond Step 3 under any of the following circumstances:

1.   If an MSPB settlement agreement is reached.

2.   If the MSPB has not yet issued a decision on the merits, but a hearing on the merits before the MSPB has begun.

3.   If the MSPB issues a decision on the merits of the appeal.

B   In the event the grievance of a preference eligible is due to be scheduled in accordance with Article 15, Section 4, and the preference eligible has a live MSPB appeal on the same action, the parties will not schedule the grievance for arbitration until a final determination is reached in the MSPB procedure. If the grievance is not waived under Section 16.9.A.1, 2 or 3 above, the case

87

**Article 16.10**

will be scheduled promptly for arbitration. Should the grievance ultimately be sustained or modified in arbitration, the preference eligible employee will have no entitlement to back pay under the National Agreement for the period from the date the case would have been scheduled for arbitration and the date it is actually scheduled for arbitration.

**Section 16.10 Employee Discipline Records**

The records of a disciplinary action against an employee shall not be considered in any subsequent disciplinary action if there has been no disciplinary action initiated against the employee for a period of two years. Upon the employee's written request, a disciplinary notice or decision letter will be removed from the employee's official personnel folder after two years if there has been no disciplinary action initiated against the employee in that two year period.

[See Memos, pages 146, 147, Letter, page 148]

**ARTICLE 17**
**REPRESENTATION**

**Section 17.1 Stewards**

Stewards may be designated for the purpose of investigating, presenting and adjusting grievances.

**Section 17.2 Appointment of Stewards**

A    The Union will certify to the Employer in writing a steward or stewards and alternates in accordance with the following general guidelines. Where more than one steward is appointed, one shall be designated chief steward. The selection and appointment of stewards or chief stewards is the sole and exclusive function of the Union. Stewards will be certified to represent employees in specific work location(s) on their tour; provided no more than one steward may be certified to represent employees in a particular work location(s). The number of stewards shall be in accordance with the formula as hereinafter set forth:

88

---

**Article 17.3**

Employees in the bargaining unit per tour or station

| | |
|---|---|
| Up to 49 | 1 steward |
| 50 to 99 | 2 stewards |
| 100 to 199 | 3 stewards |
| 200 to 499 | 5 stewards |
| 500 or more | 5 stewards plus additional steward for each 100 employees |

B    At an installation, the Union may designate in writing to the Employer one Union officer actively employed at that installation to act as a steward to investigate, present and adjust a specific grievance or to investigate a specific problem to determine whether to file a grievance. The activities of such Union officer shall be in lieu of a steward designated under the formula in Section 2A and shall be in accordance with Section 17.3. Payment, when applicable, shall be in accordance with Section 17.4.

C    To provide steward service to a number of small installations where a steward is not provided by the above formula, the Union representative certified to the Employer in writing and compensated by the Union may perform the duties of a steward.

D    At the option of the Union, representatives not on the Employer's payroll shall be entitled to perform the functions of a steward or chief steward, provided such representatives are certified in writing to the Employer at the District level, with a courtesy copy to the Area, and providing such representatives act in lieu of stewards designated under the provisions of 2A or 2B above.

**Section 17.3 Rights of Stewards**

A    When it is necessary for a steward to leave his/her work area to investigate and adjust grievances or to investigate a specific problem to determine whether to file a grievance, the steward shall request permission from the immediate supervisor and such request shall not be unreasonably denied. In the event the duties require the steward leave the work area and enter another area within the installation or post office, the steward must also receive permission from the supervisor from the other area he/she wishes to enter and such request shall not be unreasonably denied.

89

**Article 21.2**

weighted average bi-weekly premiums under the FEHBP as determined by the Office of Personnel Management. The adjustment begins on the effective date determined by the Office of Personnel Management in January 2003, **January 2004, and January 2005.**

C.  The weight to be given to a particular subscription charge for each FEHB plan and option will be based on the number of enrollees in each such plan and option for whom contributions have been received from employers covered by the FEHBP as determined by the Office of Personnel Management.

D.  The amount necessary to pay the total charge for enrollment after the Employer's contribution is deducted shall be withheld from the pay of each enrolled employee. To the extent permitted by law, the Employer shall permit employees covered by this Agreement to make their premium contributions to the cost of each plan on a pre-tax basis, and shall extend eligibility to such employees for the U.S. Postal Service's flexible spending account plans for unreimbursed health care expenses and work-related child care and elder care expenses as authorized under Section 125 of the Internal Revenue Code.

E.  The limitation upon the Employer's contribution towards any individual employee shall be 88.75% of the subscription charge under the FEHBP in 2003, 2004, **and 2005.**

**Section 21.2 Life Insurance**

The Employer shall maintain the current life insurance program in effect during the term of this Agreement.

**Section 21.3 Retirement**

The provisions of Chapters 83 and 84 of Title 5 U.S. Code, and any amendments thereto, shall continue to apply to employees covered by this Agreement.

**Section 21.4 Injury Compensation**

Employees covered by this Agreement shall be covered by subchapter I of Chapter 81 of Title 5, and any amendments thereto, relating to compensation for work injuries. The Employer will promulgate appropriate regulations which comply with applicable regulations of the Office of Workers' Compensation Programs and any amendments thereto.

**Article  24.1**

**Section 21.5  Health Benefit Brochures**

When a new employee who is eligible for enrollment in the Federal Employee's Health Benefit Program enters the Postal Service, the employee shall be furnished a copy of the Health Benefit Plan brochure of the Union.

[See Memo, page 149]

**ARTICLE 22**
**BULLETIN BOARDS**

The Employer shall furnish a bulletin board for the exclusive use of the Union, subject to the conditions stated herein, if space is available. The Union may place a literature rack in swing rooms, if space is available. Only suitable notices and literature may be posted or placed in literature racks. There shall be no posting or placement of notices or literature in literature racks except upon the authority of the officially designated Union representative.

**ARTICLE 23**
**RIGHTS OF UNION OFFICIALS TO ENTER POSTAL INSTALLATIONS**

Upon reasonable notice to the Employer, duly authorized representatives of the Union shall be permitted to enter postal installations for the purpose of performing and engaging in official union duties and business related to this Agreement. There shall be no interruption of the work of employees due to such visits and representatives shall adhere to the established security regulations.

**ARTICLE 24**
**EMPLOYEES ON LEAVE WITH REGARD TO UNION BUSINESS**

**Section 24.1 Continuation of Benefits**

Any employee on leave without pay to devote full or part-time service to the Union shall be credited with step increases as if in a pay status. Retirement benefits will accrue on the basis of the employee's step so attained, provided the employee makes contributions to the retirement fund in accordance with current procedure. Annual and sick leave will be earned in accordance with existing procedures based on hours worked.

Article 28.1

## ARTICLE 27
## EMPLOYEE CLAIMS

### Section 27.1 Claim Filing

Subject to a $10 minimum, an employee may file a claim within fourteen (14) days of the date of loss or damage and be reimbursed for loss or damage to his/her personal property except for motor vehicles and the contents thereof taking into consideration depreciation where the loss or damage was suffered in connection with or incident to the employee's employment while on duty or while on postal premises. The possession of the property must have been reasonable, or proper under the circumstances and the damage or loss must not have been caused in whole or in part by the negligent or wrongful act of the employee. Loss or damage will not be compensated when it resulted from normal wear and tear associated with day-to-day living and working conditions.

### Section 27.2 Claim Adjudication

Claims should be documented, if possible, and submitted with recommendations by the Union steward to the Employer at the local level. The Employer will submit the claim, with the Employer's and the steward's recommendation within 15 days, to the District office for determination. The claim will be adjudicated within thirty (30) days after receipt at the District office. An adverse determination on the claim may be appealed pursuant to the procedures for appealing an adverse decision in Step 3 of the grievance-arbitration procedure. A decision letter denying a claim in whole or in part will include notification of the Union's right to appeal the decision to arbitration. The District office will provide to the Union's Regional Representative a copy of the denial letter, the claim form, and all documentation submitted in connection with the claim. The installation head or designee will provide a copy of the denial letter to the steward whose recommendation is part of the claim form.

## ARTICLE 28
## EMPLOYER CLAIMS

### Section 28.1 Statement of Principle

The parties agree that continued public confidence in the Postal Service requires the proper care and handling of the U.S.P.S. property, postal funds, and the mails. In advance of any money demand upon an employee for any reason, the employee must be informed in writing and the demand must include the reasons therefor.

101

---

ninal leave payments resulting from death will be paid at the [...]er level for all employees who are assigned or detailed to [...]er level assignments on their last workday.

## ARTICLE 26
## UNIFORM AND WORK CLOTHES

### .1 Uniform and Work Clothes Administration

[...]ees who are required to wear uniforms or work clothes shall [...]d uniforms or work clothes or shall be reimbursed for pur[...]uthorized items from duly licensed vendors. The current ad[...] of the Uniform and Work Clothes Program shall be contin[...] otherwise changed by this Agreement or the Employer.

### .2 Contract Program Administration

[...] who are currently furnished uniforms pursuant to the con[...]am shall continue to be so entitled. Such uniforms shall be [...] timely manner. The allowance to Mail Handlers under this [...]all be as follows:

8 effective November 21, 2001
1 effective November 21, 2002

[...]ase shall become effective on the employee's anniversary [...]ving the effective date of change.

### .3 Annual Allowance

t Work Clothes Program will be continued for those full-time [...] who have been determined to be eligible for such clothing [...]e nature of work performed on a full-time basis in pouching [...]hing units, parcel post sorting units, bulk mail sacking oper[...]ordinary paper sacking units. The Employer will provide eli[...]oyees with an annual allowance to obtain authorized work [...] a reimbursable basis from licensed vendors as follows::

[...] effective November 21, 2001
[...] effective November 21, 2002

[...]ase shall become effective on the employee's anniversary [...]ving the effective date of change.

100

such circumstances, the employee shall not be eligible to re-bid the next posting of that assignment.

D) If at the end of one (1) year from the submission of the bid the employee has not been able to perform the duties of the bid-for position, the employee must relinquish the assignment, and shall not be eligible to re-bid the next posting of that assignment.

E) It is still incumbent upon the employee to follow procedures in Article 12.3.C to request notices to be sent to a specific location when absent. All other provisions relevant to the bidding process will also apply.

II.   Higher Level Pay

Employees who bid to a higher level assignment pursuant to the procedures described in the preamble and Part I, Bidding, above, will not receive higher level pay until they are physically able to, and actually perform work in the bid-for higher level position.

## MEMORANDUM OF UNDERSTANDING

## BETWEEN THE UNITED STATES POSTAL SERVICE AND THE NATIONAL POSTAL MAIL HANDLERS UNION, AFL–CIO

## RETURN TO DUTY

The parties affirm their understanding concerning the review of medical certificates submitted by employees who return to duty following extended absences due to illness.

We mutually agree to the following:

1.   To avoid undue delay in returning an employee to duty, the on-duty medical officer, contract physician, or nurse should review and make a decision based upon the presented medical information the same day it is submitted.

Normally, the employee will be returned to work on his/her next scheduled tour of duty or the date stated in the medical documentation, provided that adequate medical documentation is submitted within sufficient time for review and that a decision is made to return the employee to duty.

2.   The reasonableness of the Service in delaying an employee's return beyond his/her next scheduled tour of duty or the date stated in the medical documentation shall be a proper subject for the grievance procedure on a case-by-case basis.

136

## MEMORANDUM OF UNDERSTANDING
## REVISED GRIEVANCE-ARBITRATION PROCEDURE

The parties hereby agree that tests of the Revised Grievance-Arbitration Procedure will take place during the term of the 2000 National Agreement ("Agreement"). The Revised Grievance–Arbitration Procedure is intended to place increased responsibility on the parties' representatives to resolve disputes at the local level in a timely manner.

Amendments to the existing language of Article 15 of the National Agreement, which will have effect only in those installations participating in the test, are outlined in the Memorandum of Understanding Re: Revised Grievance-Arbitration Procedure Guidelines ("Guidelines.")

Implementation of the test in the below-listed initial sites will take place no later than six (6) months after the effective date of the Agreement. Test sites are expected to participate for the duration of the Agreement; however, after a period of one (1) year from the implementation of the test in a particular site, either of the parties' local representatives at that site may provide the National parties with thirty (30) days advance notice of its intent to terminate participation in the test. Such notice will include a detailed explanation of the reasons for that decision and will be copied to the other party's representative at the test site.

The parties have identified the following initial sites for participation in the test of the Revised Grievance-Arbitration Procedure:

All installations at which mail handlers are employed in the Central Florida District;

All installations at which mail handlers are employed in the North Florida District;

All installations at which mail handlers are employed in the South Florida District;

All installations at which mail handlers are employed in the Suncoast District;

Charlotte, NC P & DC;

Milwaukee, WI P & DC;

Pittsburgh, PA P & DC;

Springfield, IL P & DC.

The parties will continue their efforts to identify additional sites for conduct of the test of the Revised Grievance-Arbitration Procedure.

The parties at the National level will meet on a quarterly basis, or more frequently as mutually agreed, to review the progress of the tests of the

137

## MEMORANDUM OF UNDERSTANDING
### MODIFIED DISCIPLINE PROGRAMS

The parties agree to continue with the testing of Modified Article 16. The purpose and format of Modified Article 16 shall remain the same as it was originally developed under the Task Force on Discipline, unless changed by the Task Force. Those sites which are currently involved in the testing of Modified Article 16 shall continue with the testing, unless the local parties notify the Task Force on Discipline to the contrary, in accordance with the stated guidelines as developed by the Task Force.

This Memorandum of Understanding will terminate upon the expiration of the **2000** National Agreement.

## MEMORANDUM OF UNDERSTANDING
### RE: ROLE OF THE INSPECTION SERVICE IN LABOR RELATIONS MATTERS

The parties recognize the role of the Postal Inspection Service in the operation of the Postal Service and its responsibility to provide protection to our employees, security to the mail and service to our customers.

Postal Inspection Service policy does not condone disrespect by Inspectors in dealing with an individual. The Postal Inspection Service has an obligation to comply fully with the letter and spirit of the National Agreement between the United States Postal Service and the National Postal Mail Handlers Union, and will not interfere in the dispute resolution process as it relates to Articles 15 and 16.

The parties further acknowledge the necessity of an independent review of the facts by management prior to the issuance of disciplinary action, emergency procedures, indefinite suspensions, enforced leave or administrative actions. Inspectors will not make recommendations, provide opinions, or attempt to influence management personnel regarding a particular disciplinary action, as defined above.

Nothing in this document is meant to preclude or limit Postal Service management from reviewing Inspection Service documents in deciding to issue discipline.

147

---

Step 3.    ...y agreed upon by the parties at

s Agreement does not change either party's right to refer an expe-d case to regular arbitration in accordance with the applicable proce-s of Article 15, Section 4.C., of the National Agreement.

## MEMORANDUM OF UNDERSTANDING

### Purge of Warning Letters

Parties agree that there will be a one-time purge of Official Disciplinary Letters of Warning from the personnel folders of all employees represented by the National Postal Mail Handlers Union. To qualify to be purged, a Letter of Warning must:

Have an issue date prior to the effective date of the **2000** National Agreement between the parties;

Have been in effect for 6 months or longer and not cited as an element of prior discipline in any subsequent disciplinary action; and

Not have been issued in lieu of a suspension or a removal action.

...ievances associated with discipline that is purged as a result of this ...randum shall be withdrawn.

## MEMORANDUM OF UNDERSTANDING
### TASK FORCE ON DISCIPLINE

...rties agree to establish at the national level a "Task Force on Discipline." The Task Force shall have three (3) representatives of the ...and three (3) representatives of the USPS.

...pose of the Task Force shall be to study the manner in which discipline is administered by the USPS, the manner in which disputes about ...ents which can be handled by the parties, and to recommend changes and im-... which can be made in the discipline and dispute resolution

...c Force is authorized, at its discretion, to conduct tests of alterna-...ipline and dispute resolution systems in various facilities.

...c Force shall convene periodically but at least quarterly, at such ...d at such places as it deems appropriate during the term of the ...tional Agreement. No action or recommendations may be taken ...isk Force except by an agreement of the parties.

...herein shall preclude any of the parties from exercising the ...ich they may otherwise have.

146